No. 24-4040
DISTRICT COURT CASE NO. 2:24-CR-91-ODW
RELATED CASE NO. 2:24-mj-00166-DJA-1

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ALEXANDER SMIRNOV,
Appellant-Defendant,

vs.

UNITED STATES OF AMERICA,
Appellee-Plaintiff.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
_____

**APPELLANT'S MEMORANDUM
OF LAW AND FACTS IN SUPPORT OF SECOND FRAP 9(a) APPEAL**

DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Appellant
ALEXANDER SMIRNOV

## **<u>TABLE OF CONTENTS</u>**

I.      JURISDICTION…………………………………………..……1

II.     STATEMENT OF THE ISSUE………………………………..………2

III.    STATEMENT OF THE CASE………………………………..……3

        A.      Preliminary Statement.…………………………………… 3

        B.      Despite Being Charged with "False Statement" Crimes That Do Not
                Affect the Presumption of Pretrial Release, Mr. Smirnov is Detained
                From February 22, 2024 to the Present …………..…….………… 5

        C.      The District Court Summarily Rejects Mr. Smirnov's Recent Offer to
                Subject Himself to Round-the-Clock Surveillance—and Clearly Errs
                in Doing So ………………………………………………..9

IV.     SUMMARY OF ARGUMENT………………..…………………12

V.      ARGUMENT………………………………..…………………..12

        A.      Standard of Review………………………………..………..……12

        B.      "Clear Error" is Present Here—But it Can Be Remedied With the
                Approach Set Forth by Other District Courts in This Circuit….. 13

VI.     CONCLUSION…………………………………………………...17

STATEMENT OF RELATED CASES………………………………..…….. 19

CERTIFICATE OF COMPLIANCE…………………………………..…….. 20

CERTIFICATE OF SERVICE……………………………………..………… 21

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Bell v. Wolfish,*
441 U.S. 520 (1979)……………………………………………….. 8

*Kinney v. Lenon,*
425 F.2d 209 (9th Cir. 1970)…………………………………… 8

*Maine v. Molton,*
474 U.S. 159 (1985)………………………………..……………… 8

*O'Bannon v. Nat'l Collegiate Athletic Ass'n,*
802 F.3d 1049 (9th Cir. 2015)…………………………………….. 11, 13

*United States v. Fidler,*
419 F.3d 1026 (9th Cir. 2005)…………………………………...12

*United States v. Lynch,*
 No. 18-CR-00577-CRB-1, 2023 WL 3436091 (N.D. Cal. May 11, 2023)
(unpublished)…………………………………………………….14, 15, 16

*United States v. Townsend,*
897 F.2d 989 (9th Cir. 1990)…………………………………… 12

*Wolfish v. Levi,*
573 F.2d 118 (2d Cir. 1978)…………………………………….12

## <u>UNITED STATES CODE</u>

18 U.S.C. § 3142………………………………………………2, 3, 6, 7, 15

18 U.S.C. § 3145………………………………………….……… 2, 6

28 U.S.C. § 1291………………………………………………….. 2

## I.  **JURISDICTION**

Appellant Alexander Smirnov appeals the district court's order of pretrial detention under Federal Rule of Appellate Procedure 9(a). *See* District Court ("DC") DC Doc. 91 (Jul. 1, 2024) (Notice of Appeal) (attached as Exhibit 1); Doc. 90 (Jun. 25, 2024) (Detention Order) (attached as Exhibit 2).[1]

The district court had jurisdiction under 18 U.S.C. § 3231 because Mr. Smirnov was indicted in the United States District Court for the Central District of California (Honorable Otis D. Wright, II) for the federal crimes of: 1) Making False

---

[1]  That Rule provides:

(1) The district court must state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case. A party appealing from the order must file with the court of appeals a copy of the district court's order and the court's statement of reasons as soon as practicable after filing the notice of appeal. An appellant who questions the factual basis for the district court's order must file a transcript of the release proceedings or an explanation of why a transcript was not obtained.

(2) After reasonable notice to the appellee, the court of appeals must promptly determine the appeal on the basis of the papers, affidavits, and parts of the record that the parties present or the court requires. Unless the court so orders, briefs need not be filed.

(3) The court of appeals or one of its judges may order the defendant's release pending the disposition of the appeal.

Fed. R. App. P. 9(a).

