No. 24-4040
DISTRICT COURT CASE NO. 2:24-CR-91-ODW
RELATED CASE NO. 2:24-mj-00166-DJA-1

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ALEXANDER SMIRNOV,
Appellant-Defendant,

vs.

UNITED STATES OF AMERICA,
Appellee-Plaintiff.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
_____

**APPELLANT'S APPENDIX OF EXHIBITS 1 THROUGH 10**

**IN SUPPORT OF FRAP 9(a) APPEAL**

DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Appellant
ALEXANDER SMIRNOV

## APPENDIX OF EXHIBITS TO APPELLANT'S FRAP 9(A) APPEAL

### TABLE OF CONTENTS

**EXHIBIT:**                                    **DESCRIPTION:**

Exhibit 1……………………........ Defendant's Notice of FRAP 9(a) APPEAL
Filed July 1, 2024
(Doc. 91)
2:24-CR-91-ODW
AA000001-5

Exhibit 2……………………… Minute Order – Order on Defendant's Seventh
Motion to Reopen Detention Hearing on His
Motion to Reopen Detention Hearing (DE 79) and
to Modify Conditions of His Pretrial
Release (DE 75)
Filed June 25, 2024
(Doc. 90)
2:24-CR-91-ODW
AA000006-7

Exhibit 3……………………… Defendant's Supplement to Motion to Reopen
Detention Hearing and to Impose Conditions of
Pretrial Release
Filed June 20, 2024
(Doc. 83)
2:24-CR-91-ODW
AA000008-15

Exhibit 4……………………… Defendant's Reply to Opposition to Motion to
Reopen Detention Hearing and to Impose
Conditions of Pretrial Release
Filed June 7, 2024
(Doc. 80)
2:24-CR-91-ODW
AA000016-22

Exhibit 5………………………Government's Opposition to Motion to Reopen
Detention Hearing and to Impose Conditions of
Pretrial Release
Filed May 31, 2024
(Doc. 77)
2:24-CR-91-ODW
AA000023-32

Exhibit 6………………………Defendant's Notice of Motion and Motion to
Reopen Detention Hearing and to Impose
Conditions of Pretrial Release
Filed May 24, 2024
(Doc. 75)
2:24-CR-91-ODW
AA000033-49

Exhibit 7………………………Defendant's Supplement to Opposition to
Government's Application for Review of
Magistrate Judge's Bail Order
Filed February 26, 2024
(Doc. 34)
2:24-CR-91-ODW
AA000050-55

Exhibit 8………………………Transcript of February 26, 2024 hearing
(Doc. 38)
2:24-CR-91-ODW
AA000056-82

Exhibit 9………………………Transcript of February 20, 2024 hearing
(Doc. 20)
2:24-mj-00166-DJA-1
AA000083-128

Exhibit 10……………………..Central District of California Docket
2:24-CR-91-ODW
AA000129-140

///

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of July, 2024, I caused the forgoing

document to be filed electronically with the Clerk of the Court through the

CM/ECF system for filing; and served on counsel of record via the Court's

CM/ECF system including:

Mr. Sean Mulryne, Assistant Special Counsel
Email: sean.mulryne@usdoj.gov
DOJ - U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Mr. Derek E. Hines, Senior Counsel
Email: deh@usdoj.gov
OFFICE OF THE U.S. ATTORNEY
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

Leo Wise, Principal Senior Assistant Special Counsel
Email: lwise@usa.doj.gov
DOJ - U.S. Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue, NW
Room B-200
Washington, DC 20530

Mr. Christopher M. Rigali
Email: christopher.rigali2@usdoj.gov
DOJ - U.S. Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue, NW
Room B-200
Washington, DC 20530


/s/ Rosemary Reyes
Employee of Chesnoff & Schonfeld

Exhibit 1


Defendant's Notice of FRAP 9(a) APPEAL
Filed July 1, 2024
(Doc. 91)
2:24-CR-91-ODW

DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Defendant, ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
* * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>                    Plaintiff, )<br><br>v. )<br><br>ALEXANDER SMIRNOV, )<br><br>                    Defendant, ) | CASE NO. 2:24-CR-00091-ODW |

## DEFENDANT'S NOTICE OF FRAP 9(a) APPEAL

Notice is hereby given that Alexander Smirnov, Defendant herein, pursuant to FRAP 9(a) and 18 U.S.C. § 3145, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the District Court's Order Denying Defendant's Motion to Reopen Detention Hearing and to Modify Conditions of His Pretrial Release, which was entered June 25, 2024. *See* ECF No. 90.

1

There is no transcript associated with ECF No. 90, which was decided on the pleadings and which contains the District Court's Statement of Reasons for Detention. Appellant will provide the transcripts of prior hearings that are relevant to the issues with the briefing of this appeal.

DATED this 1st day of July, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/ David Z Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system including:

Derek Edward Hines
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue NW Room B-200
Washington, DC 20530
Email: deh@usdoj.gov

Leo J. Wise
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue, NW, Room B-200
Washington, DC 20530
Email: LJW@USDOJ.GOV

Christopher Michael Rigali
Office of Special Counsel, U.S. Dept. of Justice
950 Pennsylvania Avenue NW, Room B-200
Washington, DC 20530
Email: christopher.rigali2@usdoj.gov

Sean F Mulryne
Office of the Special Counsel - Weiss
950 Pennsylvania Avenue NW, Room B-200
Washington, DC 20530
Email: sfm@usdoj.gov

A copy of the foregoing was also served via First Class U.S. Mail, postage prepaid, to the individuals listed above.

/s/ Camie Linnell
Employee of Chesnoff & Schonfeld

AA000005

Exhibit 2

Minute Order – Order on Defendant's Seventh
Motion to Reopen Detention Hearing on His
Motion to Reopen Detention Hearing (DE 79)
and to Modify Conditions of His Pretrial
Release (DE 75)
Filed June 25, 2024
(Doc. 90)
2:24-CR-91-ODW

Case 2:24-cr-00091-ODW   Document 90   Filed 06/25/24   Page 1 of 1   Page ID #:1222

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:24-CR-00091-ODW | Date | June 25, 2024 |
| Title | United States of America vs. Alexander Smirnov | | |

| | |
|---|---|
| Present: The Honorable | Otis D. Wright II, United States District Judge |

| | |
|---|---|
| Sheila English | Not reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |

**Proceedings:**    **ORDER ON DEFENDANT'S SEVENTH MOTION TO REOPEN HEARING ON HIS MOTION TO REOPEN DETENTION HEARING [DE-79] AND TO MODIFY CONDITIONS OF HIS PRETRIAL RELEASE [DE-75].**

On February 26, 2024 following Defendant's arrest in Las Vegas, NV, he was ordered detained. [DE-46.] Three days later he filed a Notice of Appeal from that Order. [DE-41]. On May 1, 2024 the Court of Appeals affirmed the District Court's Order [DE-66.] Since that time Defendant has filed six Emergency Ex Parte Applications for either Medical Furlough or the Re-opening of the Detention Hearing.    The arguments have essentially been the same until recently when he has proposed  a modification to the conditions for release.  He has proposed to be under full-time surveillance of a security company who will promise not to let defendant leave the country.  That security company is not under the jurisdiction of this court and unlike a bond surety, would suffer no consequence should Defendant leave the country without permission.  Given Defendant's international contacts the Court finds no comfort in the proposed modification of the terms of pretrial release.  The Court's concerns about his leaving the jurisdiction remain and once again his requests, all of which appear to have a common goal, to be released from custody, are again **DENIED**.

| | : | 00 |
|---|---|---|
| Initials of Preparer | se | |

Exhibit 3

Defendant's Supplement to Motion to Reopen
Detention Hearing and to Impose
Conditions of Pretrial Release
Filed June 20, 2024
(Doc. 83)
2:24-CR-91-ODW

AA000008

1  DAVID Z. CHESNOFF, ESQ.
   *Pro Hac Vice*
2  RICHARD A. SCHONFELD, ESQ.
   California Bar No. 202182
3  CHESNOFF & SCHONFELD
4  520 South Fourth Street
   Las Vegas, Nevada 89101
5  Telephone: (702) 384-5563
6  dzchesnoff@cslawoffice.net
   rschonfeld@cslawoffice.net
7  Attorneys for Defendant, ALEXANDER SMIRNOV
8
9                 UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
10                       * * * * * *

11 UNITED STATES OF AMERICA,           )
                                       )
12           Plaintiff,                )
                                       )
13 v.                                  )    CASE NO. 2:24-CR-00091-ODW
                                       )
14 ALEXANDER SMIRNOV,                  )
                                       )    Date of Hearing:    June 24, 2024
15                                     )    Time of Hearing:    10:00 a.m.
16           Defendant,                )
                                       )
17 ─────────────────────────────────

18 **DEFENDANT'S SUPPLEMENT TO MOTION TO REOPEN DETENTION HEARING**
19 **AND TO IMPOSE CONDITIONS OF PRETRIAL RELEASE (ECF 75)**

20        COMES NOW, Defendant, ALEXANDER SMIRNOV ("Mr. Smirnov"), by and through

21 his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law

22 firm of CHESNOFF & SCHONFELD and hereby files this Supplement to his Motion to Reopen

23 the Detention Hearing and to Impose Conditions of Pretrial Release ("Def. Mot.") (ECF No. 75).

24

25

26

27

28
                                       1

Case 2:24-cr-00091-ODW   Document 83   Filed 06/20/24   Page 2 of 4   Page ID #:1207

Attached hereto as Exhibit 1 is a supplemental letter from Dr. Tanaka dated June 20, 2024 which directs this Honorable Court's "urgent attention" to "the critical medical situation," specifically, the risk of "complete and irreversible blindness" that Mr. Smirnov is facing. As stated in part in Dr. Tanaka's supplemental letter:

> Before his incarceration, Mr. Smirnov was scheduled to undergo glaucoma surgery, a necessary intervention to manage his condition. However, during his time in prison, he was denied access to his prescribed glaucoma medications. This lack of treatment led to significant pain and progressively worsening blurry vision. Follow-up testing performed on June 11, 2024, by Dr. Erika Lauren Doss at Alliance Eye Surgery Partners has confirmed that his glaucoma has rapidly advanced due to the absence of necessary medical care.
>
> Mr. Smirnov is now scheduled to undergo the previously postponed glaucoma surgery by an external ophthalmologist. It is imperative to understand that glaucoma surgery is not a one-time intervention but requires meticulous post-operative care. Regular follow-up visits are crucial to monitor intraocular pressure, ensure proper healing, and adjust medications as necessary to prevent further deterioration of vision.

*See* Exhibit 1.

Dr. Tanaka further states in part:

> Neglecting these post-operative requirements would not only negate the benefits of the surgery but could also result in complete and irreversible blindness for Mr. Smirnov. As his attending physician, I strongly urge the court to ensure that Mr. Smirnov receives appropriate medical follow-up care post-surgery by releasing him from custody during his post-operative recovery period. This would allow Mr. Smirnov to receive regular care by a qualified glaucoma specialist and access to necessary medications and treatments which have thus far been unavailable while he is incarcerated.
>
> The neglectful treatment Mr. Smirnov has endured thus far has already caused significant and avoidable damage to his vision. Ensuring his access to the required post-operative care is essential to prevent further harm and to uphold the standard of medical care that every individual is entitled to, regardless of their incarceration status. In addition, it must be noted that this neglect has led to Mr. Smirnov's inability to read the voluminous discovery in the case and to assist his lawyers.

*See id.*

2

Accordingly, it is imperative that this Honorable Court grant the instant Motion, so that Mr. Smirnov can receive the necessary treatment outlined by Dr. Tanaka in order to prevent Mr. Smirnov from suffering complete and irreversible blindness.

In addition, it should be noted that on information and belief, Mr. Smirnov has only made a total of two legal calls since being housed at MDC-Los Angeles in the SHU (one to Mr. Chesnoff and one to Mr. Khoury).  As such, it is not clear what information the government is relying on regarding Mr. Smirnov's ability to make legal calls.  Moreover, while in the SHU, Mr. Smirnov is not permitted to keep any discovery covered by the protective order in this case or to possess a laptop without the presence of counsel.  Furthermore, while other pre-trial detainees have regular access to social calls, Mr. Smirnov, a non-convicted (and presumed innocent), defendant remains isolated and is unable to have visitation with even his own family members, including his first cousin, who was recently denied visitation by the legal department.

Accordingly, in light of the still unresolved eye issues and logistical impediments infringing upon Mr. Smirnov's constitutional rights, including, but not limited to, his right to due process, a fair trial, effective counsel, right to assist in his defense, and right to be free from cruel and unusual punishment, this Honorable Court should grant Defendant's Motion.

Dated this 20th day of June, 2024.

Respectfully Submitted:
CHESNOFF & SCHONFELD

/s/  David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
Attorneys for Defendant
ALEXANDER SMIRNOV

3

### CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Camie Linnell
Employee of Chesnoff & Schonfeld

AA000012

# Exhibit 1

Supplemental letter from Dr. Tanaka
dated June 20, 2024

AA000013

H. George Tanaka, MD
Co-Director, Glaucoma Service,
California Pacific Medical Center
711 Van Ness Avenue, Suite 330, San Francisco, CA 94102



June 20, 2024

Honorable Otis D. Wright II
United States District Court – Central District of California
First Street Courthouse, 350 W. 1st Street,
Los Angeles, CA. 90012 - Courtroom 5D, 5th Floor.

Dear Honorable Judge Wright,

I am writing to bring to your urgent attention the critical medical situation of my patient, Mr. Alexander Smirnov, who is currently incarcerated in MDC-Los Angeles in the SHU. Mr. Smirnov has been under my care for many years for advanced glaucoma, a condition that requires consistent and rigorous medical treatment to prevent irreversible vision loss.

Before his incarceration, Mr. Smirnov was scheduled to undergo glaucoma surgery, a necessary intervention to manage his condition. However, during his time in prison, he was denied access to his prescribed glaucoma medications. This lack of treatment led to significant pain and progressively worsening blurry vision. Follow-up testing performed on June 11, 2024, by Dr. Erika Lauren Doss at Alliance Eye Surgery Partners has confirmed that his glaucoma has rapidly advanced due to the absence of necessary medical care.

Mr. Smirnov is now scheduled to undergo the previously postponed glaucoma surgery by an external ophthalmologist. It is imperative to understand that glaucoma surgery is not a one-time intervention but requires meticulous post-operative care. Regular follow-up visits are crucial to monitor intraocular pressure, ensure proper healing, and adjust medications as necessary to prevent further deterioration of vision.

Neglecting these post-operative requirements would not only negate the benefits of the surgery but could also result in complete and irreversible blindness for Mr. Smirnov. As his attending physician, I strongly urge the court to ensure that Mr. Smirnov receives appropriate medical follow-up care post-surgery by releasing him from custody during his post-operative recovery

period. This would allow Mr. Smirnov to receive regular care by a qualified glaucoma specialist and access to necessary medications and treatments which have thus far been unavailable while he is incarcerated.

The neglectful treatment Mr. Smirnov has endured thus far has already caused significant and avoidable damage to his vision. Ensuring his access to the required post-operative care is essential to prevent further harm and to uphold the standard of medical care that every individual is entitled to, regardless of their incarceration status. In addition, it must be noted that this neglect has led to Mr. Smirnov's inability to read the voluminous discovery in the case and to assist his lawyers.

Thank you for your attention to this urgent matter. Please feel free to contact me directly should you require any further information or clarification regarding Mr. Smirnov's medical condition and treatment needs.

Sincerely,

H. George Tanaka, MD

Co-Director, Glaucoma Service

California Pacific Medical Center

(415) 771-4020

ghtanakamd@gmail.com

Exhibit 4

Defendant's Reply to Opposition to Motion to
Reopen Detention Hearing and to
Impose Conditions of Pretrial Release
Filed June 7, 2024
(Doc. 80)
2:24-CR-91-ODW

1  DAVID Z. CHESNOFF, ESQ.
2  *Pro Hac Vice*
   RICHARD A. SCHONFELD, ESQ.
3  California Bar No. 202182
   CHESNOFF & SCHONFELD
4  520 South Fourth Street
5  Las Vegas, Nevada 89101
   Telephone: (702) 384-5563
6  dzchesnoff@cslawoffice.net
7  rschonfeld@cslawoffice.net
   Attorneys for Defendant, ALEXANDER SMIRNOV
8

9              UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
10                    * * * * * *

11 UNITED STATES OF AMERICA,        )
                                    )
12           Plaintiff,             )
                                    )    CASE NO. 2:24-CR-00091-ODW
13 v.                               )
                                    )
14                                  )
   ALEXANDER SMIRNOV,               )
15                                  )
             Defendant,             )
16                                  )
   ─────────────────────────────────)
17

18 **DEFENDANT'S REPLY TO OPPOSITION TO MOTION TO REOPEN DETENTION**
   **HEARING AND TO IMPOSE CONDITIONS OF PRETRIAL RELEASE**
19

20         COMES NOW, Defendant, ALEXANDER SMIRNOV ("Mr. Smirnov"), by and through

21 his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law

22 firm of CHESNOFF & SCHONFELD and hereby files his Reply to the Government's Opposition

23

24

25 / / /

26

27

28                              1

(Gov. Opp.") (ECF No. 77) to Mr. Smirnov's Motion to Reopen the Detention Hearing and to Impose Conditions of Pretrial Release ("Def. Mot.") (ECF No. 76).

Dated this 7th day of June, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/ David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

2

AA000018

Case 2:24-cr-00091-ODW   Document 80   Filed 06/07/24   Page 3 of 6   Page ID #:1194

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant respectfully submits this Reply to the Government's Opposition to the Motion to Reopen the Detention Hearing under 18 U.S.C. § 3142(f)(2).[1] In his motion, Mr. Smirnov pointed out that—although his eye disease had been mentioned as early as February 2024—it was only *as recently as May 17, 2024* that Dr. George Tanaka (Mr. Smirnov's personal eye surgeon) offered a dire assessment of his patient's imminent blindness:

- o  "[M]y patient, Alexander Smirnov, . . . carries a diagnosis of severe open angle glaucoma in both eyes . . . . [C]ontinued ophthalmologic care is essential to maintain Mr. Smirnov's eyesight.

- o  "Glaucoma is a progressive and incurable disease that requires daily eyedrop medications to prevent irreversible and permanent blindness. Santa Ana City Jail officials have confiscated my patient's eye drops . . . because 'the eye drops are for pre-operative care.' This statement is completely erroneous and untrue. Glaucoma patients are required to take daily eye drop medications . . . to prevent irreversible blindness.

- o  "Withholding Mr. Smirnov's eye drops is tantamount to allowing [him] to go blind . . . . Mr. Smirnov will lose a vital bodily function (vision) as a direct result of the negligence committed by the jail officials."

- o  "In my professional opinion Mr. Smirnov's visual health would be best served by releasing him from custody so that I may immediately resume appropriate sight-saving therapy including all necessary glaucoma medications and promptly schedule and perform his long overdue glaucoma surgery."

Exhibit 1 to Def. Mot. at 1.

In response, the government claims that this Court should not, in the first instance, entertain this new evidence of impending blindness. Instead, the government asserts that—because Mr.

[1] "A detention hearing may be reopened if the party requesting reopening presents 'new information.' 18 U.S.C. § 3142(f) (hearing may be reopened 'if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community'); *United States v. Flores*, 856 F. Supp. 1400, 1405–07 (E.D. Cal. 1994)." *United States v. Espinoza*, No. CRS08-0448 JAM, 2009 WL 3614849, at *1 (E.D. Cal. Oct. 27, 2009).

3

AA000019

Smirnov complained generally about his eye disease back in February 2024—Dr. Tanaka's far more recent (that is, far newer) assessment is not "new" but is, according to the government, just a recycling of the "same old Smirnov complaint"—one that the government has grown tired of responding to.[2] This Court should thus reject the government's position (one that ignores their months-long failure to provide Mr. Smirnov with eye surgery while trying to portray Mr. Smirnov as a whiner who should just "suck it up" as his world grows darker and blurrier) and entertain Mr. Smirnov's new evidence of blindness, that is, Dr. Tanaka's far newer, May 17, 2024 assessment on the merits.

Substantively—that is, after correctly considering Mr. Smirnov's new proposal on the merits—the government has virtually nothing to say. First, they ignore the substance of the new 24-security proposal and, without that new proposal, misleadingly assert that this Court has ruled against Mr. Smirnov in the past, without this new condition. *See* Gov. Opp. at 1-4 ("once again" rehashing the procedural history).

Elsewhere, the government warns that allowing Mr. Smirnov to pay for his own security would raise the "uncomfortable" (Gov. Opp. at 5, n.3) specter of favoring defendants who happen to *not* be indigent. The government's warning is both empty and baseless. First, it is the *defendant and his family* that will foot the bill for the 24-security. Second—and underscoring the government's egalitarian position—the defendant and his family's offer to pay for Mr. Smirnov's eye surgery (through Dr. Tanaka) and his own security spares the taxpayers the burden of paying for assigned eye surgeons and assigned security. If the prosecution is "uncomfortable" about any aspect of this arrangement, then it should take solace in knowing that the taxpayers will be saved

---

[2] One can almost hear government counsel's exasperation when grousing that Mr. Smirnov is "once again" (Gov. Opp. at 1) insisting upon his constitutional and statutory rights under the Bail Reform Act.

4

AA000020

Case 2:24-cr-00091-ODW  Document 80  Filed 06/07/24  Page 5 of 6  Page ID #:1196

from the expense. *See, e.g., United States v. Madoff,* 586 F. Supp. 2d 240, 244 (S.D.N.Y. 2009) (court releases defendant facing long prison sentences on conditions, including defendant's "employ[ment], at his wife's expense, [of] a security firm acceptable to the Government," which will "provide[] round-the-clock monitoring at Madoff's building, 24 hours per day," and which "will provide additional guards available on request if necessary to prevent harm or flight").

For the foregoing reasons and for those set forth in Mr. Smirnov's opening motion, therefore, this Court should entertain his motion to reopen the detention hearing and grant Mr. Smirnov his presumptive release under the previously imposed conditions, the new condition of 24-hour security, and any other conditions this Court deems reasonable to assure his appearance.

