No. 24-4040

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

ALEXANDER SMIRNOV,
*Defendant-Appellant.*

*APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE CENTRAL DISTRICT OF CALIFORNIA*
*DISTRICT COURT NO. 2:24-CR-91-ODW-1*
*RELATED CASE NO. 2:24-MJ-00166-DJA-1*

## GOVERNMENT'S MEMORANDUM OF LAW AND FACTS OPPOSING SECOND APPEAL UNDER FRAP 9(a)

DAVID C. WEISS
Special Counsel

LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels

950 Pennsylvania Ave NW,
Room B-200
Washington, D.C. 20530
(771) 217-6091
LJW@usdoj.gov; DEH@usdoj.gov;
SFM@usdoj.gov; CMR@usdoj.gov

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

I.    Introduction ................................................................ 1

II.   Background ................................................................ 2

III.  Argument ................................................................... 8

     1. Standard of Review ............................................... 9

     2. The District Court Did Not Abuse Its Discretion or Commit Any Error When It Appropriately Denied Defendant's Motion to Reopen Detention Proceedings Due to Defendant's Foreign Contacts and Conduct ............................................ 10

IV.  Conclusion .............................................................. 20

# TABLE OF AUTHORITIES

Cases                                                                   Pages

*Anderson v. City of Bessemer City, N.C.,*
   470 U.S. 564 (1985) ........................................................ 10, 12
*United States v. Cordero,*
   992 F.2d 985 (9th Cir. 1993) ............................................ 16
*United States v. Espinoza,*
   No. CRS08-0448 JAM, 2009 WL 3614849 (E.D. Cal. Oct. 27, 2009) ... 15
*United States v. Hasting,*
   461 U.S. 499 (1983) ....................................................... 16
*United States v. Hir,*
   517 F.3d 1081 (9th Cir. 2008) .......................................... 10
*United States v. Koenig,*
   912 F.2d 1190 (9th Cir. 1990) .......................................... 16
*United States v. Lynch*, No. 18-cr-00577-CRB-1,
   2023 WL 3436091 (N.D. Cal. May 11, 2023) ..................... 16, 17, 18, 19
*United States v. Motamedi,*
   767 F.2d 1403 (9th Cir. 1985) .......................................... 7, 8
*United States v. Santos-Flores*,
   794 F.3d 1088 (9th Cir. 2015) .......................................... 10
*United States v. Stephens,*
   2022 U.S. App. LEXIS 35897 (9th Cir. Dec, 29, 2022) ....................... 19
*United States v. Strong,*
   489 F.3d 1055 (9th Cir. 2007) .......................................... 9, 16
*United States v. Townsend,*
   897 F.2d 989 (9th Cir. 1990) ........................................... 10, 18

Statutes

18 U.S.C. § 1001 ............................................................. 3
18 U.S.C. § 1519 ............................................................. 3
18 U.S.C. § 3142(e) ......................................................... 7
18 U.S.C. § 3142(f) .................................................... 15, 16, 20
18 U.S.C. § 3142(j) ......................................................... 7

Rules

Fed. R. App. P. 32(a)(5) .................................................... 2

ii

Fed. R. App. P. 32(a)(6) ...................................................................2

Fed. R. App. P. 32(f) .......................................................................2

Fed. R. Crim. P. 52(a).....................................................................16

FRAP 9(a) ..........................................................................................1

# Introduction

Defendant Alexander Smirnov served as a confidential human source for the Federal Bureau of Investigation (FBI) for more than 14 years. Investigators learned that Smirnov lied to the FBI and fabricated evidence in a federal investigation. That false evidence concerned a candidate for President of the United States, who was elected President in 2020 and was a candidate for President until recently. In ordering defendant detained pending trial, the district court found that he is a flight risk and that no set of conditions would suffice to justify bail. This Court, on appeal, affirmed the district court's pretrial detention order.

