No. 24-4040
DISTRICT COURT CASE NO. 2:24-CR-91-ODW
RELATED CASE NO. 2:24-mj-00166-DJA-1
_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ALEXANDER SMIRNOV,

Appellant-Defendant,

vs.

UNITED STATES OF AMERICA,

Appellee-Plaintiff.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
_____

**APPELLANT'S REPLY**
**IN SUPPORT OF SECOND FRAP 9(a) APPEAL**

DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Attorneys for Appellant
ALEXANDER SMIRNOV

# **TABLE OF CONTENTS**

I. STATEMENT OF THE ISSUE…………………………………………..1

II. ARGUMENT IN REPLY……………………………………………....2

    A. Standard of Review…………………………………………......2

    B. Argument………………………………………………………..3

III. CONCLUSION……………………………………………………...9

CERTIFICATE OF COMPLIANCE………………………………………10

CERTIFICATE OF SERVICE……………………………………………. 11

# **TABLE OF AUTHORITIES**

**CASES**

*United States v. Dreier*,
596 F. Supp. 2d 831 (S.D.N.Y. 2009)……………………………………….. 5

*United States v. Fidler*,
419 F.3d 1026 (9th Cir. 2005)……………………………………………….2, 3

*United States v. Gebro*,
948 F.2d 1118, 1121 (9th Cir. 1991)…………………………………… 3, 8

*United States v. Lynch*,
No. 18-CR-00577-CRB-1, 2023 WL 3436091 (N.D. Cal. May 11, 2023)
(unpublished)…………………………………………………………………… 5, 6

*United States v. Madoff*,
586 F. Supp. 2d 240 (S.D.N.Y. 2009)……………………………………...5, 6

*United States v. Motamedi*,
767 F.2d 1403 (9th Cir. 1985)……………………………………………….. 8

*United States v. Townsend*,
897 F.2d 989 (9th Cir. 1990)……………………………………………… 3

**UNITED STATES CODE**

18 U.S.C. § 3142…………………………………………………………………... 3, 4, 8

I.  **STATEMENT OF ISSUE**

Whether the district court clearly erred when it based its denial of Mr. Smirnov's motion to reopen detention proceedings on the demonstrably false finding that Mr. Smirnov had never offered to post a corporate surety bond as a condition to secure his release, when Mr. Smirnov had recommended posting just such a bond (in addition to numerous other conditions) as early as February 2024.

## II. ARGUMENT IN REPLY

### A. *Standard of Review*

On July 14, 2024, Mr. Smirnov filed his Memorandum of Law and Facts in Support of his Second FRAP 9(a) Appeal, which contested United States District Judge Otis D. Wright II's Order (entered June 25, 2024) denying Mr. Smirnov's motion to reopen the detention hearing and to modify his conditions of release. *See* Def. Second 9A Mem. (9CA Doc. 7.1) (July 14, 2024) ("Def. Mem. II"); *see also* District Court Order (DC Doc. 90) (June 25, 2024) ("Order"). The government thereafter filed its Memorandum in Opposition. *See* Gov. Opp. (9CA Doc. 8.1) (July 24, 2024).[1]

"Factual findings underlying a district court's pretrial . . . detention order [under Fed. R. App. 9(a)] . . . , are reviewed under the clearly erroneous standard, 'coupled with an independent review of the facts, the findings, and the record to determine whether the order may be upheld.'" *United States v. Fidler*, 419 F.3d

---

[1] As shown in our opening memorandum (*see* Def. Mem. II at 10, n.10), Judge Wright (on May 24) docketed Mr. Smirnov's motion to reopen for a hearing on June 24, 2024. DC Doc. 75. But after that motion had been fully briefed, and after the court had denied Mr. Smirnov's motion to shorten the time to hear the motion (*see* DC Doc. 81) (June 7, 2024), the court ruled on June 21: 1) first (in DC Doc. 84), that the hearing was continued until July 1, 2024; and 2) second (in DC Doc. 85), that: "The Court feels it would not be aided by oral argument regarding the Motion for Detention Reopen Detention [sic] Hearing and to Impose Conditions of Pretrial Release." The court thus removed the hearing from its calendar and denied Mr. Smirnov's motion.

2

1026, 1029 (9th Cir. 2005) (quoting *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *see also United States v. Townsend*, 897 F.2d 989, 993–94 (9th Cir. 1990) (despite deference to factual findings, this Court makes "an independent examination of the record to determine whether the pretrial detention order is consistent with the defendant's constitutional and statutory rights and arrive at our conclusion de novo.").[2]

### B. Argument

Rather than consider the release conditions proposed by Mr. Smirnov *in their totality* (that is, as an omnibus "bail package" that includes a large surety bond, *and* a private security detail, *and* all of the additional conditions that were imposed by the Magistrate Judge and suggested by Mr. Smirnov from February through June 2024), the district court instead issued a brief minute order that: 1) wrongly assessed the proposed security detail in isolation, rather than as part of a bail package; and 2) reflected a materially false statement of fact: namely, the court's mistaken belief that Mr. Smirnov had not proposed a surety bond.