1

Statements to a Government Agent, in violation of 18 U.S.C. § 1001; and 2) Falsification of Records in a Federal Investigation, in violation of 18 U.S.C. § 1519.[2]

The district court entered an order denying Mr. Smirnov's motion to reopen the detention hearing and to modify conditions of release on June 25, 2024.[3]

Mr. Smirnov timely filed a Notice of Appeal on July 1, 2024.[4]

This Court has jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291.[5]

## II. __STATEMENT OF THE ISSUE__

Whether, after independent appellate review, this Court finds that the district court clearly erred in ordering the defendant detained where, among other things, the

---

[2] DC Doc. 1 (Indictment). Critically, the instant "false statement" offenses do not reverse the statutory presumption favoring pretrial release; such a reversal (that is, a presumption favoring detention) is reserved for charges more serious than these. *Compare* 18 U.S.C. § 3142(e)(2) (listing Section 3142(f)(1)'s "presumption-of-detention" offenses, including crimes of violence, "an offense for which the maximum sentence is life imprisonment or death," serious drug offenses, or crimes involving minors) and 18 U.S.C. § 3142(e)(3) (additional "presumption offenses" include "a[] [firearm] offense under [certain inapplicable] section[s]," "an offense listed in [18 U.S.C. § 2332b(g)(5)(B) and carrying" a maximum term of imprisonment of 10 years or more," "an offense under chapter 77 . . . ," or offenses involving minors).

[3] DC Doc. 90 (attached as Exhibit 2)

[4] DC Doc. 91 (attached as Exhibit 1)

[5] On March 8, 2024, Mr. Smirnov filed in this Court (9CA Doc. 6) a Memorandum in Support of his FRAP 9(a) Appeal ("FRAP 9(a) Mem."). *See* Case No. Case No. 24-1133. On May 1, 2024, however, this Court denied Mr. Smirnov's appeal and affirmed the order of detention entered by the United States District Court. *See* 9CA Doc. 14 (May 1, 2024) ("Order").

2

court denied Mr. Smirnov's motion for presumptively reasonable pretrial release and, in doing so, erroneously found that Mr. Smirnov had not volunteered to post a corporate surety bond to alleviate flight risk, where Mr. Smirnov had, in fact, repeatedly volunteered to post such a surety bond and to adhere to all other conditions of release.

## III.   STATEMENT OF THE CASE

### A.   *Preliminary Statement*

The progress of this case reflects a determination to ignore the statutory presumption favoring pretrial release, to ignore Mr. Smirnov's medical condition, and to refuse to fashion—as did a United States Magistrate Judge—reasonable conditions of release under 18 U.S.C. § 3142(g).[6]

---

[6]    Section 3142(g) provides:

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence [or any other crime that presumes detention] . . . ;

(2)  the weight of the evidence against the person;

(3)  the history and characteristics of the person, including—

With regard to those conditions, Mr. Smirnov had repeatedly—and, before even making his first appearance before Judge Wright in the United States District Court for the Central District of California back on February 26, 2024—volunteered to *post a corporate surety bond* as one of many conditions geared to ensure his future appearances. *See, e.g*., DC Doc. 34 (Feb. 26, 2024) (attached as Exhibit 7) at 3-4 (in February 26 filing, Mr. Smirnov volunteers, as part of a "bail package" of additional conditions, to post a "*corporate surety bond*;" he also volunteered to comply with imposition of house arrest, imposition of financial restrictions, and execution of a waiver of extradition); *see also* DC Doc. 75 (May 24, 2024) (attached (with original

---

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance . . .;

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on [any] other release . . . ; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see also* FRAP 9(a) Mem. at 2 n.4 (charges against Mr. Smirnov do not reverse the statutory presumption favoring pretrial release), 19 n.8 (Mr. Smirnov detained solely based on alleged flight risk, not on "danger to any person or the community").

exhibits) as Exhibit 6) at 6, n.3 (restating offer, in May, to post a corporate surety bond).

On May 24, 2024, Mr. Smirnov filed a motion to reopen the detention hearing and to impose conditions of pretrial release. *See* DC Doc. 75 (May 24, 2024) (attached as Exhibit 6). As a basis for that motion, Mr. Smirnov volunteered to hire a private security company and to subject himself to its round-the-clock supervision—*in addition to* all the other conditions that had been previously imposed or proposed by Mr. Smirnov. The district court denied Mr. Smirnov's motion.