DATED this 7th day of June, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/ David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

5

AA000021

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of June, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Camie Linnell
Employee of Chesnoff & Schonfeld

6

Exhibit 5

Government's Opposition to Motion to Reopen
Detention Hearing and to Impose
Conditions of Pretrial Release
Filed May 31, 2024
(Doc. 77)
2:24-CR-91-ODW

DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels
     950 Pennsylvania Avenue NW, Room B-200
     Washington, D.C. 20530
     Telephone: (771) 217-6090
     E-mail:     SFM@usdoj.gov; sean.mulryne@usdoj.gov
     Attorneys for the United States

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:24-cr-00091-ODW |
|---|---|
| Plaintiff, | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REOPEN DETENTION HEARING AND TO IMPOSE CONDITIONS OF PRETRIAL RELEASE** |
| v. | |
| ALEXANDER SMIRNOV, | |
| Defendant. | |

     Defendant Alexander Smirnov ("Defendant") has moved to reopen the detention proceedings that this Court held and concluded three months ago, on February 26, 2024, and thus is seeking—once again—his pretrial release subject to conditions. ECF No. 75 ("Def. Mot."). Pursuant to the Court's local rules, a hearing was requested for June 24, 2024. Because Defendant has not presented new information that has a material bearing on the issue of detention, as required by statute, the Court should deny the motion (and do so without a hearing, as it is clear from the papers that Defendant has failed to satisfy his burden). As this Court and the Ninth Circuit have recognized, Defendant presents a substantial flight risk for whom pretrial detention is both appropriate and necessary. Accordingly, Defendant's motion to reopen his detention hearing should be denied.

AA000024

Dated: May 31, 2024

Respectfully submitted,

DAVID C. WEISS
Special Counsel

/s/_____

LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels

United States Department of Justice

ii

Case 2:24-cr-00091-ODW   Document 77   Filed 05/31/24   Page 3 of 9   Page ID #:1175

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     BACKGROUND

On February 14, 2024, Defendant was indicted in the Central District of California on one count of making false statements to federal law enforcement, in violation of 18 U.S.C. § 1001 (Count One), and one count of fabricating information in a federal investigation, in violation of 18 U.S.C. § 1519 (Count Two).  On February 20, 2024, a magistrate judge in the District of Nevada—where Defendant had been arrested—held a detention hearing wherein the judge found that Defendant was a flight risk but concluded that sufficient conditions existed to ensure Defendant's presence at trial.  The government then filed a motion with this Court seeking to revoke the magistrate judge's release order. ECF No. 11.

On February 22, 2024, this Court granted the government's motion and issued an arrest warrant for Defendant.  ECF Nos. 15 & 16.  As part of its revocation order, the Court explained that on the day Defendant was arrested after returning to the United States on an international flight, he "admitted that officials associated with Russian intelligence were instrumental in passing to him a fabricated story about a public official of the United States and his son."  ECF No. 15, at 1-2.  The Court then articulated the combination of factors that led it to conclude that detention was necessary in this case:

> Now having considered the history of Defendant's relationship with his FBI handler during which he has proven himself not to be trustworthy, his admitted extensive and recent contacts with agents of foreign intelligence agencies, including Russian intelligence, and his stated intention to once again leave the country, this court has conduct[ed] its own de novo review, and as a result this court reverses the release order and requests the issuance of an arrest warrant for Defendant.
>
> Considering the fact Defendant has at his immediate disposal several million dollars, the ability to secure a passport at the Israeli embassy and foreign interests likely willing to assist Defendant in evading capture.  An ankle bracelet is at best an irritant and insignificant impediment to his ability to leave

AA000026

> the country.   In this court's considered opinion, the only effective measure to assure Smirnov makes his court appearances is detention.

*Id.* at 2.

On February 26, 2024, the Court permitted a further hearing on detention, which it was not required to hold, as part of its *de novo* review of the magistrate judge's bail proceedings.  At the outset of the hearing, the Court explained that it must determine whether there are "conditions or combinations of conditions which will assure that [Defendant] will show up for trial," and the Court explained that it had reviewed "all of the papers" and would "entertain further discussion," but "to let you know what I'm thinking, I'm not satisfied that there are conditions or combinations of conditions which will … satisfy my concern as to whether or not [Defendant] will not flee the jurisdiction." ECF No. 38, at 6.  During the hearing, the Court and the parties addressed multiple issues including Defendant's foreign contacts and financial situation.  At the conclusion of the hearing, the Court stated that "I have not changed my mind." *Id.* at 25.  The Court noted again that "I've read everyone's papers, I understand the arguments," *id.* at 24, and continued that "[t]here is nothing garden variety about this case.  To compare this to all the cases that we normally see, this is an outlier." *Id.* at 25.

Defendant appealed the Court's pretrial detention order to the Ninth Circuit.  *See United States v. Alexander Smirnov*, No. 24-1133 (9th Cir.).  A panel of the Ninth Circuit affirmed this Court's detention order, holding that "[t]he district court correctly found that the government has met its burden of showing, by a preponderance of the evidence, that 'no condition or combination of conditions will reasonably assure the defendant's appearance,' and that appellant thus poses a risk of flight." No. 24-1133, ECF No. 14 (brackets and citations omitted).  The Ninth Circuit just recently denied Defendant's Petition for Rehearing with Suggestion for Rehearing En Banc.  No. 24-1133, ECF No. 16.

Nearly three months after the Court's revocation order, arrest warrant, and hearing,

AA000027

Case 2:24-cr-00091-ODW   Document 77   Filed 05/31/24   Page 5 of 9   Page ID #:1177

Defendant now moves for the Court to reopen the detention hearing, release Defendant from custody, and impose conditions.

## II.   ARGUMENT

Pursuant to 18 U.S.C. § 3142(f)(2), a detention hearing

> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

*Id.*; *see also United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012) ("[T]he new information must be of a nature that would increase the likelihood that the defendant will appear at trial[.]").

Defendant now moves to reopen the detention proceedings under this provision, arguing that the "new information" warranting another detention hearing is a letter by Defendant's eye doctor, Dr. H. George Tanaka, dated May 17, 2024, in which Dr. Tanaka notes Defendant's glaucoma diagnosis and the need for continued treatment including medications and surgery. Def. Mot. at 3-4; *see also* Exh. 1 to Def. Mot. (Dr. Tanaka's letter). However, this information is neither new nor was it "not known to the movant at the time of the hearing[.]" 18 U.S.C. § 3142(f)(2). Indeed, Defendant acknowledges in his motion that his severe eye condition and the need for treatment and surgery were well documented in Defendant's "earliest filings." Def. Mot. at 4 (citing ECF No. 33). In other words, the basis for Defendant's current motion was known to the Court and the parties at the time of his detention hearing on February 26, 2024, when defense counsel cited

3

AA000028

Case 2:24-cr-00091-ODW   Document 77   Filed 05/31/24   Page 6 of 9   Page ID #:1178

Defendant's eye condition and treatment as a reason for Defendant's pretrial release.[1] Moreover, Defendant has filed multiple emergency *ex parte* motions with the Court since March 11, 2024, each seeking relief related to Defendant's eye condition including requests for medical furloughs and/or transportation to San Francisco for surgery with Dr. Tanaka, an order requiring eye surgery by a government contractor, and the immediate provision of eye drops. *See, e.g.*, ECF Nos. 52, 60, 67, 70. With the exception of Defendant's most recent motion, which remains pending, the Court has denied Defendant's previous motions. *See* ECF Nos. 56, 63, 69. And the Ninth Circuit previously affirmed the Court's denial of temporary release. *See* No. 24-1133, ECF No. 14 ("[T]he district court did not err by subsequently concluding that appellant had not shown compelling reasons for temporary release under 18 U.S.C. § 3142(i).").[2]

---

[1]  The hearing before this Court on February 26, 2024, concluded with defense counsel raising "some eye medication that [Defendant] needs," and the Court responded, "Let's go off the record." ECF No. 38, at 25. Notably, earlier in the hearing, defense counsel mentioned Defendant's medical needs as a basis for his pretrial release, representing that Defendant takes daily medication for an eye condition and "has another surgery scheduled." *Id.* at 16. Consequently, Dr. Tanaka's letter does not present new information previously unknown to the Court or the parties. Moreover, Defendant recently has been transferred from Santa Ana City Jail to MDC-Los Angeles, which should help to facilitate any requisite treatment or procedure.

[2]  Defendant argues that "an additional basis to reopen the detention hearing" is his current placement in the "Secure (Special) Housing Unit ('SHU')" of MDC-Los Angeles. Def. Mot. at 4-5 n.1. According to Defendant, his SHU placement "may complicate his medical treatment . . . and impair his trial preparation." *Id.* But Defendant has provided no factual information to support his assertion that his current placement in the SHU has in fact complicated his medical treatment. Furthermore, Defendant, raised similar concerns during the hearing before this Court on February 26, 2024, *see* ECF No. 38, at 11-12, and those concerns did not provide an ample basis for release then nor do they now.

4

AA000029

Defendant's motion should be denied because there is no new information or basis to justify reopening the detention proceedings, let alone pretrial release.  But even assuming *arguendo* that such information or a basis existed, the fact remains that Defendant is a substantial flight risk for whom no conditions or combination of conditions will ensure his appearance.  The Court already has weighed the relevant facts and circumstances and concluded that Defendant is a flight risk warranting pretrial detention. *See* ECF No. 15.  The Ninth Circuit affirmed the Court's ruling.  *See* No. 24-1133, ECF No. 14.  Nothing has changed to alter or disrupt this Court's analysis and conclusion. Defendant, in his motion, proposes another condition of release:  "round-the-clock monitored security, paid for by [Defendant]."  Def. Mot. at 6; *see also* Exh. 2 to Def. Mot. (letter from Official Security, Inc.).  However, Defendant already proposed this condition during the hearing held before this Court on February 26, 2024.  *See* ECF No. 38, at 15 ("If the Court wants, we will hire private security to monitor his [sic] 24 hours a day where he is.").  This proposal is not new, does not guarantee Defendant's appearance at trial— especially when he would be paying and financing the very individuals tasked to watch him—and already has been rejected by this Court.[3]

---

[3] Defendant's proposed arrangement also would invite an uncomfortable question about whether a defendant, whom multiple courts have found presents a significant flight risk, should be able to essentially pay for his pretrial release based on his substantial personal wealth—the extent of which Defendant misrepresented to Pretrial Services, as the Court is aware. *See* ECF No. 38.

AA000030

### III.    CONCLUSION

Based on the above, the Court should address Defendant's request on the papers without a hearing, and should deny Defendant's Motion to Reopen Detention Hearing and To Impose Conditions of Pretrial Release.

AA000031

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the  attorneys of record for Defendant.

Dated: May 31, 2024                      /s/ _____

LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels

7

AA000032

Exhibit 6

Defendant's Notice of Motion and Motion to
Reopen Detention Hearing and to
Impose Conditions of Pretrial Release
Filed May 24, 2024
(Doc. 75)
2:24-CR-91-ODW

DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant, ALEXANDER SMIRNOV

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
\* \* \* \* \* \*

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) CASE NO. 2:24-CR-00091-ODW |
| Plaintiff, | ) |
| | ) **NOTICE OF MOTION AND MOTION** |
| v. | ) **TO REOPEN DETENTION HEARING** |
| | ) **AND TO IMPOSE CONDITIONS OF** |
| ALEXANDER SMIRNOV, | ) **PRETRIAL RELEASE** |
| | ) |
| | ) |
| Defendant, | ) **Honorable Otis D. Wright II** |
| | ) **June 24, 2024 at 10:00 a.m.** |

**PLEASE TAKE NOTICE** that on June 24, 2024, at 10:00 am, or as soon thereafter as counsel may be heard, Defendant, ALEXANDER SMIRNOV ("Mr. Smirnov"), by and through his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD, will ask this Honorable Court to enter an order granting his motion to Reopen Detention Hearing and to Impose Conditions of Pretrial Release.

1

Specifically, Defendant, Mr. Smirnov hereby moves this Honorable Court to reopen the detention hearing of February 26, 2024 and the amended order of detention (ECF No. 57; Mar. 11, 2024) based on "information . . . that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required . . . ." 18 U.S.C. § 3142(f)(2). Mr. Smirnov also requests that, having reopened the detention hearing, this Court release him under 18 U.S.C. § 3142(g), pursuant to: 1) the previously imposed conditions of release, 2) the previously volunteered conditions of release, 3) the new condition (24-hour monitoring of Mr. Smirnov), as discussed below, and 4) any additional conditions imposed by this Court.

This Motion is made and based upon the attached Memorandum of Points and Authorities; the Letter of Dr. H. George Tanaka, M.D. (May 17, 2024) (attached as Exhibit 1); the Letter of Official Security, Inc. (May 16, 2024) (attached as Exhibit 2); the argument of counsel; and any other such evidence as may be presented.  Counsel has conferred regarding the substance of this Motion and has been unable to resolve the issues.

Dated this 24th day of May, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

  /s/   David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice*
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
Attorneys for Defendant ALEXANDER SMIRNOV

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.    THIS COURT SHOULD REOPEN THE DETENTION HEARING BASED ON THE EMERGENCE OF NEW INFORMATION, UNDER 18 U.S.C. § 3142(f)(2).**

On February 26, 2024, this Court held a hearing on the government's application for review of the Magistrate Judge's order releasing Mr. Smirnov on conditions, under 18 U.S.C. § 3142. At the conclusion of the hearing, this Court entered an order that Mr. Smirnov would be detained (ECF No. 46) and, on March 11, 2024, this Court entered an amended order of detention, finding that "no condition or combination of conditions will reasonably assure . . . the appearance of the defendant as required." ECF No. 57 at 2.

Mr. Smirnov now seeks to reopen the detention hearing under 18 U.S.C. § 3142(f)(2).

A detention hearing may be reopened if the party requesting reopening presents "new information." 18 U.S.C. § 3142(f) (hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community"); *United States v. Flores*, 856 F. Supp. 1400, 1405–07 (E.D. Cal. 1994).

*United States v. Espinoza*, No. CRS08-0448 JAM, 2009 WL 3614849, at *1 (E.D. Cal. Oct. 27, 2009).

The statutorily mandated "new information" exists here. Specifically (and, as this Court is aware), Dr. H. George Tanaka advised on May 17, 2024 as to the *current* status of Mr. Smirnov's eye disease:

o    "[M]y patient, Alexander Smirnov, . . . carries a diagnosis of severe open angle glaucoma in both eyes . . . . [C]ontinued ophthalmologic care is essential to maintain Mr. Smirnov's eyesight.

o    "Glaucoma is a progressive and incurable disease that requires daily eyedrop medications to prevent irreversible and permanent blindness. Santa Ana City Jail officials have confiscated my patient's eye drops . . . because 'the eye drops are for pre-operative care.' This statement is completely erroneous and untrue. Glaucoma

3

Case 2:24-cr-00091-ODW  Document 75  Filed 05/24/24  Page 4 of 9  Page ID #:1154

patients are required to take daily eye drop medications . . . to prevent irreversible blindness.

- o "Withholding Mr. Smirnov's eye drops is tantamount to allowing [him] to go blind . . . . Mr. Smirnov will lose a vital bodily function (vision) as a direct result of the negligence committed by the jail officials."

- o "In my professional opinion Mr. Smirnov's visual health would be best served by releasing him from custody so that I may immediately resume appropriate sight-saving therapy including all necessary glaucoma medications and promptly schedule and perform his long overdue glaucoma surgery."

Exhibit 1 (May 17, 2024) at 1 (full letter).

Mr. Smirnov submits that Dr. Tanaka's May 17 assessment could not have been known back in February, when Mr. Smirnov first appeared before this Court. While Mr. Smirnov did, from his earliest filings, note that he suffered from eye disease (*see, e.g.*, ECF No. 33 (Feb. 23, 2024) at 5 ("Mr. Smirnov suffers from significant medical issues related to his eyes that require ongoing treatment. [He] has had seven surgeries in the last year; he must take prescription medication daily.")), his eye disease has—as Dr. Tanaka points out—grown far worse over the nearly three months that he has been in custody. *See, e.g.*, Ex. 1 at 1 (on May 17, Dr. Tanaka warns of potential blindness at least four times). For this reason, therefore, this Court should reopen the detention hearing under 18 U.S.C. § 3142(f)(2).[1]

_____

[1]    As an additional basis to reopen the detention hearing, undersigned counsel learned on May 23 that the United States Marshal, understandably concerned about Dr. Tanaka's urgent warnings about Mr. Smirnov's eyesight, just transferred him from the Santa Ana jail to the MDC in Los Angeles, where they decided to place Mr. Smirnov in the Secure (Special) Housing Unit ("SHU") of that facility.

Mr. Smirnov's internment in the SHU may complicate his medical treatment (namely, his receipt of his three types of eye drops and his long-overdue surgery) and impair his trial preparation. Specifically, placement in the SHU will make Mr. Smirnov very isolated and will deprive him of what he and his attorneys need to prepare his defense: we need to have access to a computer and to a laptop or tablet (which were available at Santa Ana), as well as a

4

Case 2:24-cr-00091-ODW   Document 75   Filed 05/24/24   Page 5 of 9   Page ID #:1155

**B.   REASONABLE CONDITIONS OF RELEASE—NAMELY, 1) THE CONDITIONS IMPOSED BY THE MAGISTRATE JUDGE, 2) THE ADDITIONAL CONDITIONS PROPOSED BY MR. SMIRNOV, *AND* 3) THE NEW, ADDITIONAL CONDITION OF 24-HOUR MONITORED SECURITY— SHOULD BE IMPOSED TO ENSURE MR. SMIRNOV'S APPEARANCE, UNDER 18 U.S.C. § 3142(g).**

It is unquestioned that the Bail Reform Act erects a presumption in favor of pretrial release in cases such as Mr. Smirnov's. *See* 18 U.S.C. § 3142(e)(2),(3).[2]

It is unquestioned that, when he was previously released on conditions in this case, Mr. Smirnov—far from trying to flee—maintained full compliance and was, in fact, rearrested in his attorney's office in Las Vegas while on a break from a defense preparation meeting with Mr. Schonfeld and the undersigned counsel. *See* ECF No. 33 at 10-12 (magistrate judge adds the following conditions of release on top of those recommended by pretrial services: requiring that "you . . . seek employment" but that "you're not going to be able to continue with your consulting business while this case is pending;" that, "I'm not going to allow foreign travel. In fact, I'm not going to allow *any* travel;" that "[y]ou're to surrender your U.S. passport and your

---

private interview room not separated by a partition (as exists in the SHU), but similar to the attorney rooms in the visiting area at MDC. In addition, Mr. Smirnov's telephone and e-mail access (which he has been using consistently to communicate with us) has been completely restricted in the SHU. Even today, he had to get special assistance from a guard just to call me to tell me he had been moved.

[2]     As argued previously, the Section 3142(g) factors preponderate in favor of presumptive release. *See, e.g.,* ECF No. 33 at 15-21 (applying factors and presumptive, as required under *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985).

Moreover, Dr. Tanaka's recent prediction of Mr. Smirnov's worsening "physical . . . condition" and blindness further strengthens the presumption of release. *See* 18 U.S.C. § 3142(g)(3)(A) (among factors to consider is "physical . . . condition"); *see also, e.g., United States v. Montgomery*, 481 F. Supp. 3d 1179, 1183 (E.D. Wash. 2020) (ruling that wholesale release from incarceration is warranted where, among other factors, "Defendant's advanced age and *medical condition* have alleviated any risk Defendant previously posed to the community") (emphasis added).

5

Case 2:24-cr-00091-ODW  Document 75  Filed 05/24/24  Page 6 of 9  Page ID #:1156

Israeli passport . . . immediately;" that "you shall not obtain a passport or *any other* international travel documents;" that "your travel is restricted to Clark County, Nevada . . . . [Y]ou are not allowed to go to that airport.") (quoting detention hearing before Honorable Magistrate Judge Daniel Albregts).[3]

To this host of conditions, Mr. Smirnov now proposes another one for this Court's consideration: round-the-clock monitored security, paid for by Mr. Smirnov. As set forth in the Letter of Daryl Cronfeld, CEO and Licensee of Official Security, Inc. ("OS") (May 16, 2024) (attached as Exhibit 2), Official Security is a licensed, experienced company that has, since 1978, provided trained protection teams to monitor every aspect of the movement and location of their subject (here, Mr. Smirnov). *See* Ex. 2 at 1-2 (describing OS's experience; noting that "[o]ur team will not deviate from any Court [approved] travel location unless it is cleared by the Attorney;" and emphasizing that OS's employees are prescreened for drug use, English-speaking or bilingual, and trained in self-defense protection).[4]

Having spoken at length with Mr. Cronfeld regarding monitoring mechanisms to ensure Mr. Smirnov's compliance (and, of course, non-flight), undersigned counsel understands that OS would monitor Mr. Smirnov round-the-clock from his Las Vegas apartment. His apartment

---

[3]  Moreover, in addition to the foregoing, Mr. Smirnov personally proposed that still more conditions be imposed upon him while on pretrial release. *See* ECF No. 34 at 3-4 (proposing 1) posting of corporate surety bond, 2) appointment of third-party custodian, 3) imposition of house arrest (with sole exceptions for medical treatment and meetings with attorneys), 4) appointment of special master to oversee financial dealings, and 5) execution of a waiver of extradition; further noting that Counsel for Consular Affairs at the Israeli Consulate in Los Angeles assured undersigned counsel that, if requested by Judge Wright, the Israeli consulate and Embassy will *not* reissue a passport to Mr. Smirnov).

[4]  Should this Court request it, undersigned counsel will have Mr. Cronfeld or a company representative attend any hearings (in-person or via Zoom) and answer any questions posed by this Court.

AA000039

is served by a private elevator (this is, it opens on a floor that contains only his apartment), and, should this Court order it, OS personnel can be stationed inside Mr. Smirnov's apartment, 24-hours a day, to reduce even further the chance of escape.

OS would, if hired, immediately report both to this Court and to the pretrial services offices in Nevada, the Central District of California, or both. Undersigned counsel would get permission in advance from this Court and from the pretrial services office before any attorney meeting or doctor's appointment took place. And finally, this Court (or any member of this Court's staff) will be able to contact OS at any time to ensure that Mr. Smirnov was in just one of three places—his apartment, his lawyer's office, or his doctor's office—and nowhere else.[5]

It is difficult to imagine a half-blind man "fleeing" under such conditions. To do so, one must conjure a scenario in which Mr. Smirnov evades his 24-hour security team, gropes his way blindly to the airport (presumably in disguise), bluffs his way onto an international flight without a passport, and makes a new life for himself under a new name, in a country without an extradition treaty. This scenario—farcical enough on its face—approaches the realm of fantasy when we recall that Mr. Smirnov, far from facing the death penalty or a long custodial sentence if convicted, faces two simple charges carrying guideline ranges so modest that, even if convicted at his December 2024 trial, he will by then have served more than one-third of the low-end of the anticipated advisory range. *See* ECF No. 33 at 4, n.1 (under U.S.S.G. § 2J1.2.1 and with "every conceivable guideline enhancement," advisory sentencing range would still be just 30-37 months). The idea that "*no* condition or combination of conditions" of release can be

---

[5]    As noted in Ex. 2, OS will arrange to transport (or, should this Court require it, personally transport) Mr. Smirnov to and from these authorized destinations in secure vehicles. *See id.* at 1. Should Mr. Smirnov somehow pull off a functionally impossible escape during an attorney visit or doctor's appointment, he will not get past OS personnel at the airport. *See id.* (OS "interface[s] with the local airports" so their personnel can "ingress and egress through certain areas" to better monitor the subjects).