Following the district court's detention ruling, defendant has filed numerous motions and applications over the past few months seeking release and/or further review of his detention conditions. Those motions and applications all have been denied. In the motion at issue here—a motion to reopen the detention hearing and to impose conditions of release—defendant proposed hiring a full-time, private security detail at his own expense as a condition of pretrial release—a proposal that he previously made to, and was rejected by, the district court in February 2024. On June 25, 2024, the district court (again) denied defendant's

request.  Defendant now challenges the district court's June 25, 2024 ruling, arguing that the court misconstrued defendant's offer of a surety bond as it relates to the private security proposal.  But the court did no such thing, and this attempt by defendant for pretrial release, rehashing a proposal that is neither new nor novel and which he previously presented to the district court, should end no differently than all his other attempts.  The district court has found, and continues to find, that defendant poses a substantial flight risk and that there are no conditions or combination of conditions of release that can reasonably assure his appearance for trial—given defendant's extensive foreign contacts, significant wealth (and its unknown origins), and misrepresentations made to federal government officials.

For the reasons set forth below, this Court should affirm the district court's order denying defendant's motion to reopen the detention hearing and to impose conditions of release.

## Background

Defendant was a confidential human source with the FBI who was indicted, on February 14, 2024, in the Central District of California with one count of making false statements to federal law enforcement, in

violation of 18 U.S.C. § 1001 (Count One), and one count of fabricating information in a federal investigation, in violation of 18 U.S.C. § 1519 (Count Two).  Defendant's charges were predicated on false derogatory information that he provided to the FBI about Public Official 1, an elected official in the Obama-Biden Administration who left office in January 2017, and Businessperson 1, the son of Public Official 1, in 2020, after Public Official 1 became a candidate for President of the United States.[1]

Since approximately February 22, 2024, defendant has been detained based on the district court's findings that defendant is a substantial flight risk and that no conditions or combination of conditions would ensure his appearance.  In reversing a magistrate judge's release order and issuing an arrest warrant for defendant,[2] the district court

_____

[1] For further factual and procedural background, the government respectfully incorporates its memorandum of law and facts opposing defendant's first appeal before this Court in No. 24-1133.  *See* No. 24-1133, Dkt. No. 11.

[2] Following defendant's arrest at the international airport in Las Vegas, a magistrate judge in the District of Nevada held a detention hearing and ultimately released defendant with conditions.  *See* 2:24-mj-166-DJA.  Notwithstanding that decision, the magistrate judge found that defendant presented a substantial flight risk and expressed concerns about his access to money and his representations made to Pretrial Services.  *See* Dkt. No. 7.2, Ex. 9, AA119 ("I think it's pretty clear

(continued  . . . .)

3

explained that on the day defendant was arrested after returning on an international flight, he "admitted that officials associated with Russian intelligence were instrumental in passing to him a fabricated story about a public official of the United States and his son." 24-cr-91, Dkt. No. 15 at 1–2. The court then explained the combination of factors that led it to conclude that detention is necessary:

> Now having considered the history of Defendant's relationship with his FBI handler during which he has proven himself not to be trustworthy, his admitted extensive and recent contacts with agents of foreign intelligence agencies, including Russian intelligence, and his stated intention to once again leave the country, this court has conduct[ed] its own de novo review, and as a result this court reverses the release order and requests the issuance of an arrest warrant for Defendant.

> Considering the fact Defendant has at his immediate disposal several million dollars, the ability to secure a passport at the Israeli embassy and foreign interests likely willing to assist Defendant in evading capture. An ankle bracelet is at best an irritant and insignificant impediment to his ability to leave the country. In this court's

_____

to this Court that Mr. Smirnov is a flight risk by a preponderance of the evidence."). The government moved to revoke the magistrate judge's release order, and the district court in the Central District of California, which is presiding over this case, granted that motion as described here. *See* 24-cr-91, Dkt. No. 15.

considered opinion, the only effective measure to assure Smirnov makes his court appearances is detention.

*Id.* at 2.

Once defendant was taken into custody, the district court permitted a further hearing on detention, which it was not required to hold, on February 26, 2024, as part of the court's *de novo* review of the magistrate judge's bail proceedings. At the outset of the hearing, the district court explained that it must determine whether there are "conditions or combinations of conditions which will assure that [defendant] will show up for trial," and the court explained that it had reviewed "all of the papers," would "entertain further discussion," but "to let you know what I'm thinking, I'm not satisfied that there are conditions or combinations of conditions which will . . . satisfy my concern as to whether or not [defendant] will not flee the jurisdiction." Dkt. No. 7.2, Ex. 8, AA62.[3] By this time, defendant had filed a written opposition (and supplement) to

---

[3] References to "Ex." and "AA" are the exhibits and page numbers, respectively, in the Appellant's Appendix that defendant filed in support of his appeal. *See* Dkt. No. 7.2.

the government's application for review of the magistrate judge's bail order.