Thus, the district court wrote:

> He has proposed to be under the full-time surveillance who will promise not to let the defendant leave the country. That security

---

[2] The indictment alleges that Mr. Smirnov made false statements and falsified federal records, under 18 U.S.C. § 1001 and 18 U.S.C. § 1519, respectively. Neither charge triggers the presumption of pretrial detention under 18 U.S.C. § 3142(e)(2) & (3); thus, the Bail Reform Act's presumption of release—duly credited by the Nevada Magistrate Judge and both pretrial services offices, in Nevada and California—remains applicable to Mr. Smirnov's release request.

3

> company is not under the jurisdiction of this Court and, *unlike a bond surety*, would suffer no consequence should Defendant leave the country without permission. Given Defendant's international contacts, the Court finds no comfort in the proposed modification of the terms of pretrial release.

Order (DC Doc. 90) (emphasis added).³

In his opening memorandum, Mr. Smirnov explained how the district court record contains his repeated offers to post a corporate surety bond—and how the district judge's statement (which plainly suggests—"unlike a bond surety"—that no such offer was made) was clearly erroneous. *See* Def. Mem. II at 4-5 (citing instances where—in district court filings on February 26 and May, 24, 2024—Mr. Smirnov did offer to post a corporate surety bond); *see also id.* at 6-8 (pretrial release warranted after applying factors set forth in 18 U.S.C. § 3142(g) to Mr. Smirnov's history and circumstances). Thus, in its opposition, the Government labors to transform the district court's factually flawed finding into an opinion that can withstand appellate scrutiny.

---

³ The district court's reference to a security company not being under its "jurisdiction" is unclear. If the district court's specific concern stems from the fact that Mr. Smirnov's proposed security company is based in the District of Nevada, then Mr. Smirnov would readily agree to finding a security company based in the Central District of California—together with a California-based corporate bondsman. More broadly, if a manager authorized to represent a company appeared in a district court, made assurances to the presiding judge, and then willingly breached them, it is difficult to imagine that judge not having "jurisdiction" to impose some form of punishment on the breacher.

4

The Government's efforts fail. First, the Government suggests that the district court's summary rejection of the proposed security detail is part of the court's grander analytical scheme: "That [*i.e.*, the "reject[ion] of the defendant's private security proposal"] . . . was simply one of several reasons for the court's rejection of the proposal." Gov. Opp. at 11. One of the court's "other" reasons (according to the Government) was that the private company would not be under the "jurisdiction" of the court. *Id*. at 11-12.

But this argument ignores that, as discussed in Mr. Smirnov's opening memorandum (*see* Def. Mem. II at 15-16), the cases collected in *United States v. Lynch*, No. 18-CR-00577-CRB-1, 2023 WL 3436091 (N.D. Cal. May 11, 2023) (unpublished), demonstrate multiple instances of bail *packages* (including large surety bonds and private security) being fashioned to ensure a defendant's future appearance. *See, e.g., United States v. Madoff*, 586 F. Supp. 2d 240, 244 (S.D.N.Y. 2009) (package of conditions imposed to guarantee future appearance includes 1) $10 million surety bond, and 2) home detention with 24-hour monitoring, at defendant's wife's expense); *United States v. Dreier*, 596 F. Supp. 2d 831, 833–34 (S.D.N.Y. 2009) (accepting a defendant's bail package that included a $10 million bond and home detention secured by on-premises security guards, who were allowed to use "temporary preventive detention and the use of reasonable force to thwart any attempt to flee"); *Lynch*, 2023 WL 3436091, at *4 (bail package for

5

Lynch's release includes "a bond in the amount of $100 million;" confinement to San Francisco; *and* condition that he "shall be guarded on a 24-hour basis by a private security company at Defendant's expense, including video surveillance and armed guards").

Unlike the district court in the present case, the courts in *Madoff*, *Drier*, and *Lynch* all managed to derive "comfort" from comprehensive bail packages that included (among other conditions) large surety bonds and private security details. *Compare* DC Doc. 90 (complaining that it derives "no comfort" from release conditions that it does not bother to review). Unlike the district court in the present case, the courts cited above were faced with criminal defendants who were very wealthy and who had ties to foreign countries. Nevertheless, in those cases, the courts took the time to fashion detailed, restrictive bail packages in order to further the presumption of pretrial release. The present district court, however, made up its mind before Mr. Smirnov even made his first appearance and refused to conduct any such careful inquiry. *Compare, e.g.,* Gov. Opp. at 14 (citing the district court's pronouncement at the end of the February 26 detention hearing: "I have not changed my mind. This man will be remanded pending trial.").