It is noteworthy, however, that the district court—with Mr. Smirnov's various offers to post a surety bond already embedded in the record—made the following statement: "That security company is not under the jurisdiction of this Court and, *unlike a bond surety*, would suffer no consequence should Defendant leave the country without permission."[7] DC Doc. 90 (attached as Exhibit 2) (emphasis added). As shown below, it is against the background of this clearly erroneous finding that Mr. Smirnov takes this second bail appeal.

### B.  Despite Being Charged with "False Statement" Crimes That Do Not Affect the Presumption of Pretrial Release, Mr. Smirnov is Detained From February 22, 2024 to the Present

Mr. Smirnov's arrest and indictment stem from two false statements he allegedly made in connection with espionage activities undertaken at the behest,

---

[7] As outlined in more detail below, Mr. Smirnov also proposed that he would be monitored 24 hours a day by a security company.

direction, and expense of the FBI. as described in his first FRAP 9(a) Memorandum, he has—despite the statutory presumption favoring release and his deteriorating, never-treated eye condition—been in continuous pretrial custody since February 22, 2024. *See* FRAP 9(a) Mem. at 2-20. Thus, after a Magistrate Judge in the District of Nevada released him on conditions after his initial arrest in Las Vegas, Mr. Smirnov was: arrested on February 22, 2024 on a warrant out of the Central District of California; transported there without a Rule 5 hearing; and detained as a flight risk after a hearing on February 26, 2024. *See id*. at 6-12 (Magistrate Judge follows recommendation of Pretrial Services Office (Nevada) and orders Mr. Smirnov released on conditions, including ban on all travel, surrender of all passports, and ban on obtaining other travel documents); *see also id*. at 16-20 (describing hearing and district court's ruling on Government's appeal of Magistrate Judge's release order, pursuant to 18 U.S.C. § 3145(c)).

In ruling that no conditions could be fashioned to reasonably assure Mr. Smirnov's appearance, the district court 1) never even mentioned the factors in Section 3142(g) and 2) summarily dismissed the release-assuring conditions that were imposed by the Magistrate Judge *and* volunteered by Mr. Smirnov himself.

Had the court undertaken a evenhanded analysis under Section 3142(g), it would have been forced to concede that Mr. Smirnov had—from the outset of these proceedings—set forth evidence and argument showing: that he was a 43-year-old

American citizen (with dual Israeli citizenship); that he had surrendered both passports; that he had lived in Las Vegas for years and, before that, lived for 16 years in California; that he holds a Nevada driver's license; that he maintained strong ties to his friend in Las Vegas, to her son (an honorably discharged Marine), and to his cousin in Florida; and—critically—that he suffered from a rapidly deteriorating eye disease which, in addition to requiring seven prior surgeries, now required an immediate eighth. *See* FRAP 9(a) Mem. at 4-5.[8]

Additionally, any substantive analysis would have revealed that the Section 3142(g) factors favor release in cases like Mr. Smirnov's—and that these statute-based arguments were duly presented to the district court. *See* FRAP 9(a) Mem. at

---

[8]     Since March 2024, Mr. Smirnov has repeatedly applied to administrative and judicial apparatus to get his surgery performed—either by his personal surgeon *or* by a Bureau of Prisons surgeon. This surgery (which Mr. Smirnov's surgeon warns is needed to prevent in-custody blindness) has, as of this filing, not yet occurred. *See, e.g.*, DC Docs. 56 (Mar. 13, 2024) (district court order "denying *ex parte* application for medical treatment"), 63 (Mar. 26, 2024) (denying motion for reconsideration).

That the BOP and the court are still preventing Mr. Smirnov from having his surgery is particularly striking, given that they had scheduled him for surgery months ago, only for the surgeon to cancel at the last-minute, due to fear of not getting paid. *See* DC Doc. 70 (May 21, 2024) at 5 ("At some point after this Court's order [in March], Mr. Smirnov was taken to an eye doctor . . . . That doctor assured Mr. Smirnov that his eye surgery should indeed take place and scheduled [it]. That surgeon's office, however, thereafter cancelled . . . . As relayed to defense counsel . . . , the surgeon's office had expressed concern about whether they would be paid for performing the eye surgery. [C]ounsel told the Marshal to advise the doctor's office that counsel would personally guarantee payment for his client's surgery.").