7

Case 2:24-cr-00091-ODW   Document 75   Filed 05/24/24   Page 8 of 9   Page ID #:1158

1   fashioned to ensure Mr. Smirnov's future appearances under these circumstances (and, in the

2   face of such modest punishment) is, therefore, not tenable.

3   **C.      CONCLUSION**

4          Mr. Smirnov would readily accept the imposition of all the foregoing conditions of

5   release, together with any new conditions that this Court deems necessary.

6          For this reason, Mr. Smirnov respectfully requests that this Court reopen the detention

7   

8   hearing and order him released on appropriate conditions under the Bail Reform Act.

9          DATED this 24th day of May, 2024.

10
                                    Respectfully Submitted:
11
                                    CHESNOFF & SCHONFELD
12

13                                    /s/   David Z. Chesnoff
                                    DAVID Z. CHESNOFF, ESQ.
14                                    *Pro Hac Vice*
                                    RICHARD A. SCHONFELD, ESQ.
15                                    California Bar No. 202182
                                    520 South Fourth Street
16                                    Las Vegas, Nevada 89101
                                    Telephone: (702) 384-5563
17                                    rschonfeld@cslawoffice.net
                                    dzchesnoff@cslawoffice.net
18                                    Attorneys for ALEXANDER SMIRNOV
19

20

21

22

23

24

25

26

27

28

                                    8

AA000041

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Camie Linnell
Employee of Chesnoff & Schonfeld

AA000042

# EXHIBIT 1

Case 2:24-cr-00091-ODW   Document 75-1   Filed 05/24/24   Page 2 of 2   Page ID #:1161

May 17, 2024

RE: CR 2:24-cr-00091-ODW
United States of America v. Alexander Smirnov

To the Court:

I read with great concern the above referenced document regarding my patient, Alexander Smirnov, who carries a diagnosis of severe open angle glaucoma in both eyes. I have documented in previous correspondence that continued ophthalmologic care is essential to maintain Mr. Smirnov's eyesight. Glaucoma is a progressive and incurable disease that requires daily eyedrop medications to prevent irreversible and permanent blindness. Santa Ana City Jail officials have confiscated my patient's eye drops and have not provided him with any new eye drops because "the eye drops are for pre-operative care." This statement is completely erroneous and untrue. Glaucoma patients are required to take daily eye drop medications to control their intraocular pressure around the clock. These drops are not simply taken before an operation. They are required **every day** to prevent irreversible blindness. It is obvious that the medical staff at Santa Ana City Jail are not qualified to make any judgements whatsoever regarding the medical necessity of Mr. Smirnov's glaucoma medications. Withholding Mr. Smirnov's eye drops is tantamount to allowing Mr. Smirnoff to go blind which falls below the standard of care of any accredited medical facility. These eye drops are not "Pain-Reducing" medications meant to provide comfort. They are necessary to prevent blindness from glaucoma. Mr. Smirnov's current complaints of pain and blurry vision indicate his intraocular pressure is markedly elevated and his glaucoma is being grossly undertreated. This would be blatantly obvious with a proper examination of Mr. Smirnov's eyes and a measurement of his intraocular pressure which is evidently beyond the capabilities of the jail. Mr. Smirnov will lose a vital bodily function (vision) as a direct result of the negligence committed by the jail officials. In addition, Mr. Smirnoff has requested a release from custody which would allow him the opportunity to have prompt and appropriate surgical therapy for his glaucoma by a qualified and experienced fellowship-trained glaucoma specialist such as myself. By holding Mr. Smirnov in custody and withholding without proper medical care, the United States government is complicit in the loss of his vision.

In my professional opinion Mr. Smirnov's visual health would be best served by releasing him from custody so that I may immediately resume appropriate sight-saving therapy including all necessary glaucoma medications (timolol, brinzolamide, bimatoprost) and promptly schedule and perform his long overdue glaucoma surgery. I am fully qualified, prepared and equipped to provide Mr. Smirnov with the urgent ophthalmologic attention he needs to restore his vision, and I will assume full responsibility for his glaucoma care during the time he is released from custody.

I urge the Court to grant Mr. Smirnov's motion for 1) Immediate restoration of his glaucoma therapy and 2) Release from custody to receive prompt and appropriate glaucoma surgery.

Respectfully submitted,

H. George Tanaka, MD
Co-Director, Glaucoma Service
California Pacific Medical Center
San Francisco, California

# EXHIBIT 2



# official security, inc.
### protective services

Chesnoff and Schonfeld
520 South Fourth Street
Las Vegas, NV. 89101

Mr. Chesnoff
    Thank you for taking my call, in reference to our Executive Protection Teams(also known as; CBP teams)

Since 1978 our company has a long standing history of providing superior customer service along with unparalleled professionalism.
    When 911 happened; it was my company that was hired by TSA formally Homeland Security to provide immediate CBP teams at every training facility throughout the US and Territories including; American Samoa, Guam and the North Mariana islands.

    At any given moment we were at 35 to 40 locations on a daily basis that we provided CBP Teams.

    We achieved our goals by hiring former Federal Agents that were able to fly to specific cities on a few hours notice.
    Furthermore, we hired Off Duty Officers from the individual cities as our On Site LEO's.
    Our job was to protect each government testing officer both on the job and at the city where the sites were located.

    To simplify our tasks for the government, we arranged for all transportation including ground and air. Additionally, we interfaced with the local airports liaison to permit our teams to ingress and egress thru specific areas.

    In today's environment we additionally provide CBP teams for the transporting of high valued assets(ie)Executives, Families, Jewelry, and Art Work.
    Prior to Official Security taking any job, I personally meet with the prospective Client and His or Her Attorney. By doing this, all of us have a working knowledge of what we can accomplish by adhering to the law.

    If by any chance the Attorney has Court documents that we need follow; we will. Our teams will not deviate from any Court travel location unless it is cleared by the Attorney.

AA000046

Of the personnel hired all have been tested for English speaking (or bilingual) and report writing. Once that has been achieved all must pass a drug test prior to hiring and are subject to random, and practiced drug testing plus alcohol screening.

Currently, our teams are former Military and LEO's. Due to the everchanging environment that our teams travel to; all must be trained and certified in Krav Maga and other self defense protection

Thanking you,

Darryl Cronfeld
CEO, Licensee
May 16, 2024

Case 2:24-cr-00091-ODW   Document 75-3   Filed 05/24/24   Page 1 of 2   Page ID #:1165

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
* * * *

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | CASE NO. 2:24-CR-00091-ODW |
| v. | ) | |
| ALEXANDER SMIRNOV, | ) | |
| Defendant, | ) | [PROPOSED] ORDER |

Upon reviewing Defendant's Motion to Reopen the Detention Hearing and to Impose New Conditions of Pretrial Release, and with good cause appearing, said Motion is GRANTED, as follows below.

The Court ORDERS that the Amended Order of Detention (ECF No. 57) be reopened; and

///

1

AA000048

Case 2:24-cr-00091-ODW   Document 75-3   Filed 05/24/24   Page 2 of 2   Page ID #:1166

1   The Court FURTHER ORDERS that Defendant be released from custody,

2
3   pursuant to the following conditions:

4   *[Add conditions of release.]*

5   IT IS SO ORDERED.

6
7   Dated:

8
9
10
_____
Honorable Otis D. Wright II
United States District Judge

2

AA000049

Exhibit 7

Defendant's Supplement to Opposition to
Government's Application for Review of
Magistrate Judge's Bail Order
Filed February 26, 2024
(Doc. 34)
2:24-CR-91-ODW

Case 2:24-cr-00091-ODW   Document 34   Filed 02/26/24   Page 1 of 5   Page ID #:872

DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice* pending
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant, ALEXANDER SMIRNOV

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

* * * * * *

UNITED STATES OF AMERICA,    )
                             )
           Plaintiff,        )
                             )     CASE NO. 2:24-CR-00091-ODW
v.                           )
                             )
ALEXANDER SMIRNOV,           )     DATE OF HEARING:
                             )     February 26, 2024
                             )     TIME OF HEARING: 9:00 a.m.
           Defendant,        )
_____)

### DEFENDANT'S SUPPLEMENT TO OPPOSITION TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL ORDER

COMES NOW, Defendant, ALEXANDER SMIRNOV ("Mr. Smirnov"), by

and through his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A.

SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and hereby

1

files his Supplement to Opposition (ECF 33) to Government's Application for pretrial Detention (ECF No. 11).

Dated this 26th day of February, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/ Richard A. Schonfeld
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice* pending
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.   THIS HONORABLE COURT CAN IMPOSE ADDITIONAL CONDITIONS OF RELEASE WHICH DO NOT REQUIRE DEFENDANT TO BE DETAINED PENDING TRIAL**

United States Pretrial Services Officer Fernando Basulto, from the Central District of California, performed additional investigation so that a recommendation regarding custodial status could be made to this Honorable Court.  Officer Basulto, similar to United States Pretrial Services Officer Emily McKillip in the District of Nevada, has recommended that Mr. Smirnov be released on conditions.

In the event that this Honorable Court continues to have concerns regarding Mr. Smirnov's alleged risk of flight, and considering that this is not a presumption case under 18 U.S.C. section 3142, Mr. Smirnov respectfully proposes that the Court could impose the following additional conditions:

- Corporate Surety bond;

- Appointment of Diana Lavrenyuk as third-party custodian;

- House arrest with the exception that Defendant can meet with his legal counsel and medical providers;

- Financial restrictions, such as appointment of a Special Master over the corporate account that Mr. Smirnov has access to and/or requiring that a different partner in the business act as signatory; and

3

AA000053

- Execution of a Waiver of Extradition.  It should be noted that Counsel Chesnoff confirmed with Ziv Bilaus, counsel for consular affairs at the Israeli Consulate in Los Angeles, that if the Court requests that the Israeli consulate(s) and Embassy not reissue a passport, they can honor the request.

Accordingly, conditions can be fashioned to ensure that Defendant is present for the court proceedings and trial in this case.

DATED this 26th day of February, 2024.

Respectfully Submitted:

CHESNOFF & SCHONFELD

  /s/  Richard A. Schonfeld
DAVID Z. CHESNOFF, ESQ.
*Pro Hac Vice* pending
RICHARD A. SCHONFELD, ESQ.
California Bar No. 202182
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant
ALEXANDER SMIRNOV

4

AA000054

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of February, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Rosemary Reyes
Employee of Chesnoff & Schonfeld

AA000055

Exhibit 8

Transcript of February 26, 2024 hearing
(Doc. 38)
2:24-CR-91-ODW

AA000056

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 1 of 26   Page ID #:881

```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
                    (WESTERN DIVISION - LOS ANGELES)


UNITED STATES OF AMERICA,      )  CASE NO: 2:24-cr-00091-ODW-1
                               )
              Plaintiff,        )         CRIMINAL
                               )
     vs.                        )    Los Angeles, California
                               )
ALEXANDER SMIRNOV,              )    Monday, February 26, 2024
                               )
              Defendant.        )    (9:05 a.m. to 9:41 a.m.)
_____)
```

STATUS CONFERENCE

BEFORE THE HONORABLE OTIS D. WRIGHT, II,
UNITED STATES DISTRICT JUDGE

APPEARANCES:                  (CONTINUED ON PAGE 2)

For Plaintiff:                AUSA LEO J. WISE
                              AUSA DEREK HINES
                              AUSA SEAN MULRYNE
                              AUSA CHRISTOPHER RIGALI
                              U.S. Department of Justice
                              Ofc. of Special Counsel David C. Weiss
                              950 Pennsylvania Ave. NW, Room B-200
                              Washington, DC 20530

For Defendant:                RICHARD A. SCHONFELD, ESQ.
                              DAVID Z. CHESNOFF, ESQ.
                              Chesnoff & Schonfeld
                              520 South 4th St.
                              Las Vegas, NV 89101

Court Reporter:               Recorded; CourtSmart

Courtroom Deputy:             Sheila English

Transcribed by:               Exceptional Reporting Services, Inc.
                              P.O. Box 8365
                              Corpus Christi, TX 78468
                              361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

AA000057

2

<u>**APPEARANCES**</u>:                    (CONTINUED)


For Defendant:              NASER J. KHOURY, ESQ.
                            14427 Sylvan Street
                            Van Nuys, CA 91401

Also present:               MARK BRYNE, ESQ.

AA000058

3

1     <u>Los Angeles, California; Monday, February 26, 2024; 9:05 a.m.</u>

2                              (Call to Order)

3            **THE CLERK:**  Calling Item 1, CR 24-91, <u>United States</u>

4     <u>of America versus Alexander Smirnov.</u>

5            Counsel, may I have your appearances please?

6            **MR. WISE:**  Good morning, Your Honor.  Leo Wise, Derek

7     Hines, Sean Mulryne and Christopher Rigali for the United

8     States.

9            **THE COURT:**  Gentlemen, good morning.

10           **ALL:**  Good morning, Your Honor.

11           **MR. SCHONFELD:**  Good morning, Your Honor.  Richard

12    Schonfeld appearing on behalf of the defendant, Alexander

13    Smirnov.  My partner, David Chesnoff, is also appearing.  He

14    has submitted an application to appear in this case pro hac

15    vice.  We also have local counsel, Naser Khoury, present; and

16    substituting local counsel, if the Court permits it, Mark

17    Bryne, present.

18           **THE COURT:**  Good morning, gentlemen.

19           **ALL:**  Good morning.

20           **THE COURT:**  Good morning to you-all.

21           All right.

22       **(Pause)**

23           We've got a fairly busy calendar this morning so I

24    want to be as efficient with our time as possible.  The good

25    looking gentleman sitting next to me is Judge Michael Wilner of

**EXCEPTIONAL REPORTING SERVICES, INC**

AA000059

4

1    the Central District of California.

2         **(Pause; Court and Clerk confer)**

3              All right.  Mr. Smirnov, I am going to assume, sir,

4    that you have received the form upon which are listed all of

5    your various rights, you know, your right to counsel and to

6    have counsel appointed for you and all of the constitutional

7    rights, the rights that you have to be -- to insist on being

8    charged by an indictment -- and I think that is what has

9    occurred here.  You are entitled to plead not guilty to any

10   offense and to persist in that plea.  You are entitled to a

11   jury trial; and if you and the Government both waive your right

12   to a jury trial, you have the right to be tried by the Court.

13              Any of this sounding familiar at all?

14         **THE DEFENDANT:**  Yes, Your Honor.

15         **THE COURT:**  All right.  And I also have a form here

16   signed by your lawyer and a symbol, something like Prince I

17   suppose would have done, which is an over-the-line marked

18   signature of the Defendant.  You recall signing --

19         **THE DEFENDANT:**  Yes.

20         **THE COURT:**  -- this form sir?  Okay.

21              More importantly, have you spoken with your attorney

22   about your various rights?

23         **THE DEFENDANT:**  Yes, Your Honor.

24         **THE COURT:**  Did you all have a discussion about that?

25         **THE DEFENDANT:**  Yes, Your Honor.

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 5 of 26   Page ID #:885

5

1        **THE COURT:**  Okay.  Do you have any questions of the

2   Court regarding any of your rights?

3        **THE DEFENDANT:**  No, Your Honor.

4        **THE COURT:**  All right.  Have you seen the indictment?

5   It is longer than it needs to be because it's got all kinds of

6   little copies of things, screenshots, et cetera.  Have you seen

7   it, sir?  It's a total of 37 pages.  Have you seen it?

8        **THE DEFENDANT:**  Yes, Your Honor.

9        **THE COURT:**  You have the right to have this

10  indictment read to you at this time.  Would you like it read to

11  you or do you give up that right?

12       **THE DEFENDANT:**  No, thank you, Your Honor.

13       **THE COURT:**  Okay.  All right.  You've indicated that

14  you have received copies of the indictment and your statement

15  of rights, your both statutory and your constitutional rights.

16       **THE DEFENDANT:**  Yes, sir.

17       **THE COURT:**  I don't see that you have signed that

18  document so we're going to take care of that.  Yes, here it is,

19  wait a minute.  And it's signed, yes, all right, good.

20       Do you have any questions at all, sir, about any of

21  your statutory or constitutional rights?

22       **THE DEFENDANT:**  No, Your Honor.

23       **THE COURT:**  All right.  Then I'll tell you what we'll

24  do then.  Let me get a response from you.

25       Is your true and correct name, sir, Alexander

**EXCEPTIONAL REPORTING SERVICES, INC**

AA000061

6

1   Smirnov, as stated on the indictment?

2          **THE DEFENDANT:**  Yes, Your Honor.

3          **THE COURT:**  Okay.  Is there anything at all that you

4   would like me to further explain to you?  Anything at all?

5   You've got an awful lot of legal horsepower over there.  It's

6   certainly fine for you to rely on that but if there's any

7   questions that you have of me --

8          **THE DEFENDANT:**  No, Your Honor.

9          **THE COURT:**  None at all.  All right.  Then let's talk

10  about what we're all here for.

11         A lot of words have been spent over this past week

12  about the issue of your release or conditions of release or if

13  I believe that we can establish conditions or combinations of

14  conditions which will assure that you will show up for trial.

15  I am concerned.  And I've seen all of the papers and I will

16  entertain further discussion now if counsel wish but just to

17  let you know what I'm thinking, I'm not satisfied that there

18  are conditions or combinations of conditions which will

19  establish or satisfy my concern as to whether or not you will

20  not flee the jurisdiction.  Hang on.

21     **(Pause)**

22         Back to the two-count indictment charging making a

23  false statement and creating a fictitious or a false record.  I

24  believe your plea has already been taken in the District Court

25  of Nevada but indulge me.

Case 2:24-cr-00091-ODW  Document 38  Filed 02/27/24  Page 7 of 26  Page ID #:887

7

1    How do you plead to the First Count of the Indictment

2 charging a violation of Title 18, United States Code, Section

3 1001, *Making a False Statement*.  How do you plead to that, sir?

4         THE DEFENDANT:  Not guilty, Your Honor.

5         THE COURT:  How do you plead to Count Two, a

6 violation of Title 18, United States Code, Section 1519,

7 *Creating a False or a Fictitious Record*.  How do you plead?

8         THE DEFENDANT:  Not guilty, Your Honor.

9         THE COURT:  I am concerned about what appears to me

10 to be a habit or practice of making false statements and I take

11 no comfort in assurances that you may offer that you will not

12 attempt to flee the jurisdiction but I will hear from your

13 lawyers.  I've read the papers and I saw the transcript of the

14 proceedings, the Detention Hearing in Vegas.  But if anyone

15 wishes to expand upon what is already before the Court, I will

16 entertain it.

17         MR. CHESNOFF:  May it please the Court, Your Honor?

18         THE COURT:  Yes?

19         MR. CHESNOFF:  David Chesnoff, Your Honor.  I do not

20 want to speak without the Court first admitting me pro hoc vice

21 out of respect to the Court.  I've applied, I provided --

22         THE COURT:  I haven't seen it.  Let's deal with one

23 thing at a time.

24         MR. CHESNOFF:  Okay.  May I proceed then?

25         THE COURT:  Yes, please.

AA000063

8

1            **MR. CHESNOFF:**  Thank you.  Thank you, Your Honor.

2       Your Honor, when the Bail Reform Act was enacted,

3  Congress instituted various protections to make sure that only

4  a small discreet group of people were to be detained.  That

5  would be people who had a history of fleeing or a history of

6  violence or long criminal records.

7       In the instant case, Your Honor, our client has never

8  been convicted of a crime.  He has worked with the United

9  States Government for at least a decade.  There have never been

10  any accusations of false statements attributed to him in all

11  the years that he served the United States Government,

12  particularly with respect to providing intelligence for both

13  the FBI and the military.  And so right now, Your Honor, the

14  only false statements that we're concerned with are the ones in

15  the indictment; and of course, Your Honor, that has not been

16  tried to a jury or before Your Honor so there's been no

17  finding.

18       Your Honor, the Bail Reform Act talks about cases

19  where there's a presumption of a fear of flight and one where

20  there isn't.  This is not a presumption case.  This is a case

21  where the Court is asked by the Ninth Circuit through *Motamedi*

22  and its progeny to shape conditions to ensure that the

23  defendant appear.

24       The guidelines on this case, Your Honor, after

25  conviction, at a minimum or a probability, would be 20 months;

9

1   at the maximum, 36 months.  The penalty for bail jumping is

2   higher than the penalties for this particular case.

3            In the courtroom today, Your Honor, are a woman who's

4   been his significant other for 20 years and I'd ask her to

5   stand so the Court can see her.  She was in court in Las Vegas.

6   She lives with the Defendant.  He was with her for the period

7   of time where the Nevada judge allowed him out.  He left his

8   home which is about 20 minutes from our office on his first day

9   of freedom.  He came to our office to work and was subsequently

10  returned to Los Angeles.  She is happy to have him with her.

11  They've been together for all these years.  And in fact, Your

12  Honor, we submitted a supplement this morning where she has

13  been willing to tell Your Honor that she would expect third-

14  party custody of him, understanding that the Court could direct

15  her to basically call Pretrial, call the Court if he did

16  anything to deviate from any of the conditions that you set.

17           In addition in the courtroom, Your Honor, is a cousin

18  of his who appeared from -- came from Miami to Nevada, went

19  back to Miami when he got released and came back here when he

20  got arrested because she's known him her whole life and she's a

21  very reputable citizen with a long real estate career who also

22  vouches for him.

23           In our pleadings, Your Honor, we attached a letter

24  from the son of Diana, the woman willing to be third-party

25  custodian, who honorably served this country as a sergeant in

AA000065

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 10 of 26   Page ID #:890

10

 1    the United States Marine Corps.  He lived with the Defendant.

 2    He's written to Your Honor that he's known him for all these

 3    years and based on his experience with him, Your Honor, he

 4    would not disrespect this Court.

 5         Your Honor, the Defendant has met with us at our

 6    office.  He just pled not guilty.  He intends to vigorously

 7    defend these allegations having never been in trouble his

 8    entire life.