The hearing included a discussion of two points, among others, that were central to the district court's findings—that is, defendant's foreign contacts and his undisclosed financial assets. And during the hearing, defendant proposed that he could hire a private security firm to monitor him 24 hours a day as a possible condition of release. AA71. At the conclusion of the hearing, the court stated that "I have not changed my mind." AA81. The court noted again that "I've read everyone's papers, I understand the arguments." AA80. The court continued that "[t]here is nothing garden variety about this case. To compare this to all the cases that we normally see, this is an outlier." AA81.

Following the district court's ruling, defendant filed his first appeal with this Court. *See* 24-1133. (Defendant's first appeal was preceded by his petition for a writ of mandamus to this Court challenging the district court's issuance of the arrest warrant. This Court denied that petition on February 25, 2024. *See* 24-970, Dkt. No. 16.) This Court rejected defendant's first appeal by affirming the district court's pretrial detention order on May 1, 2024, concluding:

> The district court correctly found that the government has met its burden of showing, by a preponderance of the evidence, that 'no condition or combination of conditions will reasonably assure the [defendant's] appearance,' 18 U.S.C. § 3142(e), and that appellant thus poses a risk of flight. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

24-1133, Dkt. No. 14. The Court continued that "contrary to appellant's contention, the district court did not err by subsequently concluding that appellant had not shown compelling reasons for temporary release under 18 U.S.C. § 3142(j)." *Id.* Defendant, soon thereafter, filed another "petition" with this Court, which the Court construed as "a motion for reconsideration and motion for reconsideration en banc," and summarily denied. *Id.*, Dkt. No. 16.

Around this same time, on May 24, 2024, defendant filed with the district court a motion to reopen the detention hearing and to impose conditions of pretrial release. Ex. 6, AA33–49. In support of his renewed request for pretrial release, defendant proposed hiring "round-the-clock monitored security" to keep watch over him. AA39. The district court denied defendant's motion to reopen on June 25, 2024. Ex. 2, AA06–07. In its Order, the district court noted that since this Court's ruling affirming the district court's pretrial detention order on May 1,

"Defendant has filed six Emergency Ex Parte Applications for either Medical Furlough or the Re-opening of the Detention Hearing."  AA07. The district court then addressed and denied defendant's proposal to hire full-time security as a condition of release:

> He has proposed to be under full-time surveillance of a security company who will promise not to let defendant leave the country.  That security company is not under the jurisdiction of this court and unlike a bond surety, would suffer no consequence should Defendant leave the country without permission.  Given Defendant's international contacts the Court finds no comfort in the proposed modification of the terms of pretrial release.  The Court's concerns about his leaving the jurisdiction remain and once again his requests, all of which appear to have a common goal, to be released from custody, are again **DENIED**.

*Id.*

Defendant now appeals this Order by the district court ("June 25, 2024 Order"), which the government addresses below.

## Argument

According to defendant, the district court clearly erred in its June 25, 2024 Order by stating that the private security company whom defendant proposes to hire as part of his proposed conditions of release "*unlike a bond surety*, would suffer no consequence should Defendant

8

leave the country without permission." Dkt. No. 7.1 at 11 (quoting June 25, 2024 Order). Defendant argues that he specifically proposed a surety bond in furtherance of his proposal, and the district court, therefore, either misapprehended or ignored that fact. *Id.* at 11, 13–16. Defendant, however, misapprehends the district court's rulings, and ignores the fact that these rulings were made in the context of extensive litigation that already has repeatedly addressed defendant's arguments seeking pretrial release over the past several months. The Court appropriately rejected defendant's latest attempt to secure his pretrial release, just as it appropriately rejected defendant's previous attempts. Nothing that defendant highlights in this appeal, including his reference to the surety bond, is new or novel, or in any way counters the district court's reasoned and well-documented findings and conclusions justifying pretrial detention—which this Court affirmed previously. The district court's June 25, 2024 Order, therefore, should be similarly affirmed.

## 1. *Standard of Review*

This Court reviews a district court's decision to reopen or not reopen detention proceedings for abuse of discretion. *See United States v. Strong*, 489 F.3d 1055, 1060 (9th Cir. 2007). And this Court "review[s]

the district court's factual findings concerning whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required under a 'deferential, clearly erroneous standard.'" *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990)); *see also* 24-1133, Dkt. No. 14 (affirming district court's pretrial detention order and order denying temporary release in defendant's first appeal). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous," and that rule applies "even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) (citations omitted).