Second, the Government suggests that the district court did not "ignore" or "misunderstand" anything regarding the surety bond; rather (the Government suggests), the district court's apparent confusion might have stemmed from the fact

6

that Mr. Smirnov's "representations concerning his willingness to procure a corporate surety bond, as cited in his appeal, do not, on their face, directly relate to or address the issue of private security." Gov. Opp. at 12-13.

These remarks are deliberately misleading, factually baseless, or both. To begin with, it is misleading to suggest that Mr. Smirnov indicated his "willingness" to post a bond "*in his appeal*"—that is, his present appeal, which he filed in July. Rather, as the Government is well aware, Mr. Smirnov first volunteered to post a bond back on February 26, 2024, in a written filing with (and, ignored by) the district court. *See* Def. Mem. II at 4-5 (noting that initial offer to post a surety bond was reiterated, with additional conditions, in pleading filed May 24, 2024). Moreover—to the extent the Government suggests that a defendant must keep repeating the release conditions proposed in his earlier pleadings "directly, on the face" of all of his successive pleadings—the Government cites nothing to support such a remarkable "waiver proposition."

In any event, the fact remains that the district court—at the time it entered the June 25, 2024 Order refusing to reopen the detention hearing—had before it a clear record containing: 1) Mr. Smirnov's repeated offer to post a large surety bond; *and* 2) Mr. Smirnov's offer to pay for private security; *and* 3) Mr. Smirnov's expressed willingness to abide by a host of other conditions and promises dating back to the initial hearing before the Magistrate Judge. The Government's suggestion that the

7

district court may have been confused by this aggregation of flight-stopping conditions—*i.e.*,. that the court somehow believed, in June, that Mr. Smirnov had suddenly taken his bond offer (made in February and reiterated in May) off the table—is simply not plausible.

Third, it is again misleading for the Government to disparage Mr. Smirnov's good faith proposal of adding a private security detail as a "retread of previous proposals." Gov. Opp. at 13. The record shows that it was not until *after* this Court rejected Mr. Smirnov's first bail appeal (on May 1, 2024, *see* 9CA Doc. 14 ), that Mr. Smirnov went back to Section 3142(g)'s drawing board and tried to add yet another condition—private security—to the host of previously imposed (and proposed) conditions. That additional condition, therefore, was being presented to the district court for the first time, in the hopes it might at last persuade the court to follow the statutory presumption and release Mr. Smirnov from custody. The only actions that can possibly be deemed a "retread," therefore, is the district judge's summary rejection of Mr. Smirnov's good faith proposal and refusal to earnestly fashion (or, even try to fashion) a combination of conditions that will ensure Mr. Smirnov's future appearances. *Compare Gebro*, 948 F.2d at 1121. "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor.") (citing *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)).

## III. <u>CONCLUSION</u>

For the reasons stated above and in Mr. Smirnov's opening memorandum, this Court should thus order Mr. Smirnov released on the conditions previously imposed by the Magistrate Judge and proposed by Mr. Smirnov, together with any additional conditions determined by the district court.

DATED this 30th day of July, 2024.

                                    Respectfully Submitted:

                                    CHESNOFF & SCHONFELD

                                    <u>/s/ David Z. Chesnoff</u>
                                    DAVID Z. CHESNOFF, ESQ.
                                    Nevada Bar No. 2292
                                    RICHARD A. SCHONFELD, ESQ.
                                    Nevada Bar No. 6815
                                    520 South Fourth Street
                                    Las Vegas, Nevada 89101
                                    Telephone: (702) 384-5563
                                    dzchesnoff@cslawoffice.net
                                    rschonfeld@cslawoffice.net
                                    Attorneys for Appellant
                                    ALEXANDER SMIRNOV

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I hereby certify that: the foregoing brief uses 14-point Times New Roman proportionately spaced type; text is double spaced and footnotes are single spaced; a word count of the word processing system used to prepare the brief indicates that the brief (not including the table of contents, the table of authorities, the statement of related cases, the certificate of compliance, or the certificate of service) contains approximately 1,629 words.

Dated this 30th day of July, 2024.

/s/ David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 2024, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system including:

Derek Edward Hines
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue NW Room B-200
Washington, DC 20530
Email: deh@usdoj.gov

Leo J. Wise
US Department of Justice
Office of Special Counsel David C. Weiss
950 Pennsylvania Avenue, NW, Room B-200
Washington, DC 20530
Email: LJW@USDOJ.GOV

Christopher Michael Rigali
Office of Special Counsel, U.S. Dept. of Justice
950 Pennsylvania Avenue NW, Room B-200
Washington, DC 20530
Email: christopher.rigali2@usdoj.gov

/s/ Camie Linnell
Employee of Chesnoff & Schonfeld