7

28-34 (collecting district court evidence and argument showing that the "nature and seriousness of the offense" favors release, given the nature of the counts; that the "weight of evidence" is the least important factor to be considered (*see, e.g.*, *Motamedi*, 767 F.2d at 1408); that Mr. Smirnov is in good mental condition, and—apart from his eyes—in good physical health; that he has an exemplary character (as attested to by letters submitted to, but never mentioned by, the district court), strong ties to the Nevada and California communities, and no instances of past drug and alcohol abuse or criminal history). Finally, Mr. Smirnov noted (*see* FRAP 9(a) Mem. at 31) that, "having been released on conditions [on February 20, 2024], [he] spent the next two days in his Las Vegas lawyers' office, preparing his defense. Had Mr. Smirnov been nearly as wily as the Government endlessly alleges, he would have fled the moment he had the chance.").[9]

But despite the record evidence and Mr. Smirnov's offers to impose additional conditions of release, the district court issued a short order denying Mr. Smirnov's

---

[9]      Mr. Smirnov also argued in the lower court that his detention prevented him from effectively preparing his defense. *See* FRAP 9(a) Mem. at 5-6 (citing lower court argument; citing *Maine v. Molton*, 474 U.S. 159, 170 (1985) and *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978) ("[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense."), *rev'd on other grounds, Bell v. Wolfish*, 441 U.S. 520 (1979)); *see also Kinney v. Lenon*, 425 F.2d 209 (9th Cir. 1970) (just as Mr. Smirnov, given his language restrictions, will be the only person who can effectively communicate with potential witnesses, this Court in *Kinney* Court found the detention of a juvenile to interfere with his due process right to a fair trial, as the defendant was likely the only person with whom witnesses would cooperate with due to "age and race.").

request for medical treatment and, again, refusing to release him on conditions. *See* DC Doc. 63 (Mar 26, 2024). Mr. Smirnov thereafter sought bail and other relief on appeal but, as noted above, this Court rejected his effort in a brief order dated May 1, 2024. *See supra* at note 5.

### C. The District Court Summarily Rejects Mr. Smirnov's Recent Offer to Subject Himself to Round-the-Clock Surveillance—and Clearly Errs in Doing So

On May 24, 2024, Mr. Smirnov proposed yet another valid condition of release —to be added, as part of a package, to other conditions that had been previously imposed (by the Magistrate Judge) and volunteered (by Mr. Smirnov himself).

> To this host of conditions, Mr. Smirnov now proposes another one for this Court's consideration: round-the-clock monitored security, paid for by Mr. Smirnov. As set forth in the Letter of Daryl Cronfeld, CEO and Licensee of Official Security, Inc. ("OS") (May 16, 2024) . . . , Official Security is a licensed, experienced company that has, since 1978, provided trained protection teams to monitor every aspect of the movement and location of their subject (here, Mr. Smirnov) . . . .
>
> Having spoken at length with Mr. Cronfeld regarding monitoring mechanisms to ensure Mr. Smirnov's compliance (and, of course, non-flight), undersigned counsel understands that OS would monitor Mr. Smirnov round-the-clock from his Las Vegas apartment. His apartment is served by a private elevator . . . and, should this Court order it, OS personnel can be stationed inside Mr. Smirnov's apartment, 24-hours a day, to reduce even further the chance of escape.
>
> OS would, if hired, immediately report both to this Court and to the pretrial services offices in Nevada, the Central District of California, or both. Undersigned counsel would get permission in advance from this Court and from the pretrial services office before any attorney meeting or doctor's appointment took place. And finally, this Court (or any member of this Court's staff) will be able to contact OS at any time to

> ensure that Mr. Smirnov was in just one of three places—his apartment,
> his lawyer's office, or his doctor's office—and nowhere else.

DC Doc. 75 [Exhibit 6] at 6-7; *see also id*. at 6, nn. 3 & 4 (again reinforcing

willingness to " post[] [a] . . . corporate surety bond," and offering to make OS

representatives available "to answer any questions posed by this Court").

The district court summarily denied Mr. Smirnov's motion. *See* DC Doc. 90

(Exhibit 2).[10] The court—in the order that forms the basis of this appeal—first noted

that Mr. Smirnov had "filed six emergency ex parte applications" to address his eye

deterioration, all of which were denied. DC Doc. 90 (attached as Exhibit 2) (dubbing

those emergency medical motions "essentially . . . the same" as each other). Judge

Wright then noted that, in his motion to reopen the detention hearing, Mr. Smirnov

had proposed adding the private security detail described above.