 9         Your Honor, he has no history of flight.  He's always

10    worked in some capacity, either for the Government or for his

11    own business which is a financial business with investors and

12    partners.  He has --

13         Oh, important thing I want to point out to Your

14    Honor.

15         The other day the Government represented that they

16    were concerned that even though he's turned in his Israeli

17    passport and his American passport that he could go to the U.S.

18    consulate and get another Israeli passport.  I took it upon

19    myself, Your Honor, to speak to Ziv Bilaus who is the consular

20    for the Consular Affairs for the Israeli Embassy in Los Angeles

21    who informed me that if Your Honor were to direct

22    correspondence to the Israeli consulate asking the Israeli

23    government not to issue him any new passports at any other

24    consular facilities, at any other embassies, that can be done.

25         I would also point out, Your Honor, that putting in

AA000066

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 11 of 26   Page ID #:891

11

```
1   strict travel restrictions, you could have monitoring.  They
2   have geographic monitoring.  All of these things are regularly
3   used in cases where a judge may have had concern that the
4   person is going to leave but they're used all the time.  And
5   there's nothing unusual about it and especially in a case where
6   there is not a presumption of flight.
7          I respectfully point out to you the following Your
8   Honor:  Both Pretrial officers, entrusted with giving their
9   best opinion to Article III judges, have both said that he can
10  have conditions that will work.
11         This is going to be a interesting and complicated
12  case, Your Honor, where we have a Defendant who is going to
13  need to be able to assist us in defending him by contacting
14  people in different parts of the world by phone, by computer.
15  More importantly, there are language differences.  He's fluent
16  in English, he's fluent in Russian.  He can speak and
17  communicate with people that can assist us in refuting the
18  allegations that have been made against him.
19         Yesterday morning I got here about 8:00 in the
20  morning and I went to visit him at the MDC.  He is not in
21  regular population as a result in large part to what the Court
22  said was a lot of things in an indictment that probably didn't
23  need to be there, exposing the people that run the MDC to
24  concerns for him because of the things that were said -- I'm
25  drawing that conclusion -- in the indictment.
```

EXCEPTIONAL REPORTING SERVICES, INC

AA000067

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 12 of 26   Page ID #:892

12

1          So he's in basically what's called "the shoe".  He's

2    isolated.  He only has access to a phone once or twice a week.

3    The ability to work with us on a case that's going to have

4    voluminous documents is going to be limited.  So I'm asking

5    you, Your Honor, so that he gets a fair trial -- which we know

6    he will get in this courtroom -- he has to be able to help us.

7          So having him released under electronic monitoring at

8    his home in Las Vegas close to his office so he can work with

9    us is one solution; or Your Honor, he would, through his

10   friends and family, rent another place here in Los Angeles to

11   reside if that's what the Court thinks is safer.

12         And this electronic monitoring that limits people

13   from going to airports works.  It's been used for some -- some

14   of the most notorious people.

15         One final thing I would add, Your Honor --

16         **THE COURT:**  Before you -- I said I wasn't going to

17   interrupt you --

18         **MR. CHESNOFF:**  No prob -- thank you.

19         **THE COURT:**  -- but I can't help myself sometimes.

20         The electronic monitoring that you're referring to is

21   the one that's generally strapped to your ankle?

22         **MR. CHESNOFF:**  Yes, Your Honor.

23         **THE COURT:**  With a plastic strap?

24         **MR. CHESNOFF:**  I'm not -- I don't know the physics of

25   it, Your Honor --

AA000068

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 13 of 26   Page ID #:893

13

1   **THE COURT:**  I do.

2   **MR. CHESNOFF:**  Okay, I understand and it could be cut

3 off.  I'm --

4   **THE COURT:**  Yes, it can be.

5   **MR. CHESNOFF:**  But Your Honor, it's regularly used

6 throughout the federal courts in the United States and in this

7 instance it worked.  You know how I know it worked, Your Honor?

8 Because when he left his home to come work at his office when

9 he was free, they were able to track him to my office where

10 they arrested him.  So the device works.

11   I understand the Court's concern.  And based on the

12 rendition that the Government gave you, I appreciate your

13 concern.  But I believe Your Honor can recognize -- and the

14 magistrate judge as well from his own experience -- that the

15 conditions that we are offering are the strictest conditions

16 that can be imposed, especially in a non-presumption case where

17 the penalties for the crime are so limited.  This would be a

18 very, very unique situation where someone similarly situated to

19 Mr. Smirnov would not get out.  And so far we've had two

20 federal Pretrial offices, both entrusted with giving their best

21 advice to the Court, both say that he should be released.  And

22 the conditions that they recommend, Your Honor, are less than

23 the ones we're now offering you because we so badly want him to

24 be out so we can fight this case, Your Honor.

25   **THE COURT:**  One of those Pretrial offices has not

**EXCEPTIONAL REPORTING SERVICES, INC**

AA000069

Case 2:24-cr-00091-ODW  Document 38  Filed 02/27/24  Page 14 of 26  Page ID #:894

14

1   interviewed your client.

2   **(Pause; Counsel confers)**

3       **MR. CHESNOFF:**  Oh, I was not aware of that, Your

4   Honor.  All I got was a report, I --

5       **THE COURT:**  It's all right.

6       **MR. CHESNOFF:**  Yeah.

7       **THE COURT:**  All right.  I won't interrupt anymore.

8       **MR. CHESNOFF:**  No, no, that's fine.

9       **THE COURT:**  But these are things that scrambled

10  around in my mind.  As you're speaking I'm thinking, okay, just

11  how much is that worth?

12      **MR. CHESNOFF:**  Well I appreciate that, Your Honor.

13  And the last thing I would add to you is there's a couple of

14  more points.

15      **(Pause; Counsel confers)**

16      **THE COURT:**  Okay.

17      **MR. CHESNOFF:**  Okay.  The first full day he was out,

18  he worked with us.  The second full day he was out, he worked

19  with us and that's when he got arrested.  But Your Honor, he

20  retained us -- and without going into detail on that -- with a

21  significant legal fee which bespeaks the fact that someone who

22  is going to flee is not going to give lawyers money and then

23  take off and squander the money.

24      **THE COURT:**  Unless it's not your money.

25      **MR. CHESNOFF:**  Sorry?

AA000070

15

1          **THE COURT:**  Never mind.

2          **MR. CHESNOFF:**  No, I heard you.  It is his money

3    but --

4          **THE COURT:**  Okay.

5          **MR. CHESNOFF:**  -- that's -- I point that out to you,

6    Your Honor.

7          The final thing I would say to you is this:  There

8    were no misstatements about his finances.

9          We interviewed the Pretrial Officer in Las Vegas.  We

10   put it on the record in front of the magistrate.  She simply

11   asked him about his personal holdings, not his business

12   holdings.  The magistrate acknowledged that, one, it was done

13   quickly; two, he had no counsel with him; three, there was a

14   language issue; and four, the Pretrial Officer who interviewed

15   him was in court, it was not refuted in any way and the

16   magistrate accepted the representation.

17         The last thing I'll say is this, Your Honor.

18         If the Court wants, we will hire private security to

19   monitor his 24 hours a day where he is.  That's how important

20   it is that he be out so he can work with us, Your Honor.  And

21   he would do that at his expense and it's been done in other

22   cases.  I think the Bernie Madoff who ripped off most of

23   America and half of Europe, he was allowed to do that.

24         This is an isolated case.  I remind the Court he gave

25   10 years of service to the United States.  And it's now only

AA000071

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 16 of 26   Page ID #:896

16

1   argued by the Government that he made a false statement about

2   facts that occurred seven years ago which will be a highly

3   contested part of his trial.

4          I appreciate the opportunity to be heard by you and

5   thank you very much, Your Honor.

6          THE COURT:  Thank you, sir.

7          MR. CHESNOFF:  Oh, I'm sorry, my partner reminded me

8   one last thing.

9          He has a very serious eye condition.  He's undergone

10  multiple surgeries, he has another surgery scheduled.  He takes

11  daily medication.  And so another reason to need him out so

12  that -- because he's not going to get the type of eye treatment

13  he needs within the Bureau of Prisons MDC -- is so that he can

14  visit his doctor and get the procedures he need because

15  obviously we need him to maintain his sight while we go through

16  this process.  Thank you.

17         MR. WISE:  Good morning, Your Honor.  Just briefly

18  I'll address some of the points that Counsel has made.

19         THE COURT:  You're from DOJ?

20         MR. WISE:  I am, Your Honor.

21         THE COURT:  I'm surprised.

22         MR. WISE:  Why is that?

23         THE COURT:  I'll tell you later.

24         MR. WISE:  Okay (chuckles).

25         Your Honor, I'll move perhaps in the order that -- or

EXCEPTIONAL REPORTING SERVICES, INC

AA000072

17

1    reverse order from some of the points Counsel made.

2            He said that the misstatements that the Defendant

3    made were from seven years ago.  Well we know that's not

4    accurate.

5            In September he was peddling a new story, new lies

6    about a hotel in Kiev where supposedly Hunter Biden was

7    recorded making calls to his father.  This was a new

8    disinformation story that's just a few months old that he

9    admits came from Russian intelligence.  So it is not the case

10   that these are statements that were made seven years ago.  And

11   while it's correct that he was a source for many years, he

12   clearly betrayed that trust.

13           Now, Mr. -- Counsel said that there are similarly --

14   he referred to similarly situated defendants to Mr. Smirnov.

15   Well it is our submission based on the facts before this Court

16   that there are not similarly situated defendants to Mr. Smirnov

17   for two principal reasons.  One, his contacts with foreign

18   intelligence; and two, his access to more than six million

19   dollars that he did not disclose.

20           Counsel, began his presentation talking about

21   Ms. Lavrinyok (phonetic) acting as a third-party custodian.  I

22   will note that in the interview that was done with her by

23   Pretrial Services here, she apparently doesn't know how much

24   money she has in this account.  That's what it says in the

25   report.  She survives on a savings account, amount unknown, and

18

1   fully owns her own apartment.  But we know how much is in that

2   account.  As of February 20th, the day of the detention

3   hearing, it was 3.7 million dollars.  So the question is, how

4   could someone who doesn't know they have access to 3.7 million

5   dollars be asked to act as a third-party custodian?

6        Further in the report it indicates that both Defense

7   Counsel and the individual that was pointed out from Florida

8   say that she doesn't handle the bills.  Well we also know that

9   that account is used to pay Mr. Smirnov's bills.  For instance,

10  more than 108,000 in CitiCard credit card payments in 2022 and

11  more than 275,000 in 2023.  So either she is paying the bills

12  but is -- did not disclose that, or he's using the account or

13  some other third party is using the account.  So she certainly

14  does not present a suitable third-party custodian.

15       Defense Counsel made much of the fact that he was

16  arrested at their law office.  That was done because he had

17  nine firearms, including an assault-styled weapon in his home

18  and so law enforcement chose a safe location in which to

19  contact him.

20       We hear -- we've heard two conflicting accounts of

21  what he does for a living.  Defense Counsel said he's in the

22  financial business while Mr. Smirnov told Pretrial that he was

23  in the security business.  And the accounts we've seen don't

24  support either.

25       Defense Counsel points to both Pretrial Service

AA000074

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 19 of 26   Page ID #:899

19

1   reports recommending conditions.  Neither Pretrial Service

2   Office had access to the information that was submitted to the

3   magistrate court or to Your Honor.  Those reports were prepared

4   before those reports were delivered, specifically the contacts

5   with foreign intelligence; and second, the amount of money he

6   had access to.  Obviously he did not disclose that.

7        Now, Counsel says well there was some confusion.

8   Well there's no evidence of any confusion.  While the Pretrial

9   Services Officer said she did ask for personal funds, these

10  accounts that we've pointed to, the account that had almost

11  three million dollars in his -- that he has access to in the

12  name of Avalon Group and the 3.7 million that Ms. Lavrinyok has

13  access to, are used as personal accounts.  They bought -- the

14  home they live in was purchased out of those accounts, the

15  credit card payments they make are out of those accounts, large

16  volumes of cash are taken out of those accounts.  So there's no

17  question that those are personal accounts.

18       And instead, what he told Pretrial was he had $6500

19  in personal -- in a personal account.  Well there is no such

20  account that has that amount of money in it.  The nearest thing

21  we found was the single personal checking account that had a

22  balance in the hundreds that appear to be used to pay a

23  recurring charge to a small life insurance policy.  So even

24  what he disclosed as a personal account was inaccurate.

25       Nor did he accurately disclose his expenses.  He

AA000075

1   claimed a few thousand dollars a month in expenses when we know

2   from the credit card payments that he has hundreds of thousands

3   of dollars in personal expenses every year.

4          So all of that goes to the point that he cannot be

5   trusted to provide truthful information to Pretrial Services.

6   He has demonstrated that, putting aside the charges in the

7   indictment which clearly point out that he cannot be trusted to

8   provide information even to someone to whom he has a multi-year

9   very close relationship; again, based on trust.

10          Lastly, Counsel spent a good deal of his argument

11   talking about the need for Mr. Smirnov to help counsel assist

12   in his representation.  That of course is not a factor under

13   the Bail Reform Act that augers either for or against detention

14   or release.

15          But I will point out that Counsel says this is going

16   to be a case that has voluminous documents.  It is not.  This

17   is a fairly straightforward matter.  The Defendant claimed

18   meetings that didn't happen.  There are not voluminous

19   documents that demonstrate a meeting didn't happen or meetings

20   didn't happen.

21          The records are fairly clear -- his own emails, text

22   messages, travel records from himself and the people he claim

23   to participate -- that he made it all up.  That's not a

24   voluminous case.  This isn't a securities fraud case like

25   Madoff where there were millions of documents.  It's a fairly

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 21 of 26   Page ID #:901

21

 1  discrete set of documents.

 2         Counsel also says that he will be contacting people

 3  in different parts of the world.  Well that of course wasn't

 4  even allowed under the conditions that were set by the

 5  magistrate judge.  The magistrate judge imposed the condition

 6  that he had no contact, direct or indirect, with any witness in

 7  the investigation or prosecution.  So they're not going to be

 8  able to have him contacting witnesses in this case.  He can

 9  obviously point them to witnesses but they're going to have to

10  contact them themselves and they're going to have to hire

11  translators just like in any case.  That's a standard condition

12  that applies.

13         Your Honor, I'm not going to repeat what we included

14  in our motion.  The factors that they're actually under

15  consideration clearly demonstrate that there are no conditions

16  or set of conditions that can reasonably assure the appearance

17  of the Defendant.  Those are laid out under 3142(g).  They are

18  the nature and circumstances of the offense, that this is an

19  offense based on a violation of trust which is precisely before

20  the Court.

21         The weight of the evidence which is strong based on

22  the voluminous indictment that includes much of that evidence

23  to make it abundantly clear what the evidence against the

24  Defendant is; and then of course his history and

25  characteristics.  The fact that he has little to no ties to Las

AA000077

22

1   Vegas, no job, no home, no real family.  All of those

2   connections are overseas.  And more extraordinarily, these

3   self-professed contacts with foreign intelligence and access to

4   a vast sum of money that he failed to disclosed.

5          So for all those reasons, the Defendant should be

6   detained.

7          **THE COURT:**  Thank you.

8          **MR. CHESNOFF:**  Just briefly, Your Honor.

9          **THE COURT:**  Yes.

10         **MR. CHESNOFF:**  It's a catch-22, Your Honor.  He has

11  connections with foreign agents or foreign representatives at

12  the direction of the Government.  That's what he was doing for

13  them.  They had him do that.  So to suggest that he has some

14  nefarious contacts with foreign agents when in fact any

15  contacts he had was in order to accomplish the work that the

16  Government asked him to accomplish, not just the FBI but

17  apparently there are, as the case develops, contacts with the

18  Department of Defense as well.

19         So it's really unfair to him to say you shouldn't let

20  him out because he has foreign contacts when in fact he had the

21  foreign contacts as a result of their use of him.  And now

22  they've of course kind of thrown him to the wolves in that

23  regard, Your Honor.  As far as --

24         **THE COURT:**  All of his foreign contacts are or were

25  at the behest of the Government?

**EXCEPTIONAL REPORTING SERVICES, INC**

AA000078

23

1           **MR. CHESNOFF:**  I wouldn't represent that to you, Your

2    Honor, because he obviously knows people in different places

3    and that's what's made him valuable, his ability to know

4    people.  So but I would not suggest that everybody that he

5    knows overseas is as a result of his contacts with the

6    Government.

7           As far as the financial issue, Your Honor, courts

8    routinely put restrictions through magistrate judges or

9    district court judges on the ability of a client or a defendant

10   to utilize funds.  I've been in situations where Pretrial has

11   to be approved transactions.  They have to tell you whether or

12   not you can make a financial transaction.  That could be

13   imposed by the Court.  I mean there are just so many things

14   that the Court can impose that he's willing to do to assure you

15   so that he can defend himself.

16          The Government is connect that in the Bail Reform Act

17   it doesn't talk about the right to defend yourself but you've

18   just heard that the Government doesn't think he should be

19   allowed to speak to any witnesses.  We of course when we

20   litigate this will say that there are witnesses that are not

21   hostile witnesses that he should be able to talk to.

22          There's a case in -- an old case in the Ninth

23   Circuit, U.S. v. Kinney (phonetic), in which the Ninth Circuit

24   said the fact that the defendant came from a particular culture

25   and his lawyer didn't, that the defendant needed to be released

Case 2:24-cr-00091-ODW   Document 38   Filed 02/27/24   Page 24 of 26   Page ID #:904

24

1   from custody in order to assist his lawyer because witnesses

2   wouldn't talk to the lawyer without either the approval or the

3   assistance of the client.  That's Ninth Circuit law.

4          I'm asking you, Your Honor, this is not the

5   circumstance.  He was out, Your Honor.  And if he had been

6   given the chance, most respectfully, he would have been here

7   with us this morning voluntarily.  He didn't try to run, he

8   didn't try to move the money.  All he did was get out, go home,

9   take a shower and get ready to work on the case.

10         And so he should not be treated differently which is

11  what my learned cocounsel just said, that he's different.  He's

12  not different.  He's the same as every defendant that comes in

13  front of you where a learned judge evaluates it and reaches a

14  conclusion.

15         I really implore you, Your Honor, to allow us to

16  defend this case with him out with restrictions.  He will -- as

17  the magistrate judge in Nevada said, "Please don't disappoint

18  me," and he said he wouldn't, the same applies here, Your

19  Honor.  And I mean it.

20         **THE COURT:**  I know.  I wish that's all it took.

21  "Please don't disappoint me."

22         I'm not going to get into this.  I've read everyone's

23  papers, I understand the arguments.

24         One of the things that I haven't been able to quite

25  understand is the disparity in the money that's coming in -- I

EXCEPTIONAL REPORTING SERVICES, INC

AA000080

Case 2:24-cr-00091-ODW  Document 38  Filed 02/27/24  Page 25 of 26  Page ID #:905

25

1    believe that was $10,000 a month -- and the money that's going

2    on.  And you haven't brought it up, I'm not asking you

3    directly.  I'm just going to let it go but it's just one of

4    those things, one of those unresolved things and there's a

5    whole lot of them and I will make this one comment.

6         There is nothing garden variety about this case.  To

7    compare this to all the cases that we normally see, this is an

8    outlier.  Okay?  So ...

9         All right.  I have not changed my mind.  This man

10   will be remanded pending trial.

11        Deputies?

12        By the way, under Federal Rule of Criminal Procedure

13   5(f), the Government is ordered to comply with its disclosure

14   obligations under Brady versus Maryland and related cases.

15   Failure to do so may result in sanctions.  And a written order

16   to this effect will follow.

17        **MR. WISE:**  Thank you, Your Honor.

18        **THE COURT:**  Thank you, gentlemen.

19        **MR. CHESNOFF:**  Your Honor, may I ask you one

20   question?

21        **THE COURT:**  Yes.

22        **MR. CHESNOFF:**  We have some eye medication that he

23   needs.  Should I discuss that with the marshals?

24        **THE COURT:**  Let's go off the record.

25        **MR. CHESNOFF:**  Thank you.

AA000081

26

(Off the record at 9:41 a.m.; proceeding adjourned)

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

February 27, 2024

Signed                                    Dated

*TONI HUDSON, TRANSCRIBER*

AA000082

Exhibit 9

Transcript of February 20, 2024 hearing
(Doc. 20)
2:24-mj-00166-DJA-1

AA000083

Case 2:24-mj-00166-DJA   Document 20   Filed 02/21/24   Page 1 of 45

1

—2:24-mj-00166-DJA—

1        UNITED STATES DISTRICT COURT

2            DISTRICT OF NEVADA

3

4   UNITED STATES OF AMERICA,        )
                                     )
5              Plaintiff,            )   Case No. 2:24-mj-00166-DJA
                                     )
6        vs.                         )   Las Vegas, Nevada
                                     )   February 20, 2024
7   ALEXANDER SMIRNOV,               )
                                     )
8              Defendant.            )   DETENTION HEARING
    _____    )
9                                        *C E R T I F I E D   C O P Y*

10

11

12

13          TRANSCRIPT OF PROCEEDINGS

14      THE HONORABLE DANIEL J. ALBREGTS,
          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19  APPEARANCES:           See Next Page

20  DIGITALLY RECORDED:    Liberty Court Recorder
                           3:02 p.m.

21

22  TRANSCRIBED BY:        PATRICIA L. GANCI
                           (702) 385-0670

23

24
    Proceedings recorded by electronic sound recording, transcript
25  produced by mechanical stenography and computer.

AA000084

2

```
──────────────2:24-mj-00166-DJA──────────────
```

1   APPEARANCES:

2   For the Plaintiff:

3          **LEO J. WISE, ESQ.**
           **DEREK E. HINES, ESQ.**
4          **CHRISTOPHER R. RIGALI, ESQ.**
           **SEAN F. MULRYNE, ESQ.**
5          U.S. DEPARTMENT OF JUSTICE
           950 Pennsylvania Avenue NW, Room B-200
6          Washington, DC 20530
           (771) 217-6091
7
    For the Defendant:
8
           **DAVID CHESNOFF, ESQ.**
9          **RICHARD A. SCHONFELD, ESQ.**
           CHESNOFF & SCHONFELD
10         520 S. 4th Street
           Las Vegas, Nevada 89101
11         (702) 384-5563

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AA000085

3

—2:24-mj-00166-DJA—

1       LAS VEGAS, NEVADA; TUESDAY, FEBRUARY 20, 2024; 3:02 P.M.

2                           --oOo--

3                    P R O C E E D I N G S

4       THE COURT:  Thank you.  Please be seated.

5       COURTROOM ADMINISTRATOR:  United States of America

6   versus Alexander Smirnov, 2:24-mj-166-DJA.  This is a detention

7   hearing.