## 2. *The District Court Did Not Abuse Its Discretion or Commit Any Error When It Appropriately Denied Defendant's Motion to Reopen Detention Proceedings Due to Defendant's Foreign Contacts and Conduct.*

Defendant argues that the district court's rejection of his proposal to hire private full-time security is flawed and constitutes clear error simply because the Court noted in its June 25, 2024 Order that the

security company, "unlike a bond surety, would suffer no consequence should Defendant leave the country without permission."  Ex. 2, AA07.  Because defendant proposed surety bonds as a condition of release in two of his filings, *see* Ex. 6, AA39; Ex. 7, AA53, he believes the district court's finding in its June 25, 2024 Order is factually inaccurate and, evidently, must negate all of the district court's other findings and lead to his pretrial release.  But defendant's argument fails for multiple reasons.[4]

First, the district court, when rejecting defendant's private security proposal, did not rely merely on the notion that the security company "would suffer no consequence should Defendant leave the country without permission."  Ex. 2, AA07.  That was simply one of several reasons for the court's rejection of the proposal.  The district court also stated in its findings that the security company would "not [be] under the

---

[4] Defendant, in his current appeal, makes passing references to other issues that have been litigated extensively by the parties and resolved repeatedly by the district court, *see* Dkt. No. 7.1 at 6–9 (district court's analysis in furtherance of pretrial detention order), 7 n.8 (defendant's medical condition), 8 n.9 (defendant's claims of hardship in preparing his defense).  The government, while disagreeing with defendant's assertions concerning those issues, does not address them here because defendant has cabined his present appeal simply to the issue of "bond surety" as referenced in the district court's June 25, 2024 Order.

jurisdiction of this court," and "[g]iven Defendant's international contacts the Court finds no comfort in the proposed modification of the terms of pretrial release." *Id*. The district court's findings and conclusion that the private security proposal did not obviate or allay the district court's overall concerns about the nature and extent of "Defendant's international contacts" is particularly notable considering the unique risk of flight those contacts present and the district court's previous findings based on those contacts. *See, e.g.*, 24-cr-91, Dkt. No. 15 at 2 (in reversing magistrate judge's bail order, district court cited, *inter alia*, "[defendant's] admitted extensive and recent contacts with agents of foreign intelligence agencies, including Russian intelligence," and "foreign interests likely willing to assist Defendant in evading capture"). That reason alone justifies the district court's decision to deny defendant's motion to reopen the detention proceedings and moots defendant's claims here.

Second, it does not appear that the district court misunderstood or ignored defendant's point at all. Defendant's representations concerning his willingness to procure a corporate surety bond, as cited in his appeal, do not, on their face, directly relate to or address the issue of private

security as referenced in the district court's June 25, 2024 Order. *See, e.g.*, Ex. 6, AA39 (noting in footnote, and unrelated to subsequent private security proposal, that defendant previously proposed multiple conditions for pretrial release including "posting of corporate surety bond"); Ex. 7, AA53 (in supplemental filing opposing government's application, enumerating "additional conditions" for pretrial release including "Corporate Surety bond," without any reference to private security provider). While defendant did propose a surety bond, he did not propose such a bond specifically in connection with any private security provider. Thus, the district court reasonably observed that merely hiring a private security provider does not ensure that the provider "would suffer [] consequence should Defendant leave the country without permission." Ex. 2, AA07.

Lastly, the basis for defendant's second appeal here—a proposal for private full-time security—is a retread of previous proposals that he presented to (and were rejected by) the district court. The defendant presented the same private security proposal to the district court during the hearing on February 26, 2024, *see* Ex. 8, AA71 ("If the Court wants, we will hire private security to monitor [him] 24 hours a day where he is.