---

[10]     When Mr. Smirnov's motion was docketed on May 24, it was also set for a
hearing on June 24, 2024. DC Doc. 75 (attached as Exhibit 6). But after the motion
had been fully briefed, and after the district court had denied Mr. Smirnov's motion
to shorten the time to hear the motion (*see* DC Doc. 81) (June 7, 2024), the court
made two additional rulings. First, on June 21 (DC Doc. 84), the court, on "its own
motion," continued the hearing from June 24 to July 1, 2024. Second—also on June
21 (DC Doc. 85)—the court entered another order stating: "The Court feels it would
not be aided by oral argument regarding the Motion for Detention Reopen
Detention [sic] Hearing and to Impose Conditions of Pretrial Release." The court
stated that the matter was "vacated and taken off calendar;" was deemed
"submitted;" and would be "decided upon without oral argument." *Id*. Mr.
Smirnov—who had been ready to appear in court on June 24, then on July 1—was
disappointed by this cancellation.

But in the few sentences that followed, Judge Wright made plain his misapprehension of the record—and, the material facts contained within it:

> He has proposed to be under the full-time surveillance who will promise not to let the defendant leave the country. That security company is not under the jurisdiction of this Court and, *unlike a bond surety*, would suffer no consequence should Defendant leave the country without permission. Given Defendant's international contacts, the Court finds no comfort in the proposed modification of the terms of pretrial release.

DC Doc. 90 (attached as Exhibit 2) (emphasis added).

Given that the record before him was replete with standing offers to post a corporate surety bond, Judge Wright's remarkable comments conclusively prove one of two things: 1) that the court never bothered to read Mr. Smirnov's prior filings, in which he repeatedly volunteered to post such a bond; or, worse yet: 2) that the court knew about Mr. Smirnov's references to posting a bond, *but ignored them*, in order to keep Mr. Smirnov locked up at all costs.

Because the district court's factual finding (*viz.*, that the record before it lacks a bond offer) constitutes clear error in either case, this Court should reverse its order and remand the case with instructions that the district court fashion reasonable conditions to ensure Mr. Smirnov's future appearances. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1061 (9th Cir. 2015) ("[W]e will accept the district court's findings of fact unless we are left with the definite and firm conviction that a mistake has been committed.") (quotation omitted).

11

## IV.    SUMMARY OF ARGUMENT

The district court committed clear error when—in denying Mr. Smirnov's motion to reopen the detention hearing and summarily rejecting his offer to pay for a private security at his own expense—the court suggested that Mr. Smirnov had never before offered to post a corporate surety bond as part of a bail package. Because, however, the uncontroverted record shows that Mr. Smirnov made that very offer several times in the district court, the court's order is clearly erroneous. Reversal and remand—with instructions to fashion a reasonable "package" of bail conditions, as district courts in this Circuit have done for defendants presenting far greater flight risks—are thus warranted.

## V.    ARGUMENT

### A.    *Standard of Review*

The standard of review for an appeal of a detention order under FRAP 9(a) is as follows: "Factual findings underlying a district court's pretrial . . . detention order . . . , are reviewed under the clearly erroneous standard, 'coupled with an independent review of the facts, the findings, and the record to determine whether the order may be upheld.'" *United States v. Fidler*, 419 F.3d 1026, 1029 (9th Cir. 2005) (quoting *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *see also United States v. Townsend*, 897 F.2d 989, 993–94 (9th Cir. 1990) (despite deference to findings of fact, "we make an *independent examination of the record* to determine whether the

pretrial detention order is consistent with the defendant's constitutional and statutory rights and arrive at our conclusion *de novo*.") (emphases added).

Where, as here, the appellant asserts that the district court has made a factual finding that is clearly erroneous, that claim is reviewed as follows: "[W]e will accept the district court's findings of fact unless we are left with the definite and firm conviction that a mistake has been committed." *O'Bannon*, 802 F.3d at 1061 (quotation omitted).

### B. *"Clear Error" is Present Here—But it Can Be Remedied With the Approach Set Forth by Other District Courts in This Circuit*

"Clear error" exists here: despite uncontroverted evidence showing that Mr. Smirnov *had* previously offered to post a surety bond as part of a bail package, the district court, in rejecting the proposed security company, stated: "That security company is not under the jurisdiction of this Court and, *unlike a bond surety*, would suffer no consequence should Defendant leave the country without permission." DC Doc. 90 (attached as Exhibit 2) (emphasis added).