8           Counsel, make your appearance for the record, please.

9       MR. WISE:  Good afternoon, Your Honor.  Leo Wise, Derek

10  Hines, Christopher Rigali, and Sean Mulryne for the United

11  States.

12      THE COURT:  Good afternoon.

13      MR. CHESNOFF:  May it please the Court, Your Honor.

14  David Chesnoff, Richard Schonfeld, and also with us Peter Levitt

15  here on behalf of Mr. Smirnov.

16      THE COURT:  All right.  Thank you.  Good afternoon.

17  Good afternoon, Mr. Smirnov.

18          All right.  This matter is scheduled for the continued

19  detention hearing this afternoon.  However, a couple of other

20  matters have been filed that I want to resolve here before we

21  begin.  Specifically, at Dockets Number 9, 10, 11, and 12 the

22  Government has filed motions to admit all four Government

23  attorneys.  I will grant those here today.  So 9, 10, 11, and 12

24  are granted.

25          Additionally, there was a motion to file documents

AA000086

4

—2:24-mj-00166-DJA—

```
 1   under seal filed by -- on behalf of the United States at
 2   Document Number 13.
 3          Mr. Chesnoff, did the Defense receive and review the
 4   motion to file some of the documents related to their filing
 5   today under seal?
 6          MR. CHESNOFF:  Yes, Your Honor.
 7          THE COURT:  Does the Defense have an opposition to
 8   that?
 9          MR. CHESNOFF:  No, Your Honor.
10          THE COURT:  All right.  Well, I've reviewed the motion
11   and I've reviewed the documents.  I do note that the request to
12   seal does not outline the Ninth Circuit case law that I believe
13   would apply, Kamakana and its progeny.  But when I apply
14   Kamakana and its progeny, I do think that sealing these
15   documents would be appropriate in this case.
16          I will of course remind the parties, as you well know,
17   that there's a presumption of access to the courtroom documents
18   and the public having access to those filings.  And the Ninth
19   Circuit outlines standards that I am to employ when deciding to
20   change that and to seal things.  And so I have done that
21   analysis.  And I do believe it's appropriate to seal Exhibits 1,
22   3, 4, 5, 6, 7, and 10 given the information that's contained in
23   there and my analysis of the case law as it applies to those
24   exhibits.  So I will grant Number 13 as well and allow those
25   documents to be filed under seal.
```

AA000087

Case 2:24-mj-00166-DJA   Document 20   Filed 02/21/24   Page 5 of 45

5

```
                        ─2:24-mj-00166-DJA─
```

1          So the parties are aware, I have also reviewed the

2   Defense's motion for release, which is found at Number 8.  I

3   reviewed the Government's memorandum in support of detention,

4   which is found at Number 15.  And I reviewed a filing that

5   Mr. Chesnoff and Mr. Schonfeld entered later this afternoon at

6   Document 16, which is a response.

7          Mr. Chesnoff, as it relates to that response, you note

8   that the Government's was filed this morning, mid to late

9   morning, and that you didn't have time to respond in whole to

10  the memorandum and the hundreds of pages of exhibits that were

11  attached thereto given that it was just filed this morning.

12         Are you prepared to proceed today with the detention

13  hearing notwithstanding that or would you be requesting some

14  more time to review and consider those -- those documents?

15         MR. CHESNOFF:  Your Honor, considering the fact that

16  he's been held for this many days when we believe that he should

17  have been released and the report that we have from Pretrial

18  Services, we'll -- we'll waive any defect in not being able to

19  fully respond.  We feel our arguments will cover enough of it to

20  satisfy the Court, Your Honor.

21         THE COURT:  All right.

22         All right.  With that, then, I will hear from the

23  Government regarding release or detention.

24         MR. WISE:  Thank you, Your Honor.

25         The Government has moved for the defendant's detention

AA000088

6

—————————2:24-mj-00166-DJA—————————

1    pursuant to 3142(f)(2)(A) and (B) because there is a serious

2    risk the defendant will flee and a serious risk the defendant

3    will obstruct justice.  Applying the 3142(g) factors to the

4    facts presented in the Government's memorandum in support of

5    detention compels the conclusion that there are no conditions or

6    combination of conditions that will reasonably assure the

7    defendant's appearance.  Therefore, pursuant to Section 3142(e)

8    he should be detained pending trial.

9         As we outline in our papers, detention is appropriate

10   where a defendant is either a danger to the community or a

11   flight risk.  It is not necessary for the Government to prove

12   both.  And while the former requires clear and convincing

13   evidence, the latter is accomplished by a lower standard, by a

14   preponderance of the evidence.  And, again, as we cite in our

15   memorandum, that means, and this is the District of Idaho case

16   we cite, that the Government must demonstrate that it is more

17   likely than not that there is a serious risk that the defendant

18   will flee, not that it is more likely than not that the

19   defendant will flee.

20        I'll briefly address the 3142(g) factors which we

21   discuss at greater length in our memorandum.  First as we

22   outline, the nature and circumstances of the offense in this

23   case support detention.  In any situation, in any case, pretrial

24   supervision is based on trust, and the defendant has

25   demonstrated he can't be trusted.  And this is something I'll

AA000089

7

—————2:24-mj-00166-DJA—————

1  come back to.

2       Here, the defendant lied to his FBI handler after a

3  nearly 10-year relationship.  This is someone with whom he had

4  nearly daily contact, somebody whom the defendant has described

5  as family.  If he's willing to betray someone under those

6  circumstances, how can the Court have any confidence that he

7  will provide truthful information to a Pretrial Services officer

8  he has never met when his liberty is at stake?

9       As to the weight of the evidence against the defendant,

10  and this is also summarized in -- in our papers and cites

11  extensively to the speaking indictment, the evidence in this

12  case will come from the defendant's own travel records, e-mail

13  messages with his handler and others, and from travel records

14  e-mails and messages with the individuals that he claimed

15  participated in these meetings and phone calls where these

16  outrageous allegations were made.

17       The trial won't be a swearing contest between the

18  defendant and these witnesses, although witnesses will refute

19  the defendant's story in no uncertain terms.  But the

20  Government's witnesses will be corroborated by these documents

21  and other unimpeachable evidence, and the defendant's story

22  won't be.

23       Turning to the history and characteristics of the

24  defendant, Defense counsel asserts in his motion for pretrial

25  release that Smirnov has significant ties to the United States,

8

—————2:24-mj-00166-DJA—————

1  but he does not.  His family members live in Israel.  He doesn't

2  own any property here.  He doesn't have a job here.  According

3  to his own motion for pretrial release, the only relation they

4  can point to is a cousin in Florida, but that doesn't make for

5  significant ties.

6          Now, while a consideration of these factors alone

7  compels detention, the extraordinary characteristics of the

8  defendant that we've outlined in our memorandum make it clear

9  that there are no conditions that will reasonably assure his

10  appearance.  And I'll address these in more detail.

11          First, his self-professed claims of ties to foreign

12  intelligence services including Russian intelligence; the

13  between 3 million and $6 million in liquid funds he access to;

14  three, the fact that he didn't disclose those assets to Pretrial

15  Services or to the Court, and I'll address the defendant's

16  recent reply on at least they only address the Pretrial Services

17  disclosure and that, too, was deficient regardless of what's in

18  their reply; and, finally, the fact that as a dual national he

19  can obtain an Israeli passport at any time after he surrenders

20  it.

21          Turning first to I think what is the most extraordinary

22  feature of this defendant, his contacts with foreign

23  intelligence.  His contacts with foreign intelligence services,

24  specifically Russian intelligence services and operatives,

25  distinguish his case from the two cases cited by the defendant

9

—————————2:24-mj-00166-DJA—————————

1   in his motion for release, *Karni* and *Hanson*.  And I would

2   venture to guess that a situation like this has probably never

3   been presented to the Court.

4          Those contacts are regular and recent.  In our

5   memorandum we quoted recently declassified FBI reporting

6   summarizing the defendant's contact with Russian intelligence

7   and others, and most notably his recent -- his most recent

8   election disinformation story, the one he told the FBI in

9   September 2023 about the Premier Palace Hotel in Kyiv and the

10  recordings of Businessperson 1, came after he met with Russian

11  intelligence.

12          Again, these contacts make this defendant different

13  from other defendants who merely have foreign ties, and they

14  heighten the risk of flight dramatically.  And that is because

15  he can use these contacts with foreign intelligence services to

16  flee and to resettle overseas, something I would again venture

17  to say is almost unique in the presentation of a defendant being

18  considered for the pretrial release.

19          THE COURT:  So let's say that happens.  You don't think

20  that the Federal Government would have the ability to find him

21  and take action to bring him back?  You think that these Russian

22  ties that you're talking about are the type of people that would

23  literally take him and secrete him from prosecution?

24          MR. WISE:  If he were to resettle in Russian, we

25  couldn't extradite him.  Russian won't extradite under these

AA000092

10

—————2:24-mj-00166-DJA—————

1  circumstances.

2          If he were to resettle in other -- in third countries,

3  we couldn't extradite him.  And so, yes, I think that is the

4  case.

5          THE COURT:  All right.  Go ahead.  I'll --

6          MR. WISE:  That's even assuming we could find him.

7  That's even assuming we could find him.

8          THE COURT:  You think the long arm of the United States

9  of America couldn't find him on this planet?

10          MR. WISE:  Yes.  I think the best thing we have going

11  for us is the idea that people think we have that long arm, and

12  having been in Government for 17 years, I'm routinely astonished

13  at how short it is.

14          THE COURT:  All right.  Go ahead.

15          MR. WISE:  The next factor that makes this defendant

16  extraordinary is his access to funds and, worse, the fact that

17  he didn't disclose these assets to Pretrial or to the Court last

18  week.

19          Now, to be clear, the defendant's PSR says he has

20  access to $6,500, $1,000 or $1,500 cash on hand and $5,000 in a

21  checking account.

22          He actually has access to approximately $3 million in

23  a -- in an account in the name of the Avalon Group where he is

24  the sole signatory.  We received a balance on that account as of

25  this morning.  It has $2,886,893.18.  And contrary to what is in

AA000093

11

—————2:24-mj-00166-DJA—————

1  the reply the Defense filed, this is not a business account.  He

2  uses it to pay personal expenses.

3        As we outlined in our filing, he's withdrawn $175,000

4  in cash out of it.  He's transferred more than 2.6 million to

5  his girlfriend who has then used that money to purchase the

6  million dollar condominium they live in, to make credit card

7  payments which is his primary means of paying these personal

8  expenses in the amount of more than $100,000 in 2022, more than

9  $275,000 in 2023, and there is no discernible business activity

10  in this account nor can he or his girlfriend actually articulate

11  what his business is.

12        The only personal checking account he appears to have

13  has at last -- the last time we checked about $500 in it which

14  is used only to make a very small recurring insurance payment.

15  So this is his money.  It is not the case that he was confused

16  and thought this was a business account that he didn't have to

17  disclose.

18        And, further, even if there was some confusion with

19  Pretrial, which I submit there was not, these are his funds.  We

20  haven't seen the financial affidavit, but I have what -- I've

21  seen what these financial affidavits that he filled out and

22  submitted to Your Honor say.  And it says:  "Cash and bank

23  accounts.  Do you have any cash or money in savings or checking

24  accounts?"  Doesn't say personal accounts.  Doesn't say business

25  accounts.  It says:  "Cash or save" -- it says:  "Cash or money

AA000094

12

—2:24-mj-00166-DJA—

1   in savings or checking accounts."  And he does.

2        THE COURT:  Does the Government think -- well, let me

3   ask first.  Does the -- do you have any knowledge about what

4   happens from the time of the arrest till the time of the initial

5   appearance a few hours later?

6        MR. WISE:  In what -- I'm sorry.

7        THE COURT:  Well, just how the Pretrial interview goes

8   and -- and the discussions and, you know, the time constraints

9   that people are -- I mean, you're so certain that these are just

10  blatant misrepresentations when there might have -- why wouldn't

11  it possibly be confusion when he's just been arrested, he's been

12  taken into custody, and somebody shows up and starts asking him

13  questions?

14       MR. WISE:  So if someone asked me what kind of funds I

15  had access to and I had $3 million in an account and I told them

16  I had $6,000 in an account, I think it would --

17       THE COURT:  I don't know that they ask him what kind of

18  funds he has access to.  The questions are:  Do you have a

19  savings account?  Do you have a checking account?  And what's in

20  them?  I mean, I've sat in on these interviews for many, many

21  years.

22       MR. WISE:  And I think any defendant that was looking

23  to be forthcoming would say, "I have this account that I use to

24  pay my personal expenses out of.  I have this account that I've

25  transferred millions of dollars to the woman I live with to that

AA000095

13

─────2:24-mj-00166-DJA─────

1   she's used to purchase the home we live in."  I think -- I've

2   heard these questions and I think they absolutely would call for

3   this information.

4          THE COURT:  Okay.

5          MR. WISE:  And then when he sat in front of Your Honor

6   and Your Honor asked him before appointing -- and as I said, we

7   haven't seen the affidavit, but I'm fairly certain it didn't

8   have $6 million on it or Your Honor wouldn't have appointed CJA

9   for him.  It says:  "Do you have any cash or money or savings or

10  checking accounts?"  And he clearly did have that and he

11  chose -- he chose not to disclose that information.

12          And, in addition, the balance in the DL -- what we

13  refer to as the DL account as of today is an additional

14  $3,784,218.51.  And we see this pattern of him taking money out

15  of the Avalon account, buying cashier's checks, giving it to DL.

16  She then goes to a nearby branch within 30 minutes and deposit

17  it, which makes it look like there's some kind of business

18  relationship between her and this Avalon Group, but not with

19  him.

20          THE COURT:  Did you ever call Pretrial or reach out to

21  Pretrial to ask about the circumstances of the questions to

22  determine whether there might have been misunderstandings or

23  that the questions weren't as direct so that it's not as clear

24  in your mind that he's flat-out lying to them?

25          MR. WISE:  Your Honor, my approach to Pretrial is that

PATRICIA L. GANCI - (702) 385-0670

AA000096

14

```
──────────────2:24-mj-00166-DJA──────────────
```

1  they have a job to do as an agency of the Court, and I wouldn't

2  be comfortable asking them to essentially become witnesses

3  against the defendant under those circumstances.  So I

4  typical -- I haven't done that.

5          THE COURT:  All right.  Fair enough.

6          MR. WISE:  But I think it is very clear that these are

7  his funds as we outline --

8          THE COURT:  Okay.  So -- and you've made that clear in

9  there.  So move on past the funds.  I understand that argument.

10          MR. WISE:  And the other things -- you know, the other

11  thing he said -- he made a number of statements to Pretrial that

12  were untrue.  He, for instance, said this condominium was leased

13  by the girlfriend when we know in fact it was purchased by her

14  with his funds.  And Defense counsel even had to concede that in

15  their -- in their filings.  So we've got lies, sort of, big and

16  small in his very first instance of interacting with the Court,

17  when one would think you would err on the side of providing all

18  of the information that might be necessary so that one might be

19  released on conditions.

20          In short, the evidence that the defendant can't be

21  trusted to abide by conditions and provide truthful information

22  to Pretrial Services isn't speculation.  He's shown that he

23  can't be trusted by providing misinformation to his handler, and

24  in his first interaction with Pretrial Services and the Court he

25  withheld information that shows he has access to millions of

AA000097

15

—————————————2:24-mj-00166-DJA—————————————

1   dollars that he could use if he were to flee the United States.

2        I'd like briefly now to turn, if Your Honor would like,

3   or I can depending on how Your Honor -- the sequence, I can turn

4   to some of the arguments made in the defendant's motion for

5   pretrial release or I can wait until after they go, whatever

6   Your Honor would prefer.

7        THE COURT:  You argue how you feel appropriate.

8        MR. WISE:  Sure.

9        So I'm not going to address all of the arguments.  Some

10  of them I think are -- are sort of on their face ones that I

11  think I don't need to address, but the first -- the first thing

12  I will note is that the defendant argues that the Government

13  knew about Mr. Smirnov's alleged conduct for years, yet, took no

14  steps to end his cooperation, seize his passports, or prosecute

15  him for anything.  And the Defense argues that should be kept

16  firmly in mind when, as expected, the Government reverses course

17  in this bail proceeding and suddenly protests that Mr. Smirnov

18  now presents an extreme flight risk.

19       So the mistake the defendant makes is in thinking that

20  the Government is a monolith.  The FBI is divided into field

21  offices and the Department of Justice and to U.S. Attorney's

22  Offices.  And while both organizations have some coordinating

23  functions in Washington, they're limited.

24       And to be clear, in this case the defendant was the

25  source for an agent based out of the Seattle field office and he

16

```
————————2:24-mj-00166-DJA————————
```

1   volunteered information about Burisma, volunteered, to that

2   agent in 2017 which the agent recorded.  Later in 2020 the FBI's

3   Pittsburgh field office was conducting an assessment of

4   information being provided by the public concerning the Ukraine,

5   most notably Rudolph Giuliani, and reached out to the

6   Seattle-based handler and asked him to interview the defendant

7   about the defendant's 2017 reporting.  And what the Seattle

8   agent learned he reported back to the Pittsburgh Agent in June

9   of 2020.

10        And -- and the FBI in Pittsburgh took some limited

11   investigative steps, but their steps were limited by the fact

12   that they were only conducting an assessment, which under FBI

13   policies is not an investigation.  And it prevents, for

14   instance, the use of compulsory process like grand jury

15   subpoenas or the compulsion of testimony.  So based on that

16   limited review, the FBI closed its assessment in August.

17        Fast-forward to July of 2023, that's when the FBI asked

18   the U.S. Attorney's Office in the District of Delaware to assist

19   in evaluating the claims in the 2020 1023.  And in August the

20   U.S. Attorney for the District of Delaware was made Special

21   Counsel by the Attorney General.  Also in August investigators

22   in Delaware spoke with the defendant's handler for the first

23   time, and then in September investigators in Delaware spoke with

24   the defendant, again, for the first time.

25        After those meetings investigators began collecting

AA000099

17

```
————————————————2:24-mj-00166-DJA————————
```

1   evidence on the defendant's allegations, including for the first

2   time with the benefit of the grand jury.  And it was through the

3   use of the grand jury that investigators in Delaware learned

4   that the defendant was lying.  So it is not the case that the

5   defendant -- that the Government knew he was lying back in 2020

6   and took no steps to address his conduct.

7          THE COURT:  So what was the date, then, that you're

8   saying you were aware that he was lying?

9          MR. WISE:  Just this fall, in a run up to these

10  charges.  We first met with him in September --

11         THE COURT:  That's the September 23rd -- September 2023

12  meeting you're talking about?

13         MR. WISE:  Yes, Your Honor.

14         THE COURT:  All right.

15         MR. WISE:  That was the beginning -- after speaking

16  with the handler in August that was really the beginning of the

17  grand jury investigation, and then evidence was collected

18  shortly thereafter that led to the presentation of these

19  charges.

20         THE COURT:  All right.

21         MR. WISE:  Now, in addressing the 3142(g) factors,

22  specifically the nature and seriousness of the offense, the

23  defendants argues that "These allegations are make-weight and

24  politically motivated.  They do not involve espionage or theft

25  and are, thus, not serious."

18

—————2:24-mj-00166-DJA—————

1          I didn't know what make-weight meant so I looked it up.

2    According to Miriam Webster, the meaning of make-weight is

3    something thrown into a scale to bring the weight to a desired

4    value.  I have no idea what that means in this context.  Maybe

5    Your Honor does.

6          And politically motivated, by whom?  If Defense counsel

7    is referring to his client's allegations, then we agree.  His

8    client's messages that are quoted in the indictment show

9    political bias on his client's part.

10         Or is the -- is Defense counsel referring to us, the

11   Government in this case?  And that would certainly be curious.

12   We're prosecuting Hunter Biden on tax and gun charges, and his

13   lawyers make the unfounded claim that we're working at the

14   direction of former President Trump and Congressional

15   Republicans, although they can never explain why or how.

16         So then I guess what Defense counsel in this case is

17   arguing is we're working at the direction --

18         THE COURT:  Are you saying Mr. Chesnoff and

19   Mr. Schonfeld said that in their pleadings?

20         MR. WISE:  That's what they wrote.  They wrote the

21   charges in this case are make-weight and politically motivated.

22         THE COURT:  So -- but where do they -- okay.  But I --

23   you've taken that quite a bit beyond that they're saying -- what

24   did you just say was ...

25         MR. WISE:  Well, I'm trying to figure out -- it sounds

AA000101

19

─────────────────2:24-mj-00166-DJA─────────────────

1  like they're saying we're working at the direction of the White

2  House and the Biden campaign.  And the other cases --

3          THE COURT:  Is that a leap?

4          MR. WISE:  And the other cases --

5          THE COURT:  I guess you don't --

6          MR. WISE:  -- the Defense counsels are making the

7  opposite argument.

8          THE COURT:  Well --

9          MR. WISE:  So we're sort of curious which it is.

10          THE COURT:  Well, and I'm not getting into the politics

11  of this.  I have to make a determination under the Bail Reform

12  Act whether he's a flight risk or a danger and whether, if he

13  is, there are conditions or a combination of conditions to

14  address that.

15          MR. WISE:  Right.

16          THE COURT:  So I have no time for the politics of this

17  case.  I understand the underlying charges.  There's a component

18  to that.  But I'm not going to spend a lot of time here talking

19  about the politics.

20          MR. WISE:  Good.  Because when we saw that, we were

21  shocked that he would make the accusations --

22          THE COURT:  So go on and continue with your argument.

23          MR. WISE:  Now, the Defense counsel calls the charges

24  not serious, which begs the question is he serious.  The

25  defendant's lies have captured --

AA000102

Case 2:24-mj-00166-DJA   Document 20   Filed 02/21/24   Page 20 of 45

20

---2:24-mj-00166-DJA---

```
1          THE COURT:  All right.  I'm not going to get personal
2   with the attacks on counsel.  All right?  Let's keep it to the
3   facts and the law.  You don't need to make snide remarks about
4   "is he serious."  And I'm not going to tolerate that from either
5   side.
6          MR. WISE:  Understood, Your Honor.
7          The defendant's lies in this case have captured the
8   national imagination.  And while the -- while the filing says
9   they do not involve espionage, of course the charges do involve
10  foreign intelligence services.  The defendant claims to have met
11  with Russian intelligence agencies on multiple occasions, and
12  the U.S. intelligence community has concluded that Russian
13  intelligence interfered in the 2020 election and continues to
14  interfere in our elections by spreading misinformation.
15          And I can supplement the record with these two public
16  reports, but in January of 2017 the Office of the Director of
17  National Intelligence made public a declassified version of a
18  highly classified assessment regarding Russia's efforts to
19  interfere in the 2016 presidential election.  And in 2020 the
20  ODNI published a similar declassified report regarding the 2020
21  U.S. presidential election.  And one of the key judgments of
22  that report, which was expressed with high confidence, was that
23  Putin authorized and a range of Government organize -- and a
24  range of Russian government organizations conducted influence
25  operations aimed at denigrating President Biden's candidacy and
```

AA000103

21

—————2:24-mj-00166-DJA—————

1   the Democratic Party, supporting former President Trump,

2   undermining public confidence in the electoral process, and

3   exacerbating sociopolitical divisions in the United States.  And

4   that's a quote from that report that we can file as a supplement

5   to the direct -- for the record.