13

. . . And he would do that at his expense and it's been done in other cases."), and in advance of that hearing, defendant offered in a supplemental filing a "Corporate Surety bond" as a possible condition of pretrial release, Ex. 7, AA53. The district court rejected both proposals when it affirmed its pretrial detention order at the conclusion of the February 26, 2024 hearing. *See* Ex. 8, AA80 (district court noting that "I've read everyone's papers, I understand the arguments"), AA81 ("I have not changed my mind. This man will be remanded pending trial."). This Court affirmed the district court's ruling on appeal. *See* 24-1133, Dkt. No. 14. Defendant, therefore, already had an opportunity, before his motion to reopen detention proceedings, to proffer the proposed condition of private full-time security (with or without a surety bond), and the district court already rejected that proposal as part of the various arguments and assertions defendant presented in the leadup to and during the February 26, 2024 hearing. Defendant chose not to specifically highlight that issue during his first appeal to this Court. *See generally* 24-1133. This present effort, then, is merely a second attempt to do what already failed before. And on that basis alone defendant's

present appeal also should be rejected and the district court's order affirmed.

Moreover, defendant's appeal concerns his underlying motion to reopen the detention hearing, Ex. 6, AA33-49, and, by defendant's own acknowledgment in that motion, a detention hearing may be reopened only if "the party requesting reopening presents 'new information,'" AA36 (quoting *United States v. Espinoza*, No. CRS08-0448 JAM, 2009 WL 3614849, at *1 (E.D. Cal. Oct. 27, 2009)); *see also* 18 U.S.C. § 3142(f) (hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing"). Defendant's private security proposal was known to him during the time when he first opposed government's application for review of the magistrate judge's bail order, as demonstrated by defendant's argument during the February 26, 2024 hearing. *See* Ex. 8, AA71. Defendant, therefore, cannot even meet his burden under the law to show that his private security proposal is "new information," *Espinoza*, No. CRS08-0448 JAM, 2009 WL 3614849, at *1, or "was not known to [him] at the

time of the hearing," 18 U.S.C. § 3142(f), let alone prove that the district

court abused its discretion when rejecting it a second time.[5]

Further, defendant cites *United States v. Lynch*, No. 18-cr-00577-

CRB-1, 2023 WL 3436091 (N.D. Cal. May 11, 2023) (unpublished), in

support of his assertion that private full-time security should tip the

---

[5] Even if defendant prevailed on his clear-error argument or showed that the district court abused its discretion—which, for all the reasons set forth herein, he cannot—defendant's request for relief still fails for two reasons: (1) the district court's supposed error would have been harmless, and (2) defendant's requested relief is extraordinary and unwarranted. First, like a ruling in any step of a criminal proceeding, a ruling on bail is subject to the harmlessness standard in Fed. R. Crim. P. 52(a), and appellate courts must apply the harmless-error doctrine. *See, e.g., United States v. Hasting*, 461 U.S. 499 (1983). Here, any error in the district court's explanation is harmless given the facts of this case and the court's previous rulings and factual findings. *Cf. United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) (district court's application of wrong standard of review in evaluating magistrate judge's findings was harmless). And it certainly would not establish any abuse of discretion. *See Strong*, 489 F.3d at 1060. Second, defendant ostensibly asks this Court to remand so the district court may fashion conditions for pretrial release. *See, e.g.*, Dkt. No. 7.1, at 13, 18. But that presumes pretrial release is appropriate when the record in this case proves otherwise. This Court, at most, would remand to the district court to address the specific matter at issue, *i.e.*, the surety bond as it relates to the private security firm—not to direct the district court to ignore all its factual findings that have counseled in favor of pretrial detention. *See, e.g., United States v. Cordero*, 992 F.2d 985, 987 n.1 (9th Cir. 1993). But such remand is inappropriate nonetheless for the reasons explained here.

scales toward his pretrial release. *See* Dkt. No. 7.1, at 14–16. But, as a preliminary matter, defendant correctly observes that *Lynch* is "not binding and of no precedential effect" here. *Id.* at 14. Moreover, *Lynch* is clearly distinguishable from this case.