While this statement might be ascribed to an oversight, any suggestion that Mr. Smirnov had *not* volunteered to post a bond creates a "definite and firm conviction that a mistake has been committed." *O'Bannon*, 802 F.3d at 1061. This Court should therefore reverse the district court's order and remand this case with instructions to fashion reasonable conditions of release—including Mr. Smirnov posting a large corporate surety bond, as determined by the district court.

13

Mr. Smirnov respectfully suggests that—while not binding and of no precedential effect—the approach taken last year by a district court within this Circuit is still instructive. Thus, in *United States v. Lynch*, No. 18-CR-00577-CRB-1, 2023 WL 3436091 (N.D. Cal. May 11, 2023) (unpublished), the district court initially deemed the defendant a flight risk for circumstances resembling—even exceeding in severity—the circumstances of Mr. Smirnov's case.

Lynch clearly presents a serious risk of flight . . .

First, [a]fter spending over three years fighting extradition . . . Lynch was finally extradited . . . more than four years after the initial indictment in this case was filed. Clearly, Lynch's conduct signifies that he would rather be in the United Kingdom—or perhaps anywhere else—than in the United States facing these charges . . . . Lynch's "refusal to voluntarily return is indicative of a mental state which could easily rationalize flight on legal, moral, or intellectual grounds." *Botero*, 604 F. Supp. at 1034.

Second, Lynch has significant financial resources with which to fund flight. At his bail hearing, Lynch's counsel represented that he is worth between $400 and $450 million, with approximately $93 million of those assets in unencumbered shares of publicly traded stock. Courts frequently find that defendants with such vast wealth present a substantial risk of flight. . . . *See Townsend*, 897 F.2d at 996 (affirming an order of pretrial detention where defendants had "access to substantial sums of cash"); *United States v. Madoff*, 586 F. Supp. 2d 240, 248–49 (S.D.N.Y. 2009) (affirming an order of 24-hour home monitoring and $10 million bond where the government argued that the defendant had "assets that [could] not be effectively restrained"); . . . . *United States v. Esposito*, 309 F. Supp. 3d 24, 31 (S.D.N.Y.) (holding that the defendant posed a risk of flight in part because "there is a high probability that Esposito has access to significant amounts of . . . liquid assets"), *aff'd*, 749 F. App'x 20 (2d Cir. 2018).

14

Third, Lynch does not have significant ties to United States . . . . Lynch is a British citizen; while his wife was once a U.S. citizen, she is now solely a British citizen; they have two teenage children, and all live in the United Kingdom; and he owns property in the United Kingdom . . . . [T]here is nothing keeping him here, beyond the charges he faces in this Court.

*Lynch*, 2023 WL 3436091, at *2–3 ( "Lynch presents a serious risk of flight").

However, even when a court believes that a defendant presents a flight risk, conditions of release can be fashioned. For example, in *Lynch*, the district court carefully applied Section 3142(g)'s pertinent factors and—after a thoughtful analysis and explanation—fashioned release conditions (including a private home security company, as approved in *United States v. Madoff*) to ensure the future appearances of Lynch—an extradition-dodger who was worth over $400 million and who faced charges—"wire fraud, securities fraud, and conspiracy to commit offenses against the United States, involving years of falsified records culminating *in a deal worth billions*" (*Lynch*, 2023 WL 3436091, at *3) (emphasis added)—far more serious than the charges against Mr. Smirnov:

First, there is no question that the charged offenses and underlying circumstances alleged . . . are serious . . . .

Second, the weight of the evidence is undoubtedly substantial . . . .

Third, . . . Lynch's lack of connection to the United States . . . , coupled with his immense wealth, require more stringent conditions of release than would otherwise apply in a comparable case where the defendant has more ties to the community . . . . While Lynch's resources would allow him to fund flight, they can *also* fund the kind of *extraordinary supervision* that courts have routinely held can reasonably assure such

a defendant's appearance. *See Madoff*, 586 F. Supp. 2d at 244 (describing the conditions imposed on Madoff's pretrial release, including *a $10 million bond and home detention with 24-hour monitoring at his wife's expense*); *United States v. Dreier*, 596 F. Supp. 2d 831, 833–34 (S.D.N.Y. 2009) (accepting a defendant's bail package that included a $10 million bond and home detention secured by *on-premises security guards*, who were allowed to use "temporary preventive detention and the use of reasonable force to thwart any attempt to flee") . . . . Though the Court must impose "the least restrictive . . . combination of conditions" that will reasonably assure Lynch's appearance, 18 U.S.C. § 3142(c)(1)(B), . . . *strict restrictions on wealthy defendants' security are necessary to prevent them from attempting to use those resources to circumvent their supervision* . . . .