6          Now, the defendant also argues for release, in part,

7   based on where the defendant is currently housed.  That's

8   premised on the idea that he'll actually stay in that location,

9   and I don't think that's correct.  I think he was brought to

10  that location temporarily, but if he were detained, I believe he

11  would be detained in the Central District of California, not in

12  the District of Nevada.  And so whatever the conditions are at

13  that facility I don't think bear on --

14         THE COURT:  I think that's correct.  If he's detained,

15  he'll under Rule 5 be transferred to the Central District of

16  California and they'll have the decision as to where he's housed

17  and incarcerated -- or detained.  I shouldn't say incarcerated.

18  Detained pending trial.  But go ahead.

19         MR. WISE:  And the issue -- and this came up in the

20  previous hearing.  You know, the issue of the defendant's --

21  where he is detained, the conditions under which he is detained,

22  those are all things that the Marshals or the Bureau of Prisons

23  or we can work with Defense counsel to address.  They are not

24  factors that the law or the statute recognizes as bearing on

25  whether he poses a risk of flight or whether there are

AA000104

Case 2:24-mj-00166-DJA   Document 20   Filed 02/21/24   Page 22 of 45

22

—————————2:24-mj-00166-DJA—————————

1   conditions that can reasonably assure his appearance.

2          In the last hearing we discussed the fact that he is,

3   as the indictment makes clear, or was a confidential informant.

4   And we take -- we take security seriously.  We take safety

5   seriously.  And those -- those issues need to be addressed and

6   will be addressed, but none of that bears on the determination

7   of whether he poses a serious risk of flight which for all of

8   the reasons we identify in our motion we believe he does.

9          THE COURT:  And why -- there's no addressing -- and I

10  think I know the answer, but I'd like to hear it from you -- no

11  addressing the conditions that Pretrial suggests and why, you

12  know, with the idea that it's -- Bail Reform Act, it's the least

13  restrictive, you know, that I have to consider and the least

14  restrictive conditions.  Why won't some of the things that they

15  recommended address these things?  Is it just the trust issue or

16  is there something more?

17         MR. WISE:  So the trust issue is at the heart of it,

18  Your Honor, but as we said, I mean, when you combine the

19  resources he has access to, the fact that he can travel

20  internationally on the second passport -- and as we point out,

21  there is -- there is literally no way to prevent that.  And this

22  is a problem that's present with dual nationals where they can

23  go into a consulate.  They can say they lost their passport.

24  They'll be issued another passport.  There's no way that the

25  Government -- our Government learns of that.  There's no way

PATRICIA L. GANCI - (702) 385-0670

AA000105

23

────2:24-mj-00166-DJA────

1   that there can be a stop at the border over that.  It simply

2   is --

3            THE COURT:  What if I put geographical limits on where

4   he can go and we monitor that so that the minute he leaves Clark

5   County Pretrial's notified of that?

6            MR. WISE:  My understanding of the technology is that

7   it's not that -- it is limited, that there are lags, that there

8   are -- you know, that the geographic space is not tight enough

9   to know if someone is in an airport as opposed to some other

10  location.

11           My experience with that is not that it's as precise as

12  one would -- would think or hope.

13           THE COURT:  All right.  All right.

14           MR. WISE:  But as I said, Your Honor, you know, usually

15  the arguments are someone's whole family is here, their whole

16  life is here, their job is here, this is where their, you know,

17  livelihood comes from.  We've seen none of that in this case.

18  And that's why to answer Your Honor's question, I think -- I

19  think the conditions simply -- simply don't reasonably assure

20  his appearance.

21           And if -- if we could -- I mean, Defense counsel when

22  he called me on Friday said, "Is there some" -- "Are there some

23  conditions that we could agree on?"  If we could, we would.  I

24  mean, this is not hyperbole.  If we thought there was some way

25  that we could reasonably assure that he would appear in this

AA000106

24

———————————2:24-mj-00166-DJA———————————

1   proceeding, that would be where we'd go.  But in light of the

2   contact with foreign intelligence, in light of the $6 million in

3   funds, in light of our experience so far with him, we simply

4   don't believe that's the case.

5           THE COURT:  All right.  Thank you very much.

6           MR. WISE:  Thank you, Your Honor.

7           THE COURT:  Mr. Chesnoff, Mr. Schonfeld.  One or the

8   other, not both, please.

9           MR. CHESNOFF:  May it please the Court.

10          Your Honor, it's amazing to me that the question the

11  Court asked about the power of the Government to find somebody

12  is so limited that to have the Government's position adopted by

13  the Court would mean that nobody who they are concerned could

14  run ever gets out.  And that's not the Ninth Circuit law.  The

15  Court is well aware it's the least restrictive.  The idea that

16  someone cannot be geographically controlled, I've had multiple

17  cases, as the Court knows, where people have been restricted not

18  to go to a bus station, not to go to an airport, not to rent a

19  car.

20          I have with me, Your Honor, his Israeli passport which

21  I secured so that we could give it to Pretrial.  The idea that

22  the Court cannot make a condition that says you are not to apply

23  for a new passport, U.S. or Israeli, happens all the time, Your

24  Honor.  Judges impose those conditions.  If the Court could not

25  impose those conditions, the Bail Reform Act, *Motamedi* and all

AA000107

25

———2:24-mj-00166-DJA———

1   of its progeny, would have no meaning at all, at all.

2          I'm old enough, Your Honor, to have remembered when the

3   Bail Reform Act was enacted in 1984.  I did a deep dig into the

4   legislative history.  The legislative history of the Bail Reform

5   Act, it was created to protect flight and danger from a small

6   and discrete group of people, either violent offenders, people

7   with prior records, people who had history of not showing up in

8   court.

9          We have a gentleman who's an American citizen.  He has

10  an Israeli passport as well which he's willing to turn in.  He's

11  lived in L.A. where this case is for 16 years.  He's lived here

12  for two years.  He lives with his significant other who's

13  present in court.

14         I -- I -- the Court observed the idea of what happened

15  in the beginning.  His English is better than hers, but it's not

16  the best.  I don't think an interpreter was supplied to him

17  during any of the interviews.  I know for a fact that when his

18  significant other spoke to Pretrial, she had the limited ability

19  to communicate.  I got her in my office.  I got someone who

20  spoke Russian.  She then gave all the right and truthful answers

21  to Pretrial Services.

22         Your Honor, we asked Pretrial Services about this

23  question of financial disclosure because when we read their

24  motion this morning, both Mr. Schonfeld and I said, "What

25  happened here?"  So we contacted the Pretrial officer.  We asked

```
──────────────2:24-mj-00166-DJA──────────────
```

1   to meet with her.  And we asked her specifically, "Did you ask

2   him about any other account than a personal account?"  And the

3   officer was candid and said no.  It's exactly why my client

4   answered the question the way he did because he was not asked

5   about anything else.

6           THE COURT:  What about Mr. Wise's point, and I think

7   there's some legitimacy to it, that, you know, you're in there

8   talking that maybe he thinks, "Well, should I talk about these

9   other accounts?  You know, they're asking me about money" --

10          MR. CHESNOFF:  Perhaps, if I had been there with him,

11  Your Honor, because he didn't have counsel with him, I wasn't

12  there, then those issues would be ferreted out.  We would have

13  explained to him the importance of being as complete as

14  possible.  But in this instance it was completely not his fault

15  that the question was not asked, and he responded truthfully to

16  the question.

17          Their suggestion that somehow that should lead the

18  Court to question his overall truthfulness considering the

19  context, the language, the fact that the Pretrial officer made

20  her own evaluation of him when she spoke to him and has

21  recommended to you that he be released, answers that question in

22  my opinion, Your Honor.

23          Your Honor, the fact that they can document foreign

24  travel, the Court can't lose sight of the fact that a lot of the

25  foreign travel was at their behest.  So it's kind of like a

—————2:24-mj-00166-DJA—————

1   catch 22.  We're going to let you go there.  We're going to send

2   you there.  We're going to use you for our purposes, which is

3   what they did.  And now they turn around and tell Your Honor,

4   "See, he travels everywhere."

5           The other thing that they said was that the handler

6   somehow found out now that he was untruthful.  But for 10 years,

7   Your Honor, apparently, he was truthful.  Now, the question of

8   whether he's not truthful now has not been decided.  And as the

9   Court knows, that's a factual question which is the least

10  important factor that this Court should consider.  And I can

11  tell you, Your Honor, that there will be a vehement defense to

12  the argument that in fact he was not truthful.  He had this

13  personal relationship with the handler.  It was so personal,

14  Your Honor, that he wouldn't even call him on his FBI phone; he

15  would call him on his personal phone.  So we're going to dig

16  down once we start defending this case and we're going to find

17  out who knew what when.

18          Now, when we made the suggestion, Your Honor, that he

19  deserves to be out because of the fact that he needs to defend

20  himself and the housing situation, I can tell you, Your Honor, I

21  visited the MDC in L.A. for years representing clients.  The

22  conditions there are even tougher than the conditions in Pahrump

23  vis-à-vis attorneys.  The waiting period of time sometimes to

24  see a client is hours upon hours.

25          If they are going to have him in PC like they do in

28

———————————2:24-mj-00166-DJA———————————

1   Pahrump, which I assume they will since they've managed to put

2   out to the entire world his cooperation without any concern for

3   his safety, but ultimately he is safer out as opposed to being

4   in a detention facility in a major metropolitan city where I can

5   tell you, Your Honor, I would be concerned about his safety.

6        THE COURT:  I know there's constitutional

7   considerations when it talks -- you know, when we consider his

8   right to meet with counsel and prepare for trial and look at

9   documents.  But how does that play into the Bail Reform Act and

10  my decision that I have to make?

11       MR. CHESNOFF:  I can tell you, Your Honor.

12       It's almost a due process question that comes into

13  conflict maybe with just looking at the Bail Reform Act as the

14  only thing the Court considers.  I cited to a case called *U.S.*

15  *v. Kinney* where a State Court was holding somebody, and the

16  Court decided that because of social reality it would be harder

17  for a Defense attorney to speak to witnesses because the

18  defendant came from a community that was foreign to the Defense

19  lawyer.

20       In this case, Your Honor, we are going to need to speak

21  to people in foreign countries that don't speak English, that

22  speak Russian.  Not to have the -- and I can tell you, Your

23  Honor, the MDC in L.A. is not going to allow us to be calling

24  Kyiv from the MDC with our client to speak to people.

25       So the -- the harm to him in defending himself against

AA000111

29

———————2:24-mj-00166-DJA———————

1  -- and, Your Honor, when we say "not serious," obviously we're

2  in Federal Court.  It's a federal crime.  What we're talking

3  about, Your Honor, is this.  Our guideline calculations show

4  that at a max he's looking at three years.  So when I say "not

5  serious," it's not 10 years.

6        Why would somebody risk a bail jumping charge on top of

7  really an admission of guilt by fleeing when in reality the

8  maximum punishment at the best with the guidelines is three

9  years?  It's even lower without all the potential enhancements.

10  It's absurd, Your Honor.

11        The only reason they want to keep him in is so that he

12  cannot defend himself in a way which shows that the allegations

13  that are being made against him are being made for whatever the

14  Bureau's reasons, whatever Justice's reasons are.  But he has a

15  right, Your Honor, to straighten the record out as far as he's

16  concerned, especially in light of the 10 years of service that

17  he gave to the United States Government and to the people of the

18  United States.

19        So to hold him in custody and restrict his ability to

20  truly defend himself on a case where he's looking at 20 months,

21  Your Honor, I -- I can't even really comprehend it.

22        THE COURT:  So when you said "serious" or "not serious"

23  in your pleading, you were referring to the amount of time and

24  the potential exposure as opposed to the underlying --

25        MR. CHESNOFF:  Yeah.

AA000112

30

─────2:24-mj-00166-DJA─────

1       THE COURT:  -- current of the case and the political

2  ramifications?

3       MR. CHESNOFF:  You know me -- known me a long time.

4  I'm not belittling the seriousness that the Government feels

5  about this.  What I was talking about is the seriousness in

6  terms of the ultimate --

7       THE COURT:  Potential.

8       MR. CHESNOFF:  -- potential problem.

9       (Defense conferring.)

10      MR. CHESNOFF:  Mr. Schonfeld points out to me it's also

11 not a presumption case, Your Honor, and that bespeaks the

12 recommendation that has been made by Pretrial.

13      Court's indulgence.

14      (Pause.)

15      MR. CHESNOFF:  Your Honor, every condition that's

16 required by the Ninth Circuit law in terms of history, no drug

17 usage, no alcohol, none of the things that are indicia of danger

18 or flight exists.  There's not a single representation, Your

19 Honor, that he's ever committed a violent act, nothing, in the

20 10 years of his service with the FBI.

21      THE COURT:  What -- you know, they raise a good point

22 about being concerned about his access -- so let's set aside the

23 disclosures to Pretrial and whether or not the circumstances

24 rise to the level of he's not trustworthy such that I'll detain

25 him.  That will be something I address here in a moment.

PATRICIA L. GANCI - (702) 385-0670

31

———————2:24-mj-00166-DJA———————

1    But really, I mean, it's legitimate to say he's got

2 access to a lot of money and he knows a lot of people that might

3 be willing to help him out.  I mean, how do I address those

4 concerns that the Government's raised?

5    MR. CHESNOFF:  Your Honor, he's on electronic

6 monitoring.  He's at -- we've offered, we suggest, third-party

7 custodian.  His lady friend is present in court.  I've explained

8 to her the implications of that, that she has an obligation to

9 the Court if in fact he is doing anything that he's not supposed

10 to do.  I don't know what more you can do other than -- Your

11 Honor, anybody can -- anybody can run.  That's a fact.  The fact

12 that he has connections overseas, that can be addressed by the

13 Court in terms of the conditions it sets:  You stay -- this is

14 where you're staying.  This is what you're wearing.

15    Your Honor, you can even limit in terms of phone usage

16 if you want, Your Honor.  There are things that can be done, but

17 the idea that somehow he's going to escape and the United States

18 Government is not going to find him, I mean, they got I don't

19 know how many people are here --

20    THE COURT:  Yes, but counsel raises a good point that

21 even though they know he's in Russia, they can't get him back.

22    MR. CHESNOFF:  Well, I have a feeling the idea of him

23 going to Russia is not really such a good idea for him since

24 they've revealed that he helped the United States vis-à-vis

25 Ukraine, and I don't think Russia's going to be too happy about

AA000114

32

—————————2:24-mj-00166-DJA—————————

1   that.

2         THE COURT:  Well, that's -- that's a relevant point.

3   All right.  Go ahead.

4         MR. CHESNOFF:  Your Honor, I -- I think that the Court

5   should follow the recommendation.  I think that the Court

6   understands that this is a situation where a man deserves an

7   opportunity to truly defend himself.  And he's never shown

8   anybody that he has any disrespect for a courtroom or a Court.

9   And the question of the veracity issue, that's the try -- that's

10  the case, but that's not been proven.  We just had a -- that's

11  not proven.

12        THE COURT:  All right.

13        MR. CHESNOFF:  Thank you, Your Honor.

14        THE COURT:  All right, Mr. Wise.  Anything in response?

15        MR. WISE:  Just briefly, Your Honor.

16        Counsel started with saying -- holding up the Israeli

17  passport saying, "Well, the Court can impose a condition that

18  you can't get a new passport."  But of course the issue is you

19  can impose the condition, but you can't police it.  And that's

20  what makes the problem of dual nationality particularly unique.

21        As to the question of a GPS anklet or bracelet, in

22  addition to the technology not being as precise as one might

23  assume in 2024, defendants can and do cut them off and then they

24  alarm, but it's not like law enforcement can instantly respond.

25  And in any location that's near a major city with an

AA000115

33

————2:24-mj-00166-DJA————

1    international airport, the amount of response time is usually

2    not -- is usually not short enough that it would prevent someone

3    from going to an international airport or a location where they

4    could -- where they could use air travel.

5         Counsel mentioned that the foreign -- what he calls the

6    foreign travel was at our behest.  Well, let me be very clear

7    this -- we're not talking about foreign travel.  What we point

8    out is that the defendant self -- he claims himself to have all

9    of these contacts with foreign intelligence services.  He

10   volunteers that information to the handler.

11        And, for instance, this most recent trip where he came

12   back with this new disinformation story was absolutely of his

13   own doing.  And -- and he pushed that story when we met with him

14   in September, and it shows that the bad conduct is not, as

15   counsel says in their memorandum, limited to 2020.  It is much

16   more recent and much more -- and much more pronounced.

17        Counsel says, you know, that the Court can somehow

18   address how he could have contact with overseas witness -- with

19   folks overseas.  I have no idea how that could be addressed by a

20   court in the United States whose jurisdiction is limited to the

21   United States.  Counsel said there could be limits on phone

22   usage.  You can go to a kiosk in a mall and buy a burner phone.

23   He was actually communicating over Signal and Telegram.  Those

24   are web-based applications that the Court would have no ability

25   to police or prevent.

AA000116

34

—————————————2:24-mj-00166-DJA—————————————

1        You know, while counsel claims, I guess -- I mean, in

2   addition -- and I hear him say now that the "serious" comment

3   was about the -- the sentence, but that's -- that's not actually

4   what he wrote.  He wrote:  "These allegations are make-weight

5   and politically motivated.  They do not involve espionage or

6   theft and are, thus, not serious."

7        That's -- that's his words.  And he -- he actually

8   ascribes bad motives to us.  He says the only reason we want to

9   keep him in is so that he can't defend himself, and he mentioned

10  improper motives of the Bureau.  I wasn't quite following what

11  he meant.

12        MR. CHESNOFF:  Your Honor, could you ask him to stop?

13  Like, suggest -- enough is enough.

14        THE COURT:  I'm allowing some leeway.  Let's finish the

15  argument.

16        Counsel.

17        MR. WISE:  Third-party custodians that are wives or

18  intimate partners are in the worst possible position one could

19  be in.  And I've seen this in case after case.  To ask someone

20  to --

21        THE COURT:  I'm not going to do a third party.  If I

22  release, that's not going to be a condition so go ahead.

23        MR. WISE:  Okay.  Putting someone in that position I

24  think is really untenable.

25        So I don't think that any of the -- any of the

AA000117

Case 2:24-mj-00166-DJA   Document 20   Filed 02/21/24   Page 35 of 45

35

———————2:24-mj-00166-DJA———————

1  suggestions that counsel make even come close to addressing the

2  risks that this defendant presents for all the reasons we've

3  outlined.

4          THE COURT:  All right.  Thank you.

5          Mr. Chesnoff, briefly.

6          MR. CHESNOFF:  Yeah, just briefly.  It's not just

7  Chesnoff who says it; it's Pretrial that says it, Your Honor.

8          THE COURT:  On the release?

9          MR. CHESNOFF:  Yeah.

10          THE COURT:  Understood.  All right.

11          (Pause.)

12          THE COURT:  Well, as the parties know, my decision is

13  based upon what the Bail Reform Act tells me to consider and to

14  apply to this particular case and this particular defendant,

15  Mr. Smirnov, and his personal characteristics and history.

16  There's two prongs to that.  The first -- or I'll take the

17  second which is generally the second, which is the danger prong,

18  requires the Government to provide evidence of clear and

19  convincing evidence that he's a danger to the community.  That's

20  not what they've asked or argued, and that's not what any of the

21  parties have raised.

22          And so while one may argue the underlying politics of

23  the case or the danger to our system as a whole or to the free

24  elections or some of those issues, and while those may be issues

25  that are ripe for intelligent, honest discussion, they aren't a

AA000118

—2:24-mj-00166-DJA—

1   consideration for this Court under the Bail Reform Act as it

2   relates to clear and convincing evidence of danger.

3          And so I don't find that Mr. Smirnov is a danger

4   notwithstanding the underlying allegations.  I know the Pretrial

5   report suggested that he could be a danger based upon the

6   underlying allegations.  And as the parties have acknowledged,

7   Mr. Chesnoff has argued, and I've stated, the underlying facts

8   under Ninth Circuit case law are the least important factor of

9   all of the other factors to consider, except on the level that

10  it relates to the trust factor that the Government argues.

11         And so in terms of considering Mr. Smirnov's underlying

12  actions, I think they do come into this idea of whether or not

13  he can be trusted to the point where I would release him.

14         I think it's pretty clear to this Court that

15  Mr. Smirnov is a flight risk by a preponderance of the evidence.

16  His dual citizenship, his possession of passports, his foreign

17  ties, his extensive foreign travel, and some questions about his

18  employment and where he makes his money I think clearly rise to

19  the level that he's a risk of nonappearance by a preponderance

20  of the evidence.  The bigger question, obviously, is whether or

21  not there are conditions or a combination of conditions that can

22  address those concerns.

23         I do have concerns about his access to money and -- and

24  some of the representations made to Pretrial on Thursday, but I

25  also place those in the context of the case insofar as the

37

————2:24-mj-00166-DJA————

 1  language issue, the nature of the Pretrial interviews and how

 2  quickly they occur, he did not have counsel at the time, the

 3  context in which the questions were asked.  I don't know that

 4  that rises to the level that I'm convinced that he was sitting

 5  there Thursday morning intentionally lying to Pretrial to keep

 6  them from knowing about his finances.  I just -- I don't know

 7  that it rises to that level.

 8         The other concern, obviously, is the allegations and

 9  his relationship with his handler.  I will tell you I cannot

10  even begin to understand or know what goes on in a relationship

11  between an FBI handler and somebody who's cooperating and the

12  dynamics of that relationship.  I would suspect it gets close.

13  I don't know how it couldn't when you're working that close with

14  people.

15         I do on some level, like Mr. Chesnoff noted, recognize

16  that how he deals with his handler and the FBI and how they're

17  dealing with him in that complicated context would probably be

18  different than how he would treat a Court order or a Court

19  decision and whether or not the lack of trust he showed

20  according to the Government with his handler would rise to the

21  level of a lack of trust that he would not follow my orders or

22  violate them if I gave him that chance.  I'm not convinced of

23  that given the complex nature of that relationship.