The defendant in *Lynch*, for example, did not have acknowledged connections to foreign intelligence officials in multiple countries. Defendant does. *See, e.g.*, 24-cr-91, Ex. 2, AA07 ("Given Defendant's international contacts the Court finds no comfort in the proposed modification of the terms of pretrial release."); Dkt. No. 15 at 1–2 (district court's findings that defendant "admitted that officials associated with Russian intelligence were instrumental in passing to him a fabricated story about a public official of the United States and his son"; and that after "return[ing] to the United States on an international flight," defendant "was scheduled to leave the United States two days later, on February 16, 2024, for a months-long, multi-country trip that, by his own description, involved meetings with officials of foreign intelligence agencies and governments"), *id.* at 2 (district court's findings concerning defendant's "admitted extensive and recent contacts with agents of foreign intelligence agencies, including Russian intelligence," and that

17

"foreign interests likely willing to assist Defendant in evading capture");
*see also Townsend*, 897 F.2d at 994 (finding, in detention analysis, that
nature of defendant's offense and foreign contacts suggest that foreign
"country would provide a haven for anyone accused of such offenses who
jumped bail"). Nor was there any suggestion that the defendant in *Lynch*
lied or attempted to conceal his immense wealth from Pretrial Services
(or that its sources were unknown). Defendant did. *See, e.g.*, Ex. 8,
AA73–76 (government's argument during February 26, 2024 hearing
concerning defendant's financial misrepresentations and concealment).
And the defendant in *Lynch*, while charged with various fraud offenses,
was not indicted specifically and primarily for lying to federal
government officials. Here, defendant has been, and now expects federal
government officials, namely the district court and the pretrial services
officers that would supervise him, to trust him with release on bail
notwithstanding the fact that he has lied to federal employees with whom
he was in a position of trust in the past. *See, e.g.*, AA63 (district court
stating at February 26, 2024 hearing that "I am concerned about what
appears to me to be a habit or practice of making false statements and I
take no comfort in assurances that you may offer that you will not

attempt to flee the jurisdiction"); 24-cr-91, Dkt. No. 15 at 2 (district court's finding concerning "the history of Defendant's relationship with his FBI handler during which he has proven himself not to be trustworthy").

Each defendant in each case must be assessed on his or her own terms, and the district court here correctly decided that the circumstances presented by defendant warrants pretrial detention. *See* Ex. 8, AA81 (district court concluding in February 26, 2024 hearing that "[t]here is nothing garden variety about this case. To compare this to all the cases that we normally see, this is an outlier"). This Court agreed during the first appeal, and nothing in *Lynch*—or defendant's second appeal generally—demonstrates otherwise.[6]

_____

[6] In addition, it is worth noting that the *Lynch* opinion on which defendant relies was issued in May 2023—about nine months before defendant was indicted and more than a year before the district court issued its June 25, 2024 Order that is now the subject of this appeal. *Lynch* is neither new nor novel. Defendant cannot rely on preexisting precedent from 2023 that should have been raised previously during this protracted pretrial litigation to somehow argue that he is now entitled to relief that he has unsuccessfully sought for months, since February 2024. *Cf. United States v. Stephens*, 2022 U.S. App. LEXIS 35897, at *2 (9th Cir. Dec. 29, 2022) (affirming denial of motion to reopen detention hearing where defendant "had failed to present new information that was . . . unknown to [defendant] at the time of the detention hearing" (citing

(continued . . . .)

## Conclusion

For the reasons stated above, this Court should affirm the district court's denial of the defendant's motion to reopen the detention hearing and to impose conditions of release.

DATED:  July 24, 2024          Respectfully submitted,

DAVID C. WEISS
Special Counsel

s/ *Sean F. Mulryne*
LEO J. WISE
Principal Senior Assistant Special
Counsel

DEREK E. HINES
Senior Assistant Special Counsel

SEAN F. MULRYNE
CHRISTOPHER M. RIGALI
Assistant Special Counsels

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

18 U.S.C. § 3142(f).  And, again, *Lynch* offers no basis, on its facts or law, to support defendant's arguments given the critical factual distinctions between the two cases and the district court's findings here.

## STATEMENT OF RELATED CASES

The defendant previously filed an appeal concerning his pretrial detention, which was denied (as was the defendant's motion for reconsideration and for reconsideration en banc) in no. 24-1133. In addition, the defendant previously filed a petition for a writ of mandamus, which was denied in no. 24-970. The government states, under Ninth Circuit Rule 28-2.6, that it is unaware of any other cases related to this appeal except those as captioned.

**CERTIFICATE OF COMPLIANCE**

I certify that:

This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains 4,902 words, excluding the items exempted by Fed. R. App. P. 32(f), if applicable.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: July 24, 2024                          s/ *Sean F. Mulryne*

                                              SEAN F. MULRYNE
                                              Attorney for Plaintiff-Appellee
                                              UNITED STATES OF AMERICA