Fourth, because Lynch does not present a danger to the community, this final factor weighs in favor of release. *See Townsend*, 897 F.2d at 996.

*Lynch*, 2023 WL 3436091, at *3–4 (emphases added).

In light of these findings—findings that forced the *Lynch* court to fashion a "condition or combination of conditions" (18 U.S.C. § 3142(f)) that would offset Lynch's flight extreme risk—that court fashioned a Lynch-funded "bail package" (*see Dreier*, 596 F. Supp. 2d at 833 (parenthetical)) to guarantee his future appearances. *See Lynch*, 2023 WL 3436091, at *4. Mr. Smirnov respectfully suggests that the same sort of thoughtful approach should be applied in his case.[11]

---

[11]    The court required that, in order to be released, Lynch: 1) "shall deliver . . . a bond in the amount of $100 million, secured by $50 million in cash or unencumbered shares of [his] publicly traded stock . . . ;" 2) "shall be confined to . . . San Francisco . . . and may only travel for meetings with counsel, medical appointments, and court appearances . . . Any further travel must be approved by the United States Attorney's Office and the Court . . . ;" 3) "shall be guarded on a 24-hour basis by a private security company at Defendant's expense, including video surveillance and armed guards . . . ;" 4) "shall

## VI.    <u>CONCLUSION</u>

Mr. Smirnov was previously deemed "releasable" by a United States Magistrate Judge—a finding supported by the recommendations of two Pretrial Services Offices. In ordering Mr. Smirnov detained, the district court never once mentioned the Magistrate Judge's findings; but when those deficiencies were pointed out in Mr. Smirnov's prior appeal under Rule 9(a), this Court affirmed the district court's ruling.

Since that affirmance, however, the district court has made a factual finding that is "clearly erroneous:" it suggested that Mr. Smirnov had not raised the issue of posting a corporate surety bond (or, as part of a "bail package"), when Mr. Smirnov had done so as early as February 26, 2024.

///

---

surrender all travel documents of any kind whatsoever . . . ;" 5) "shall be subject to strict supervision by Pretrial Services and adhere to any other conditions imposed by the Court." *Id*. at *4.

17

Even today—at this late stage and in this appellate forum—Mr. Smirnov represents not only that he remains ready to post a large corporate surety bond, but also that he will adhere scrupulously to any conditions of release that Judge Wright deems reasonable to impose. Mr. Smirnov thus implores this Court to grant him the presumptively reasonable pretrial release to which he is entitled.

DATED this 14th day of July, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

 /s/ David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Appellant
ALEXANDER SMIRNOV

## <u>STATEMENT OF RELATED CASES</u>

Appellant previously filed his (First) FRAP 9(a) Appeal, which was docketed as Ninth Circuit Court of Appeals Case No. 24-1133.

Additionally, Appellant previously filed his Emergency Petition for Writ of Mandamus under Circuit Rule 27-3, with this Honorable Court. *See* Ninth Circuit Court of Appeals Case No. 24-970.

Appellant is not aware of any other related case pending in this Court.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that: the foregoing brief uses 14-point Times New Roman proportionately spaced type; text is double spaced and footnotes are single spaced; a word count of the word processing system used to prepare the brief indicates that the brief (not including the table of contents, the table of authorities, the statement of related cases, the certificate of compliance, or the certificate of service) contains approximately 3,533 words.

Dated this 14th day of July, 2024.

<u>/s/ David Z. Chesnoff</u>
DAVID Z. CHESNOFF, ESQ.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of July, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system including:

Mr. Sean Mulryne, Assistant Special Counsel
Email: sean.mulryne@usdoj.gov
DOJ - U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Mr. Derek E. Hines, Senior Counsel
Email: deh@usdoj.gov
OFFICE OF THE U.S. ATTORNEY
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

Leo Wise, Principal Senior Assistant Special Counsel
Email: lwise@usa.doj.gov
DOJ - U.S. Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue, NW
Room B-200
Washington, DC 20530

Mr. Christopher M. Rigali
Email: christopher.rigali2@usdoj.gov
DOJ - U.S. Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue, NW
Room B-200
Washington, DC 20530

/s/ Rosemary Reyes
Employee of Chesnoff & Schonfeld