24         The Government has argued the nature and circumstances

25  of the offense.  They put about a quarter of their 28-page brief

AA000120

38

```
─────────────2:24-mj-00166-DJA─────────────
```

1   to discuss the nature and circumstances and the weight of the

2   evidence.  And, again, those are the least important factors for

3   the Court to consider.  And they argue that his ties to the

4   community are weak, and they've argued that both in their

5   pleading and here today such that there are no condition or

6   combination of conditions that would address that.  And then

7   they raise the four others.

8        I -- you know, I understand the concern about foreign

9   intelligence agencies potentially resettling Mr. Smirnov outside

10  of the United States, his connections to them, but I think on

11  some level that's speculative as well because, as Mr. Chesnoff

12  points out, I don't know what Mr. Smirnov will be thought of in

13  Russia, but my guess is at this stage he probably thinks that's

14  not the most attractive place to go either if he was in fact

15  inclined to go hide somewhere.

16       So while I notice and note that that's a concern and

17  certainly raised by the Government that I should consider it, I

18  just don't know in the context of what's happened in the last

19  couple of weeks with his arrest and everything else that that is

20  as grave a concern as the Government outlines.

21       I've already addressed the concern about the money, and

22  I'll have to make a decision here whether or not his access to

23  those funds can be addressed with conditions.  I've already

24  addressed his disclosure of those and how that came about to

25  Pretrial and the context in which I am placing that in.  And

39

```
                       ─2:24-mj-00166-DJA─
```

1   then the Government argues that as a dual citizen he can walk

2   into an Israeli consulate and obtain a passport and be gone.

3   And, again, the question is are there conditions that can

4   address that.

5           As the parties may or may not know, this Court, as do

6   most courts across the country, when making these decisions puts

7   a lot of stock into Pretrial Services and their investigation

8   and their recommendations and their belief about whether or not

9   they believe somebody can be supervised with conditions.  And in

10  this case Pretrial Services believes notwithstanding some of the

11  issues that the Government's raised, and they acknowledge those

12  issues, they believe that Mr. Smirnov can be supervised and that

13  there are conditions that can be placed upon him if I were to

14  consider his release today.  And so that carries weight with the

15  Court as well.  As Mr. Chesnoff points out, it's not just

16  Mr. Chesnoff saying his client should be released, but Pretrial

17  Services believes that conditions can be fashioned.

18          And, again, I recognize the underlying political

19  ramifications of this investigation in this case and what the

20  Government believes the effect on our country and on our

21  elections that this might have had.  But, again, other than how

22  that relates to the trust issue, which I've discussed, and as it

23  relates to his relationship with his handler, I'm not sure that

24  those factors are of huge importance to the Court in making my

25  determination.

AA000122

40

—————————2:24-mj-00166-DJA—————————

1      So, Mr. Smirnov, you know, there's a lot of different

2   issues here.  But I do think that I can fashion conditions for

3   your release.  You may or may not make a mockery of me when I do

4   that, but that's not for my consideration either.  And when I

5   say "mockery," meaning you don't follow the conditions or you

6   flee.  And so I recognize that the Government's made some

7   arguments, but I think that despite those conditions can be

8   fashioned.

9      But as you now know, under the Bail Reform Act -- and

10   this may not be the end of it.  They may decide to appeal this.

11   But under the Bail Reform Act you can be detained, and in a case

12   like this, as Mr. Chesnoff has referenced, it could be a lot of

13   time before they can be ready for a trial and that could be a

14   long time that you're detained while that's pending.

15      I'm finding today that the Government has not met their

16   burden as it relates to conditions because I believe that

17   conditions can be fashioned because Pretrial believes that, and

18   so I'm going to give you that opportunity.

19      But if you come back before this Court or a Court in

20   the Central District of California, I can assure you that if it

21   is proven you have violated any of those conditions, there will

22   not be any hesitation to revoke your release and to remand you

23   to custody.  And listen to the conditions because there's going

24   to be some more that are not in the Pretrial report.

25      And I want to ask Pretrial, if we do the monitor travel

AA000123

41

——2:24-mj-00166-DJA——

1  restrictions, I know Clark County is easier because of the

2  different municipalities, but can we restrict him from the

3  international airport as well?

4           OFFICER MCKILLIP:  Yes, Your Honor.  We can put an

5  exclusion zone around the airport so if he goes into the area of

6  the airport, we will get notified.

7           THE COURT:  And that would be, say, without prior

8  permission.  So that if he with his lawyers say, "We're going to

9  L.A. to appear or we're going to L.A. to work on the case, we'll

10 be in the airport," that's something you can monitor as well?

11          OFFICER MCKILLIP:  Yes, Your Honor, as long as he tells

12 us beforehand.

13          THE COURT:  Right.

14          All right.  I'm going to release you on your personal

15 recognizance, which is just your signature and promise to appear

16 in court and to follow these conditions.  If you do not, that

17 will be revoked and you will be detained.

18          You will have time to go over these conditions with

19 your officer and with your lawyers.  I'm going to go through

20 them somewhat quickly.  If you don't understand everything, you

21 will have time to talk to them and make sure you understand.

22          First, you're to submit to supervision by Pretrial

23 Services.  You should report immediately to their office and

24 follow their direction for supervision.

25          I'm going to allow them to order you to seek

AA000124

42

—————2:24-mj-00166-DJA—————

1   employment.  I have -- you're not going to be able to continue

2   with your consulting business while this case is pending.

3   You're going to have to figure out some other way to conduct

4   business because I'm not going to allow foreign travel.  In

5   fact, I'm not going to allow any travel.  So you need to seek

6   employment that Pretrial approves and that's appropriate while

7   this case is pending.

8           You're to surrender your U.S. passport and your Israeli

9   passport to Pretrial Services immediately.  I believe that the

10  Government took your United States passport.  Mr. Chesnoff has

11  your Israeli passport.  He shall give that to Ms. McKillip upon

12  the conclusion of this hearing.

13          Number four, you shall not obtain a passport or any

14  other international travel documents.  Number five, I'm going to

15  order you that your travel is restricted to Clark County,

16  Nevada.  And the reason I say "Clark County" is it's too

17  difficult if you're in Las Vegas and you cross into Henderson or

18  you cross into North Las Vegas, that could create an issue.  So

19  I'm going to allow the travel in Clark County alone and exclude

20  you from the airport.

21          So if you are in the zone of the airport, and they'll

22  explain the zones, they will be notified immediately.

23  Government counsel may be correct that they can't do anything

24  quickly, but my guess is they will try.  So you are not allowed

25  to go to that airport.

AA000125

43

2:24-mj-00166-DJA

1        You can go to Los Angeles for court appearances in this

2   case and to prepare your case, but for no other reason.  So

3   while this case is pending, you're in Clark County, Nevada.

4        You are to avoid all contact directly or indirectly

5   with any person who is or may be a victim or witness in the

6   investigation or prosecution, and the Government will provide a

7   list to you of who that is.

8        As it relates to the travel restriction, I'm going to

9   order stand-alone monitoring with GPS.  And again, as I've

10  indicated, that will be restricted to Clark County and you will

11  not be allowed to go to the airport.

12       We need a tampering restriction on that, don't we,

13  Ms. McKillip?  I think I might have one.

14       (Pause.)

15       OFFICER MCKILLIP:  Yes, Your Honor.  The defendant

16  shall not tamper with, damage, or remove the monitoring device

17  and shall charge the equipment according to the instructions

18  provided by Pretrial Services.

19       THE COURT:  All right.  And, next, the defendant shall

20  pay all or part of the costs of the location monitoring program

21  based upon his ability to pay as determined by Pretrial Services

22  or the supervising officer.

23       Ms. McKillip, do -- does Pretrial request any

24  additional conditions to address the concerns that have been

25  raised here today?

AA000126

44

—————————2:24-mj-00166-DJA—————————

1      OFFICER MCKILLIP:  No, Your Honor, but just in

2  reference to the condition about not allowed to go to the

3  airport, we would just ask without prior permission just so that

4  he could get there --

5      THE COURT:  Yes.

6      OFFICER MCKILLIP:  -- to California for court.

7      THE COURT:  Yes, without prior permission.  But, again,

8  the airport for that will only be to go to Los Angeles for court

9  appearances, unless you find a need during the course of

10  preparation for the defense that you need to travel somewhere

11  else.  But that will have to be outlined and get Court approval,

12  Mr. Chesnoff.

13      MR. CHESNOFF:  We will file whatever is appropriate,

14  Your Honor.

15      THE COURT:  All right.

16      All right.  Mr. Chesnoff, Mr. Schonfeld, any questions

17  about these conditions?

18      MR. CHESNOFF:  No thank you, Your Honor.

19      THE COURT:  Mr. Smirnov, any questions about these

20  conditions?

21      THE DEFENDANT:  No.

22      THE COURT:  All right.  Anything else from the

23  Government, Mr. Wise?

24      MR. WISE:  Your Honor, we would request -- respectfully

25  request that you stay your order so that the Government can file

45

2:24-mj-00166-DJA

1   a motion for review in the court of original jurisdiction in the

2   Central District of California before Judge Wright which we will

3   do promptly.

4        THE COURT:  All right.  That will be denied.

5        Anything else?

6        MR. WISE:  No, Your Honor.

7        THE COURT:  Mr. Chesnoff, anything else?

8        MR. CHESNOFF:  No.  Have a nice afternoon, Your Honor.

9        THE COURT:  All right.  Court will be in recess.

10       MR. SCHONFELD:  Thank you.

11       (Whereupon the proceedings concluded at 4:01 p.m.)

12                         --oOo--

13       I, Patricia L. Ganci, court-approved transcriber, certify

14   that the foregoing is a correct transcript transcribed from the

15   official electronic sound recording of the proceedings in the

16   above-entitled matter.

17

18       /s/ PATRICIA L. GANCI        FEBRUARY 20, 2024
          Patricia L. Ganci                 Date
19

20

21

22

23

24

25

AA000128

Exhibit 10

Central District of California Docket
2:24-CR-91-ODW

AA000129

WESTERN,APPEAL

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CRIMINAL DOCKET FOR CASE #: 2:24-cr-00091-ODW-1

Case title: USA v. Smirnov

Date Filed: 02/14/2024

Assigned to: Judge Otis D. Wright, II

Appeals court case numbers: 24-1133 9th CCA, 24-4040 9th CCA

**Defendant (1)**

**Alexander Smirnov**

represented by **Mark A. Byrne**
Byrne and Nixon LLP
700 North Brand Boulevard, Suite 1180
Glendale, CA 91203
213-620-8003
Fax: 213-620-8012
Email: markbyrne@byrnenixon.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard A Schonfeld**
Chesnoff and Schonfeld
520 South 4th Street
Las Vegas, NV 89101-6593
702-384-5563
Fax: 702-598-1425
Email: rschonfeld@cslawoffice.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**David Z Chesnoff**
Chesnoff and Schonfeld
520 South 4th Street
Las Vegas, NV 89101
702-384-5563
Email: dzchesnoff@cslawoffice.net
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Naser J. Khoury**
Naser J. Khoury Law Offices
14427 Sylvan Street
Van Nuys, CA 91401-2649
818-654-0001
Fax: 818-654-0007

AA000130

Email: naseratlaw@gmail.com
*ATTORNEY TO BE NOTICED*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1001: False Statement (1) | |
| 18:1519: Creating a False and Fictitious Record (2) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

USA             represented by    **Derek Edward Hines**
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue NW Room B-200
Washington, DC 20530
771-217-6091
Email: deh@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Leo J. Wise**
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue, NW, Room B-200
Washington, DC 20530
771-217-6091
Email: lwise@usa.doj.gov *(Inactive)*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Christopher Michael Rigali**
Office of Special Counsel, U.S. Dept. of

AA000131

Justice
950 Pennsylvania Avenue NW, Room B-200
Washington, DC 20530
202-616-2652
Email: christopher.rigali2@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Sean F Mulryne**
Office of the Special Counsel - Weiss
950 Pennsylvania Avenue NW, Room B-200
Washington, DC 20530
202-430-4880
Email: sean.mulryne@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/14/2024 | 1 | INDICTMENT filed as to Alexander Smirnov (1) count(s) 1, 2. Offense occurred in LA. (mhe) (Entered: 02/15/2024) |
| 02/14/2024 | 2 | CASE SUMMARY filed by AUSA Leo J Wise as to Defendant Alexander Smirnov; defendants Year of Birth: 1980 (mhe) (Entered: 02/15/2024) |
| 02/14/2024 | 4 | EX PARTE APPLICATION to Seal Case Filed by Plaintiff USA as to Defendant Alexander Smirnov. (mhe) (Entered: 02/15/2024) |
| 02/14/2024 | 5 | ORDER by Magistrate Judge Michael R. Wilner: granting 4 EX PARTE APPLICATION to Seal Case as to Alexander Smirnov (1) (mhe) (Entered: 02/15/2024) |
| 02/14/2024 | 6 | Notice of Appearance or Withdrawal of Counsel: Adding Derek E Hines as counsel of record for Alexander Smirnov for the reason indicated in the G-123 Notice. Filed by plaintiff USA. (mhe) (Entered: 02/15/2024) |
| 02/15/2024 | 7 | SEALED EX PARTE APPLICATION to Unseal Case Filed by Plaintiff USA as to Defendant Alexander Smirnov. (mhe) (Entered: 02/15/2024) |
| 02/15/2024 | 8 | SEALED ORDER UNSEALING INDICTMENT AND RELATED DOCUMENTS by Magistrate Judge Michael R. Wilner: granting 7 EX PARTE APPLICATION to Unseal Case as to Alexander Smirnov (1) (mhe) (Entered: 02/15/2024) |
| 02/15/2024 | 9 | Notice of Appearance or Withdrawal of Counsel: for attorney Sean F Mulryne counsel for Plaintiff USA. Adding Sean Francis Mulryne as counsel of record for United States of America for the reason indicated in the G-123 Notice. Filed by Plaintiff United States of America. (Attorney Sean F Mulryne added to party USA(pty:pla))(Mulryne, Sean) (Entered: 02/15/2024) |
| 02/15/2024 | 10 | NOTICE OF APPEARANCE OR REASSIGNMENT of AUSA Christopher Michael Rigali on behalf of Plaintiff USA. Filed by Plaintiff USA. (Attorney Christopher Michael Rigali added to party USA(pty:pla))(Rigali, Christopher) (Entered: 02/15/2024) |
| 02/21/2024 | 11 | APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE/DETENTION Filed by Plaintiff USA as to Defendant Alexander Smirnov. (Attachments: # 1 Exhibit 2, # 2 Exhibit 8, # 3 Exhibit 9) (Hines, Derek) (Entered: 02/21/2024) |
| 02/21/2024 | 12 | EX PARTE APPLICATION for Leave to File Government's Ex Parte Application for Order Sealing Certain Exhibits to Government's Application for Review of Magistrate Judge's |

AA000132

| | | |
|---|---|---|
| | | Bail Order. Filed by Plaintiff USA as to Defendant Alexander Smirnov. (Attachments: # 1 Proposed Order) (Hines, Derek) (Entered: 02/21/2024) |
| 02/21/2024 | 13 | ORDER SEALING CERTAIN EXHIBITS TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL ORDER as to Alexander Smirnov (1) 12 by Judge Otis D. Wright, II: Pursuant to Local Criminal Rule 49-1.2(b)(3), exhibits 1, 3, 4, 5, 6, 7, 10 and 11 shall be kept under seal. (lc) (Entered: 02/21/2024) |
| 02/21/2024 | 14 | NOTICE OF APPEARANCE of attorney Richard A Schonfeld, (Retained), appearing on behalf of Defendant Alexander Smirnov, filed by Defendant Alexander Smirnov. (Schonfeld, Richard) (Entered: 02/21/2024) |
| 02/21/2024 | 17 | SEALED - EXHIBIT 1 TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL REVIEW ORDER (bm) (Entered: 02/22/2024) |
| 02/21/2024 | 18 | SEALED - EXHIBIT 3 TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL REVIEW ORDER (bm) (Entered: 02/22/2024) |
| 02/21/2024 | 19 | SEALED - EXHIBIT 4 TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL REVIEW ORDER (bm) (Entered: 02/22/2024) |
| 02/21/2024 | 20 | SEALED - EXHIBIT 5 TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL REVIEW ORDER (bm) (Entered: 02/22/2024) |
| 02/21/2024 | 21 | SEALED - EXHIBIT 6 TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL REVIEW ORDER (bm) (Entered: 02/22/2024) |
| 02/21/2024 | 22 | SEALED - EXHIBIT 7 TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL REVIEW ORDER (bm) (Entered: 02/22/2024) |
| 02/21/2024 | 23 | SEALED - EXHIBIT 10 TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL REVIEW ORDER (bm) (Entered: 02/22/2024) |
| 02/21/2024 | 24 | SEALED - EXHIBIT 11 TO GOVERNMENT'S APPLICATION FOR REVIEW OF MAGISTRATE JUDGE'S BAIL REVIEW ORDER (bm) (Entered: 02/22/2024) |
| 02/22/2024 | 15 | *RESTRICTED DOCUMENT AND ENTRY* IN CAMERA PROCEEDINGS (bm) (Entered: 02/22/2024) |
| 02/22/2024 | 16 | Arrest Warrant Issued by Judge Otis D. Wright, II as to Defendant Alexander Smirnov. (Not for Public View pursuant to the E-Government Act of 2002) (lc) (Main Document 16 replaced on 3/12/2024) (rolm). (Entered: 02/22/2024) |
| 02/22/2024 | 25 | APPLICATION of Non-Resident Attorney David Z. Chesnoff to Appear Pro Hac Vice on behalf of Defendant Alexander Smirnov (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-36960987) Filed by Defendant Alexander Smirnov. Application set for hearing on 2/22/2024 at 03:29 PM before Judge Otis D. Wright II. (Attorney Naser J. Khoury added to party Alexander Smirnov(pty:dft)) (Khoury, Naser) (Entered: 02/22/2024) |
| 02/22/2024 | 26 | NOTICE OF APPEARANCE of attorney David Z. Chesnoff, (Retained), appearing on behalf of Defendant Alexander Smirnov, filed by Defendant Alexander Smirnov. (Khoury, Naser) (Entered: 02/22/2024) |
| 02/22/2024 | 27 | ORDER SETTING HEARING ON GOVERNMENT MOTION FOR REVIEW OF RELEASE ORDER by Judge Otis D. Wright (bm) Modified on 2/23/2024 (bm). (Entered: 02/22/2024) |
| 02/22/2024 | 55 | SEALED UNREDACTED Arrest Warrant filed as to Defendant Alexander Smirnov re: Warrant of Arrest Issued - NFPV 16 (rolm) (Entered: 03/12/2024) |

AA000133

| 02/23/2024 | 28 | COUNSEL ARE NOTIFIED, the Application for Non Resident 25 was set for a hearing (2-22-24) which is invalid and VACATED. The parties were emailed an order with the correct date and time: (2-26-24 @ 9am).THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sce) TEXT ONLY ENTRY (Entered: 02/23/2024) |
| --- | --- | --- |
| 02/23/2024 | 29 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: APPLICATION of Non-Resident Attorney David Z. Chesnoff to Appear Pro Hac Vice on behalf of Defendant Alexander Smirnov (Pro Hac Vice Fee - $500 Fee Paid, Receipt No. ACACDC-36960987) 25 . The following error(s) was/were found: Local Rule 83-2.1.3.3(d) Certificate of Good Standing not attached for every state court listed to which the applicant has been admitted. Local Rule 83-2.1.3.3(b) Proposed order not attached. (ak) (Entered: 02/23/2024) |
| 02/23/2024 | 30 | Second APPLICATION of Non-Resident Attorney David Z. Chesnoff to Appear Pro Hac Vice on behalf of Defendant Alexander Smirnov (Pro Hac Vice Fee - $500 Previously Paid on 2/22/2024, Receipt No. 36960987) Filed by Defendant Alexander Smirnov. Application set for hearing on 2/26/2024 at 09:00 AM before Judge Otis D. Wright II. (Attachments: # 1 Proposed Order) (Khoury, Naser) (Entered: 02/23/2024) |
| 02/23/2024 | 31 | NOTICE of Deficiency in Electronically Filed Pro Hac Vice Application RE: Second APPLICATION of Non-Resident Attorney David Z. Chesnoff to Appear Pro Hac Vice on behalf of Defendant Alexander Smirnov (Pro Hac Vice Fee - $500 Previously Paid on 2/22/2024, Receipt No. 36960987) 30 . The following error(s) was/were found: Local Rule 83-2.1.3.3(d) Certificate of Good Standing not attached for every state court listed to which the applicant has been admitted. (sbou) (Entered: 02/23/2024) |
| 02/23/2024 | 32 | NOTICE OF CLERICAL ERROR, as to Defendant Alexander Smirnov: Due to clerical error the Notice of Deficiency was issued in error. Re: Notice of Deficiency in Electronically filed Pro Hac Vice Application (G-112C) - optional html form, 31 (sbou) (Entered: 02/23/2024) |
| 02/23/2024 | 33 | OPPOSITION to APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE/DETENTION 11 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Schonfeld, Richard) (Entered: 02/23/2024) |
| 02/23/2024 | 35 | ORDER GRANTING APPLICATION of Non-Resident Attorney David Z. Chesnoff to Appear Pro Hac Vice on behalf of Defendant Alexander Smirnov (1) and designating Naser I. Khoury as local counsel 30 by Judge Otis D. Wright, II. (lc) (Entered: 02/26/2024) |
| 02/26/2024 | 34 | SUPPLEMENT to APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE/DETENTION 11 (Schonfeld, Richard) (Entered: 02/26/2024) |
| 02/26/2024 | 36 | TRANSCRIPT ORDER as to Defendant Alexander Smirnov for Court Smart (CS). Order for: Criminal Non Appeal.(Hines, Derek) (Entered: 02/26/2024) |
| 02/26/2024 | 37 | TRANSCRIPT ORDER as to Defendant Alexander Smirnov for Court Smart (CS). Order for: Criminal Appeal. Court will contact Camie Linnell at clinnell@cslawoffice.net with further instructions regarding this order. Transcript preparation will not begin until payment has been satisfied with the transcription company. (Schonfeld, Richard) (Entered: 02/26/2024) |
| 02/26/2024 | 40 | MINUTES OF POST-INDICTMENT ARRAIGNMENT: held before Judge Otis D. Wright, II as to Defendant Alexander Smirnov (1) Count 1,2. Defendant arraigned, states true name is the name on the charging document. Defendant entered not guilty plea to all counts as charged. Attorney: David Z. Chesnoff, Retained present. Case assigned to Judge Otis D. Wright,II. Jury Trial set for 4/23/2024 09:00 AM before Judge Otis D. Wright II.. |

| | | |
|---|---|---|
| | | Judge Wright is located in 5D, Los Angeles - United States Courthouse, 350 W 1st Street, CA 90012-4565. Court Smart: 02/26/2024. (tba) (Entered: 02/27/2024) |
| 02/26/2024 | 43 | MINUTES OF ARREST ON INDICTMENT HEARING held before Judge Otis D. Wright, II as to Defendant Alexander Smirnov. Court issues Order under Fed. R. Crim. P. 5(f) concerning prosecutor's disclosure obligations;see General Order 21-02 (written order). Defendant states true name as charged. Attorney: David Z Chesnoff, Retained, present. Defendant remanded to the custody of the USM. Court Smart: CS 2/26/24. (mhe) (Entered: 03/01/2024) |
| 02/26/2024 | 44 | ABSTRACT OF COURT PROCEEDING Issued by Judge Otis D. Wright, II as to Alexander Smirnov. Defendant be provided with a medical examination and/or medical treatment. (mhe) (Entered: 03/01/2024) |
| 02/26/2024 | 45 | ADVISEMENT OF STATUTORY & CONSTITUTIONAL RIGHTS filed by Defendant Alexander Smirnov. (mhe) (Entered: 03/01/2024) |
| 02/26/2024 | 46 | ORDER OF DETENTION by Judge Otis D. Wright, II as to Defendant Alexander Smirnov, (mhe) (Entered: 03/01/2024) |
| 02/26/2024 | 47 | DESIGNATION AND APPEARANCE OF COUNSEL; filed by Richard A Schonfeld, David Z Chesnoff appearing for Alexander Smirnov (mhe) (Entered: 03/01/2024) |
| 02/27/2024 | 38 | TRANSCRIPT filed as to Defendant Alexander Smirnov for proceedings held on 02/26/2024. Electronic Court Recorder: EXCEPTIONAL REPORTING SERVICES, INC., phone number (361) 949-2988. Transcript may be viewed at the court public terminal or purchased through the Electronic Court Recorder before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 3/19/2024. Redacted Transcript Deadline set for 3/29/2024. Release of Transcript Restriction set for 5/28/2024. (yja) (Entered: 02/27/2024) |
| 02/27/2024 | 39 | NOTICE OF FILING TRANSCRIPT filed as to Defendant Alexander Smirnov for proceedings 02/26/2024 re Transcript 38 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (yja) TEXT ONLY ENTRY (Entered: 02/27/2024) |
| 02/29/2024 | 41 | NOTICE OF APPEAL to Appellate Court re: Conditions of Release filed by Defendant Alexander Smirnov Filing fee $605, receipt number ACACDC-37009687. (Schonfeld, Richard) (Entered: 02/29/2024) |
| 02/29/2024 | 42 | REPORT COMMENCING CRIMINAL ACTION as to Defendant Alexander Smirnov; defendants Year of Birth: 1980; date of arrest: 2/14/2024 (mhe) (Entered: 03/01/2024) |
| 03/01/2024 | 48 | NOTICE of and Request to Designate a Classified Information Security Officer filed by Plaintiff USA as to Defendant Alexander Smirnov (Attachments: # 1 Proposed Order) (Rigali, Christopher) (Entered: 03/01/2024) |
| 03/01/2024 | 50 | NOTIFICATION by Circuit Court of Appellate Docket Number 24-1133 as to Defendant Alexander Smirnov, 9th CCA regarding Notice of Appeal - Conditions of Release to 9th Circuit Court of Appeals 41 . (mat) (Entered: 03/04/2024) |
| 03/04/2024 | 49 | ORDER DESIGNATING A CLASSIFIED INFORMATION SECURITY OFFICER AND ALTERNATE CLASSIFIED INFORMATION SECURITY OFFICERS 48 as to Defendant Alexander Smirnov 48 by Judge Otis D. Wright, II : The Court HEREBY APPOINTS W. Scooter Slade, Supervisory Security Specialist, for the position of ClassifiedInformation Security Officer in the above-captioned matter. The Court FURTHER APPOINTS Jennifer H. Campbell, Daniel O. Hartenstine, Daniella M. Medel, Matthew W. Mullery, and Harry |

| | | J. Rucker as Alternate Classified Information Security Officers in the above captioned matter. (lc) (Entered: 03/04/2024) |
|---|---|---|
| 03/05/2024 | 51 | DESIGNATION AND APPEARANCE OF COUNSEL; filed by Mark A. Byrne appearing for Alexander Smirnov (Attorney Mark A. Byrne added to party Alexander Smirnov(pty:dft))(Byrne, Mark) (Entered: 03/05/2024) |
| 03/11/2024 | 52 | Emergency EX PARTE APPLICATION for Medical Treatment *Medical Furlough* Filed by Defendant Alexander Smirnov. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order Proposed Order) (Chesnoff, David) (Entered: 03/11/2024) |
| 03/11/2024 | 53 | MINUTES (IN CHAMBERS) by Judge Otis D. Wright, II: as to Defendant Alexander Smirnov.The Court orders the clerk's office to unseal docket nos. 15 and 16 immediately. (rolm) (Entered: 03/11/2024) |
| 03/11/2024 | 57 | AMENDED ORDER OF DETENTION by Judge Otis D. Wright, II as to Defendant Alexander Smirnov, (rolm) (Entered: 03/14/2024) |
| 03/12/2024 | 54 | OPPOSITION to Emergency EX PARTE APPLICATION for Medical Treatment *Medical Furlough* 52 (Attachments: # 1 Exhibit 1)(Hines, Derek) (Entered: 03/12/2024) |
| 03/13/2024 | 56 | ORDER by Judge Otis D. Wright, II. Denying 52 EX PARTE APPLICATION for Medical Treatment as to Alexander Smirnov (1) (rolm) (Entered: 03/13/2024) |
| 03/15/2024 | 58 | Joint STIPULATION for Order Protective Order filed by Plaintiff USA as to Defendant Alexander Smirnov (Attachments: # 1 Proposed Order)(Mulryne, Sean) (Entered: 03/15/2024) |
| 03/19/2024 | 59 | PROTECTIVE ORDER UPON STIPULATION REGARDING DISCOVERY CONTAINING PERSONAL IDENTIFYING INFORMATION; PRIVACY ACT INFORMATION; GRAND JURY INFORMATION; AND SENSITIVE U.S. GOVERNMENT INFORMATION as to Defendant Alexander Smirnov 58 by Judge Otis D. Wright, II. (lc) (Entered: 03/19/2024) |
| 03/25/2024 | 60 | Emergency EX PARTE APPLICATION for Reconsideration re Order on Motion for Medical Treatment 56 *Regarding Medical Furlough for the Next Thirty Days Pursuant to 18 U.S.C. 3142 or in the Alternative for an Order Requiring the United States Marshal Service to Transport Defendant for Surgery and Post-Operative Care with Dr. Tanaka in San Francisco, California* Filed by Defendant Alexander Smirnov. (Attachments: # 1 Proposed Order Proposed Order) (Chesnoff, David) (Entered: 03/25/2024) |
| 03/25/2024 | 61 | SUPPLEMENT to Emergency EX PARTE APPLICATION for Reconsideration re Order on Motion for Medical Treatment 56 *Regarding Medical Furlough for the Next Thirty Days Pursuant to 18 U.S.C. 3142 or in the Alternative for an Order Requiring the United States Marshal 60 filed by Defendant Alexander Smirnov. (Chesnoff, David) (Entered: 03/25/2024)* |
| 03/26/2024 | 62 | OPPOSITION to Emergency EX PARTE APPLICATION for Reconsideration re Order on Motion for Medical Treatment 56 *Regarding Medical Furlough for the Next Thirty Days Pursuant to 18 U.S.C. 3142 or in the Alternative for an Order Requiring the United States Marshal 60 filed by Plaintiff USA as to Defendant Alexander Smirnov. (Mulryne, Sean) (Entered: 03/26/2024)* |
| 03/26/2024 | 63 | ORDER by Judge Otis D. Wright, II: As to defendant Alexander Smirnov (1). Upon reviewing Defendant's Emergency Ex Parte Motion for Reconsideration regarding request for Medical Furlough for the Next 30 Days pursuant to 18 U.S.C. § 3142(i) [ 60], and having given careful reconsideration to theCourt's earlier determination, said Motion is again DENIED. (lc) (Entered: 03/26/2024) |

| 04/12/2024 | 64 | Joint STIPULATION to Continue Trial Date from 04/23/2024 to 12/02/2024 filed by Plaintiff USA as to Defendant Alexander Smirnov (Attachments: # 1 Proposed Order Proposed Order Continuing Trial Date and Excluding Time under the Speedy Trial Act) (Rigali, Christopher) (Entered: 04/12/2024) |
| --- | --- | --- |
| 04/12/2024 | 65 | ORDER CONTINUING TRIAL DATE AND FINDINGS REGARDING EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT as to Defendant Alexander Smirnov by Judge Otis D. Wright, II: Jury Trial set for 12/3/2024 09:00 AM is continued from April 23, 2024 to December 3, 2024 at 9:00 a.m. The Court will set a pretrial conference if necessary. (lc) (Entered: 04/12/2024) |
| 05/01/2024 | 66 | ORDER of USCA filed as to Defendant Alexander Smirnov, Notice of Appeal 41 , CCA #24-1133. Accordingly, we affirm the district court's pretrial detention order and its order denying temporary release. Appellant's renewed request for reassignment to a different district judge is denied. AFFIRMED. [See Order for further information.] (car) (Entered: 05/06/2024) |
| 05/10/2024 | 67 | Emergency EX PARTE APPLICATION for Medical Treatment *Renewed Motion for (1) Provision of Pain-Reducing Eye Drops, and (2) A Court Order Scheduling Eye Surgery Forthwith With A Government-Contracted Doctor, or For A Medical Furlough Under 19 U.S.C. § 3142(i) For Eye Surgery With Dr. H. George Tanaka* Filed by Defendant Alexander Smirnov. (Attachments: # 1 Proposed Order Proposed Order) (Chesnoff, David) (Entered: 05/10/2024) |
| 05/13/2024 | 68 | OPPOSITION to Emergency EX PARTE APPLICATION for Medical Treatment *Renewed Motion for (1) Provision of Pain-Reducing Eye Drops, and (2) A Court Order Scheduling Eye Surgery Forthwith With A Government-Contracted Doctor, or For A Medical Furlough Under 19 U.S.C. & 67 (Mulryne, Sean) (Entered: 05/13/2024)* |
| 05/15/2024 | 69 | IN CAMERA PROCEEDINGS ON EX PARTE EMERGENCY MOTION TO BE PROVIDED WITH EYE DROPS AND FOR IMMEDIATE SURGERY 67 ESSENTIALLY A MOTION FOR RECONSIDERATION OF PRIOR MOTION FOR MEDICAL FURLOUGH OR TRANSPORT TO SAN FRANCISCO FOR EYE SURGERY as to Alexander Smirnov (1) by Judge Otis D. Wright, II: Having once again given further consideration of the earlier filings and especially noting the Declaration of Sean F. Mulryne, co-counsel for the United States, submitted in support of the government's opposition to the motion, in which counsel states that surgery has been scheduled to take place in less than two weeks, the instant motion is again DENIED as moot. (lc) Modified on 5/15/2024 (lc). (Entered: 05/15/2024) |
| 05/21/2024 | 70 | Emergency EX PARTE APPLICATION for Medical Treatment *Second Renewed Motion For (1) Provision of Eye Drops, and (2) A Court Ordered Medical Furlough Under 18 U.S.C. § 3142(i) For Eye Surgery With Dr. H. George Tanaka* Filed by Defendant Alexander Smirnov. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Proposed Order Proposed Order) (Chesnoff, David) (Entered: 05/21/2024) |
| 05/22/2024 | 71 | SUPPLEMENT to Emergency EX PARTE APPLICATION for Medical Treatment *Second Renewed Motion For (1) Provision of Eye Drops, and (2) A Court Ordered Medical Furlough Under 18 U.S.C. § 3142(i) For Eye Surgery With Dr. H. George Tanaka* 70 filed by Defendant Alexander Smirnov. (Chesnoff, David) (Entered: 05/22/2024) |
| 05/22/2024 | 72 | OPPOSITION to Emergency EX PARTE APPLICATION for Medical Treatment *Second Renewed Motion For (1) Provision of Eye Drops, and (2) A Court Ordered Medical Furlough Under 18 U.S.C. § 3142(i) For Eye Surgery With Dr. H. George Tanaka* 70 filed by Plaintiff USA as to Defendant Alexander Smirnov. (Rigali, Christopher) (Entered: 05/22/2024) |

| 05/23/2024 | 73 | (STRICKEN PER 5/24/2024 ORDER DOCKET NO. 74). NOTICE OF MOTION AND MOTION for Detention *Reopen Detention Hearing and to impose Conditions of Pretrial Release* Filed by Defendant Alexander Smirnov. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Proposed Order Proposed Order) (Chesnoff, David) Modified on 5/24/2024 (lc). (Entered: 05/23/2024) |
| --- | --- | --- |
| 05/24/2024 | 74 | ORDER by Judge Otis D. Wright, II: the following document(s) be STRICKEN for failure to comply with the Local Rules, General Order and/or the Courts Case Management Order: NOTICE OF MOTION AND MOTION for Detention *Reopen Detention Hearing* 73 , *for the following reasons: Hearing information is missing, incorrect or not timely. (lc) (Entered: 05/24/2024)* |
| 05/24/2024 | 75 | NOTICE OF MOTION AND MOTION for Detention *Reopen Detention Hearing and to Impose Conditions of Pretrial Release* Filed by Defendant Alexander Smirnov. Motion set for hearing on 6/24/2024 at 10:00 AM before Judge Otis D. Wright II. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Proposed Order Proposed Order) (Chesnoff, David) (Entered: 05/24/2024) |
| 05/31/2024 | 76 | SUPPLEMENT to NOTICE OF MOTION AND MOTION for Detention *Reopen Detention Hearing and to Impose Conditions of Pretrial Release* 75 filed by Defendant Alexander Smirnov. (Chesnoff, David) (Entered: 05/31/2024) |
| 05/31/2024 | 77 | OPPOSITION to NOTICE OF MOTION AND MOTION for Detention *Reopen Detention Hearing and to Impose Conditions of Pretrial Release* 75 filed by Plaintiff USA as to Defendant Alexander Smirnov. (Mulryne, Sean) (Entered: 05/31/2024) |
| 06/05/2024 | 78 | MANDATE of the 9th CCA filed as to Defendant Alexander Smirnov re Notice of Appeal - Conditions of Release to 9th Circuit Court of Appeals 41 , USCA CCA #24-1133. The judgment of this Court, entered May 01, 2024, takes effect this date. This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. [See Order, 66 AFFIRMED.](mat) (Entered: 06/05/2024) |
| 06/06/2024 | 79 | EX PARTE APPLICATION to Shorten Time for Hearing, re: NOTICE OF MOTION AND MOTION for Detention *Reopen Detention Hearing and to Impose Conditions of Pretrial Release* 75 to 6/17/2024 Filed by Defendant Alexander Smirnov. (Attachments: # 1 Proposed Order) (Chesnoff, David) (Entered: 06/06/2024) |
| 06/07/2024 | 80 | REPLY NOTICE OF MOTION AND MOTION for Detention *Reopen Detention Hearing and to Impose Conditions of Pretrial Release* 75 filed by Defendant Alexander Smirnov. (Chesnoff, David) (Entered: 06/07/2024) |
| 06/07/2024 | 81 | ORDER DENYING REQUEST 79 by Judge Otis D. Wright, II: As to Alexander Smirnov (1). Upon reviewing Defendant's Ex Parte Motion for an Order Shortening Time to be heard on his Motion to Reopen Detention Hearing and Impose Conditions of Release (Dkt 75), and with no good cause appearing, said Motion is DENIED. The Court ORDERS that the hearing on Defendants Motion (Dkt 75) currently scheduled for June 24, 2024, at 10:00 AM will remain. (lc) (Entered: 06/07/2024) |
| 06/20/2024 | 82 | filed by Plaintiff USA as to Defendant Alexander Smirnov *Supplement* Re: Opposition to Motion (CR) 77 (Mulryne, Sean) (Entered: 06/20/2024) |
| 06/20/2024 | 83 | SUPPLEMENT to NOTICE OF MOTION AND MOTION for Detention *Reopen Detention Hearing and to Impose Conditions of Pretrial Release* 75 filed by Defendant Alexander Smirnov. (Attachments: # 1 Exhibit Exhibit 1)(Chesnoff, David) (Entered: 06/20/2024) |
| 06/21/2024 | 84 | ON THE COURT'S OWN MOTION, the MOTION for Detention Reopen Detention Hearing and to Impose Conditions of Pretrial Release 75 is CONTINUED to 7/1/2024 at |

| | | 8:00 AM before Judge Otis D. Wright II. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sce) TEXT ONLY ENTRY (Entered: 06/21/2024) |
|---|---|---|
| 06/21/2024 | 85 | The Court feels it would not be aided by oral argument regarding the Motion for Detention Reopen Detention Hearing and to Impose Conditions of Pretrial Release 75 , scheduled for July 1, 2024 is hereby VACATED, and taken off calendar. The matter stands submitted, and will be decided upon without oral argument.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sce) TEXT ONLY ENTRY (Entered: 06/21/2024) |
| 06/24/2024 | 86 | NOTICE of Manual Filing of Classified Motion for a Protective Order Pursuant to CIPA Section 4 and Fed. R. Crim. P. 16(d)(1) filed by Plaintiff USA as to Defendant Alexander Smirnov (Rigali, Christopher) (Entered: 06/24/2024) |
| 06/24/2024 | 87 | APPLICATION for Leave to File Excess Pages as to Classified Motion and Memorandum of Law In Support of a Protective Order Pursuant to CIPA Section 4 and Fed. R. Crim. P. 16(d)(1) Filed by Plaintiff USA as to Defendant Alexander Smirnov. Application set for hearing on 7/15/2024 at 10:00 AM before Judge Otis D. Wright II. (Attachments: # 1 Proposed Order) (Rigali, Christopher) (Entered: 06/24/2024) |
| 06/25/2024 | 88 | NOTICE TO FILER OF DEFICIENCIES in Electronic Filed Document RE: Plaintiff USA's APPLICATION for Leave to File Excess Pages as to Classified Motion and Memorandum of Law In Support of a Protective Order Pursuant to CIPA Section 4 and Fed. R. Crim. P. 16(d)(1) 87 . The following error(s) was/were found: Hearing information is missing, incorrect, or untimely. Filer Erroneously set the Application for hearing on Judge's Calendar for 7/16/2024 10:00 AM. No such hearing appears on the Pdf document, nor is a hearing required for the format used. Clerk notes a Proposed order was submitted as a separate attachment. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 06/25/2024) |
| 06/25/2024 | 89 | ORDER GRANTING GOVERNMENTS APPLICATION FOR PERMISSION TO FILE AN OVERSIZED BRIEF 87 by Judge Otis D. Wright, II: : The Court will accept the Governments ex parte, in camera, and sealed Motion and Memorandum of Law in Support for a Protective Order as filed with the Classified Information Security Officer (lc) (Entered: 06/25/2024) |
| 06/25/2024 | 90 | MINUTES (IN CHAMBERS) by Judge Otis D. Wright, II: ORDER ON DEFENDANTS SEVENTH MOTION TO REOPEN HEARING ON HIS MOTION TO REOPEN DETENTION HEARING[DE-79] AND TO MODIFY CONDITIONS OF HIS PRETRIAL RELEASE 75 as to Alexander Smirnov (1) /On February 26, 2024 following Defendants arrest in Las Vegas, NV, he was ordered detained. [DE-46.] Three days later he filed a Notice of Appeal from that Order. [DE-41.] On May 1, 2024 the Court of Appeals affirmed the District Courts Order [DE-66.] Since that time Defendant has filed six Emergency Ex Parte Applications for either Medical Furlough or the Re-opening of the Detention Hearing. The arguments have essentially been the same until recently when he has proposed a modification to the conditions for release. He has proposed to be under full-time surveillance of a security company who will promise not to let defendant leave the country. That security company is not under the jurisdiction of this court and unlike a bond surety, would suffer no consequence should Defendant leave the country without permission. Given Defendants international contacts the Court finds no comfort in the proposed modification of the terms of pretrial release. The Court's concerns about his leaving the jurisdiction remain and once again his requests, all of which appear to have a common goal, to be released from custody, are again DENIED. (lc) (Entered: 06/25/2024) |
| 07/01/2024 | 91 | NOTICE OF APPEAL to Appellate Court re: Conditions of Release filed by Defendant Alexander Smirnov re MINUTES (IN CHAMBERS) by Judge Otis D. Wright, II: ORDER |

| | | |
|---|---|---|
| | | ON DEFENDANTS SEVENTH MOTION TO REOPEN HEARING ON HIS MOTION TO REOPEN DETENTION HEARING[DE-79] AND TO MODIFY CONDITIONS OF HIS PRETRIAL RELEASE <u>75</u> as to Alexander Smirnov (1) /On February 26, 2024 following Defendants arrest in Las Vegas, NV, he was ordered detained. [DE-46.] Three days later he filed a Notice of Appeal from that Order. [DE-41]. On May 1, 2024 the Court of Appeals affirmed the District Courts Order [DE-66.] Since that time Defendant has filed six Emergency Ex Parte Applications for either Medical Furlough or the Re-opening of the Detention Hearing. The arguments have essentially been the same until recently when he has proposed a modification to the conditions for release. He has proposed to be under full-time surveillance of a security company who will promise not to let defendant leave the country. That security company is not under the jurisdiction of this court and unlike a bond surety, would suffer no consequence should Defendant leave the country without permission. Given Defendants international contacts the Court finds no comfort in the proposed modification of the terms of pretrial release. The Court's concerns about his leaving the jurisdiction remain and once again his requests, all of which appear to have a common goal, to be released from custody, are again DENIED. (lc) <u>90</u> Filing fee $605, receipt number ACACDC-37753708. (Chesnoff, David) (Entered: 07/01/2024) |
| 07/01/2024 | 92 | NOTIFICATION by Circuit Court of Appellate Docket Number 24-4040 as to Defendant Alexander Smirnov, 9th CCA regarding Notice of Appeal - Conditions of Release to 9th Circuit Court of Appeals, <u>91</u> . (mat) (Entered: 07/05/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/09/2024 16:04:57 | | |
| **PACER Login:** | CSlawoffice | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:24-cr-00091-ODW End date: 7/9/2024 |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |